UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

TIMBA BIMONT and JOHN DOE (NEW YORK),
on behalf of themselves and others similarly
situated,

       Plaintiffs,

v.

UNILEVER UNITED STATES, INC.,

       Defendant.

———————————————————————

Case No. 14–cv–07749 (JPO)

**MEMORANDUM OF LAW IN SUPPORT**
**<u>OF DEFENDANT'S MOTION TO DISMISS</u>**

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York  10166–4193

# Table of Contents

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................3

ARGUMENT ........................................................................................................5

I.   PLAINTIFF'S CLAIMS ARE EXPRESSLY PREEMPTED BY FEDERAL LAW .......................................................................................................6

    A.   Because Deodorants and Antiperspirants Are Cosmetics, None of the Food Laws and Regulations Cited in Plaintiff's Complaint Apply ..................................6

    B.   State Law Claims Premised on Regulations that Are Different from, in Addition to, or Not Identical to the Federal Laws and Regulations Governing Cosmetics Are Expressly Preempted........................................9

II.   PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF BECAUSE HE CANNOT ALLEGE THE THREAT OF FUTURE HARM ............12

III.   PLAINTIFFS' GBL § 349 CLAIMS SHOULD BE DISMISSED FOR FAILURE TO PLAUSIBLY ALLEGE THAT A REASONABLE CONSUMER WOULD BE DECEIVED BY THE SIZE OF THE PACKAGE ........14

    A.   New York Employs an Objective Test in Analyzing GBL § 349 Claims ............14

    B.   Because the Package Accurately States the Quantity of Product in Ounces and Grams, Plaintiff's GBL Claims Fail as a Matter of Law ................................15

IV.   THE SAFE HARBOR PROVISION OF GBL § 349(D) IS A COMPLETE DEFENSE TO PLAINTIFF'S § 349 CLAIMS ....................................................17

V.   TO THE EXTENT PLAINTIFF CONTENDS THAT HE WOULD NOT HAVE PURCHASED THE PRODUCT BUT FOR THE ALLEGED DECEPTION, HIS CLAIM IS NOT COGNIZABLE UNDER GBL § 349 ..............18

VI.   PLAINTIFF'S FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS FAIL TO STATE A CAUSE OF ACTION ...................................................19

    A.   The Fraud and Negligent Misrepresentation Claims Are Subject to the Heightened Pleading Standard of Rule 9(b) ...........................................................19

    B.   There Was No Misrepresentation or Reasonable Reliance Because the Labeling and Packaging Accurately State the Quantity in Ounces and Grams........................................................................................................19

    C.   The Negligent Misrepresentation Claim Should Be Dismissed Because It Is Based on Mass Communications to the Public Generally and Plaintiff Cannot Allege the Requisite Privity or Special Relationship ...............................21

VII.   THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED BECAUSE IT IS DUPLICATIVE OF PLAINTIFFS' STATUTORY AND TORT CLAIMS THAT PLEAD SPECIFIC ACTIONABLE WRONGS .................21

i

**VIII.   TO THE EXTENT PLAINTIFF'S CLAIMS ARE BASED ON DEFENDANT'S ADVERTISING AND MARKETING PRACTICES, THEY SHOULD BE DISMISSED FOR LACK OF STANDING AND CAUSATION**........**23**

**CONCLUSION** ........................................................................................................**25**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
    404 F.3d 566 (2d Cir. 2005)............................................................................................19

*Allee v. Medrano*,
    416 U.S. 802 (1974)........................................................................................................13

*Am. Home Prods. Corp. v. Johnson & Johnson*,
    672 F. Supp. 135 (S.D.N.Y. 1987)................................................................................17

*Anschutz Corp. v. Merrill Lynch & Co.*,
    690 F.3d 98 (2d Cir. 2012)............................................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................................5

*Astiana v. Hain Celestrial Grp., Inc.*,
    905 F. Supp. 2d 1013 (N.D. Cal. 2012) ....................................................................9, 12

*AVRA Surgical Robotics, Inc. v. Gombert*,
    13 CIV. 3309 NRB, 2014 WL 4203089 (S.D.N.Y. Aug. 22, 2014)..............................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................................5

*Bowling v. Johnson & Johnson*,
    No. 14–cv–3727, 2014 WL 5643955 (S.D.N.Y. Nov. 4, 2014) ....................................10

*Chiste v. Hotels.com L.P.*,
    756 F. Supp. 2d 382 (S.D.N.Y. 2010)..........................................................................15

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)..........................................................................................................13

*Cohen v. Hertz. Corp.*,
    No. 13 Civ. 1205, 2013 WL 9450421 (S.D.N.Y. Nov. 26, 2013) ..............................24

*Del Real, LLC v. Harris*,
    966 F. Supp. 2d 1047 (E.D. Cal. 2013).....................................................................10, 11

*DiBartolo v. Abbott Labs.*,
    914 F. Supp. 2d 601 (S.D.N.Y. 2012)..........................................................................21

*Ebner v. Fresh Inc.*,
    No. SACV 13–00477 JVS, 2013 WL 9760035 (C.D. Cal. Sept. 11, 2013) .........9, 12, 18

*Federal Treasury Enterprise Sojuzplodoimport v. Spirits Int'l N.V., SPI*,
    400 Fed. Appx. 611 (2d Cir. 2010) ...................................................................22

*In re PepsiCo Inc. Bottled Water Marketing and Sales Practices Litig.*,
    588 F. Supp. 2d 527 (S.D.N.Y. 2008) .................................................................9

*Johns v. Bayer Corp.*,
    No. 09–cv–1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) .................................24

*Jones v. Rath Packing Co.*,
    430 U.S. 519 (1977) ........................................................................................11

*Lorillard Tobacco Co. v. Reilly*,
    533 U.S. 525 (2001) ..........................................................................................6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................................12, 23

*May Dep't Stores Co. v. Int'l Leasing Corp., Inc.*,
    1 F.3d 138 (2d Cir. 1993) ................................................................................20

*Nat'l Meat Association v. Harris*,
    **--** U.S. **--**, 132 S. Ct. 965 (2012) ..............................................................11

*Miller v. Wells Fargo Bank, N.A.*,
    994 F. Supp. 2d 542 (S.D.N.Y. 2014)................................................................22

*Mlejnecky v. Olympus Imaging Am. Inc.*,
    No. 2:10–CV–02630, 2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) .......................23

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)............................................................................19

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)........................................................................................13

*PDK Labs, Inc. v. Friedlander*,
    103 F.3d 1105 (2d Cir. 1997)...........................................................................11

*Preira v. Bancorp Bank*,
    885 F. Supp. 2d 672 (S.D.N.Y. 2012)................................................................19

*Pullman v. Alpha Media Pub., Inc.*,
    No. 12–CV–1924, 2013 WL 1290409 (S.D.N.Y. Jan. 11, 2013) .........................24

*Red v. Kraft Foods, Inc.*,
    No. CV–10–1028–GW, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)...................15

iv

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)................................................................................................13, 14

*Stokely–Van Camp Inc. v. Coca–Cola Co.*,
    646 F. Supp. 2d 510 (S.D.N.Y. 2009)....................................................................15

*Tasini v. AOL, Inc.*,
    851 F. Supp. 2d 734 (S.D.N.Y. 2012)....................................................................14

*Thomas v. JPMorgan Chase & Co.*,
    811 F. Supp. 2d 781 (S.D.N.Y. 2011)....................................................................14

*Tomasino v. Estee Lauder Companies Inc.*,
    No. 13–CV–4692 ERK JMA, 2014 WL 4244329 (E.D.N.Y. Aug. 26, 2014) .................13, 14

*Tuosto v. Philip Morris USA Inc.*,
    05 CIV. 9384 (PKL), 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007)....................................21

*Turek v. Gen. Mills. Inc.*,
    662 F.3d 423 (7th Cir. 2011) ........................................................................................9

*Vaccariello v. XM Satellite Radio, Inc.*,
    295 F.R.D. 62 (S.D.N.Y. 2013) ...............................................................................13, 14

*Verzani v. Costco Wholesale Corp.*,
    2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010), *aff'd* 432 Fed. Appx. 29, 2011 WL
    4359936 (2d Cir. Sept. 20. 2011)..........................................................................16

*Warth v. Seldin*,
    422 U.S. 490 (1975)................................................................................................13

*Weinstein v. eBay, Inc.*,
    819 F. Supp. 2d 219 (S.D.N.Y. 2011)....................................................................15

*Woods v. Maytag Co.*,
    No. 10–cv–0559, 2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010)............................24

*Zielinski v. DeFreest*,
    No. 12 CIV. 1160 JPO, 2013 WL 4838833 (S.D.N.Y. Sept. 10, 2013) .................12

## STATE CASES

*88 Blue Corp. v. Reiss Plaza Assocs.*,
    183 A.D.2d 662, 585 N.Y.S.2d 14 (1st Dep't 1992) ............................................20

*City of N.Y. v. Smokes–Spirits.Com, Inc.*,
    12 N.Y.3d 616, 883 N.Y.S.2d 772 (2009) ............................................................14

*Corsello v. Verizon New York, Inc.*,
    18 N.Y.3d 777, 944 N.Y.S.2d 732, *reargument denied* 19 N.Y.3d 937 (2012) .................. 22

*Gale v. Int'l Bus. Machs. Corp.*,
    9 A.D.3d 446, 781 N.Y.S.2d 45 (2d Dep't 2004) ................................................. 24

*In re MI Windows & Doors, Inc. Prods. Liab. Litig.*,
    Nos. 12–MN–1, 12–CV–1261, 2013 WL 1363845, (D.S.C. Apr. 3, 2013) ...................... 24

*Mandarin Trading Ltd. v. Wildenstein*,
    16 N.Y.3d 173, 919 N.Y.S.2d 465 (2011) ......................................................... 22

*Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*,
    73 N.Y.2d 417, 541 N.Y.S.2d 335 (1989) ......................................................... 21

*People ex rel. Spitzer v. Direct Revenue, LLC*,
    No. 401325/06, 2008 WL 1849855 (Sup. Ct. N.Y. Cnty. Mar. 12, 2008) ...................... 17

*Porr v. Nynex Corp.*,
    230 A.D.2d 564, 660 N.Y.S.2d 440 (2d Dep't 1997), *leave denied*, 91 N.Y. 2d 807
    (1998) ............................................................................................... 17

*Rosenblum v. Glogoff*,
    96 A.D.3d 514, 946 N.Y.S.2d 167 (1st Dep't 2012) ............................................ 20

*Samiento v. World Yacht Inc.*,
    10 N.Y.3d 70, 854 N.Y.S.2d 83 (2008) ........................................................... 22

*Sands v. Ticketmaster-New York, Inc.*,
    1994 WL 662956 (Sup. Ct. N.Y. Cnty. June 23, 1994), *aff'd* 207 A.D.2d 687, 616
    N.Y.S.2d 362 (1st Dep't 1994) .................................................................... 15

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43, 698 N.Y.S.2d 615 (1999) .......................................................... 19

*Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*,
    245 A.D.2d 96 (1st Dep't 1997) ................................................................... 20

*Whalen v. Pfizer, Inc.*,
    No. 600125/05, 2005 WL 2875291 (N.Y. Sup. Ct. Sept. 22, 2005) ............................ 24

STATUTES

15 U.S.C. § 1454(a) .................................................................................... 8

15 U.S.C. § 1454(c) .................................................................................... 8

15 U.S.C. § 1459 ....................................................................................... 6

vi

21 U.S.C. § 321(f)......................................................................................................6

21 U.S.C. § 321(g)(1)...............................................................................................6

21 U.S.C. § 321(i).....................................................................................................6

21 U.S.C. § 343(d) *et seq.*...........................................................................1, 3, 4, 7

21 U.S.C. § 352(i)...................................................................................................11

21 U.S.C. § 362(d)..................................................................................................11

21 U.S.C. § 379.........................................................................................................9

21 U.S.C. § 379r................................................................................................6, 10

21 U.S.C. § 379s................................................................................................6, 10

21 U.S.C. § 451 *et seq.*....................................................................................10, 11

21 U.S.C. § 601 *et seq.*....................................................................................10, 11

N.Y. AGL § 201.............................................................................................1, 4, 7

N.Y. Gen. Bus. Law § 349.........................................................1–3, 12–20, 24

N.Y. Gen. Bus. Law § 349(d).........................................................2, 17, 18

N.Y. Gen. Bus. Law § 350.................................................................................18

**REGULATIONS**

9 C.F.R. § 301.2......................................................................................................11

9 C.F.R. § 317.8(a)................................................................................................11

9 C.F.R. § 381.1......................................................................................................11

21 C.F.R. § 100.100............................................................1, 3, 4, 7, 8, 10, 12

21 C.F.R. § 201.60 –.66.........................................................................................8

21 C.F.R. § 201.62................................................................................................17

21 C.F.R. § 250.5....................................................................................................8

21 C.F.R. § 350.1–3................................................................................................6

21 C.F.R. § 701.1–3................................................................................................7

21 C.F.R. § 701.10–13 ................................................................................................4, 8, 16–18

**OTHER AUTHORITIES**

30A Corpus Juris Secundum Equity § 17 .................................................................................23

Fed. R. Civ. P. 9(b) ..................................................................................................................19

Fed. R. Civ. P. 12(b)(6)...............................................................................................................5

U.S. Const. Article VI, cl. 2 ........................................................................................................6

U.S. Food and Drug Administration, *FDA Basics: Are all personal care products regulated as cosmetics?*, available at http://www.fda.gov/ AboutFDA/Transparency/ Basics/ucm242716.htm ...........................................................................................................6

## PRELIMINARY STATEMENT

This brief is submitted in support of the motion by Unilever United States, Inc. ("Unilever" or "Defendant") to dismiss Plaintiff's complaint.[1]  Plaintiff seeks to impose liability on Unilever for selling 2.7 ounce deodorant and antiperspirant products in packages that are larger than the actual quantity of deodorant or antiperspirant contained inside.  Plaintiff alleges that the packages contain excess space or "non-functional slack-fill."  He asserts claims for deceptive practices under New York General Business Law ("GBL") § 349, as well as under common law theories of fraud, negligent misrepresentation and unjust enrichment.  Plaintiff predicates liability under § 403 of the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 343(d) *et seq.*, New York Agriculture and Markets Law § 201, and the FDA regulations that specifically regulate slack-fill contained in 21 C.F.R. § 100.100.  Each of the cited statutes and regulations, however, applies exclusively to food products.  None apply to cosmetics such as deodorants and antiperspirants.

The complaint should be dismissed for multiple reasons.  First, the FDCA contains an express preemption clause that prohibits state law claims that would impose requirements that are "different from, in addition to or otherwise not identical with" the existing federal requirements.  Plaintiff's attempt to impose FDA regulations governing food on cosmetic products would clearly impose requirements that are "different from, in addition to or otherwise not identical with" the existing requirements that Congress and the FDA deemed adequate to regulate the sale of cosmetics.  All of Plaintiff's claims, therefore, are barred by the doctrine of preemption.

---

[1]   The complaint ("C.") refers to "John Doe (New York)" as a co-plaintiff.  This is an improper attempt at inserting a placeholder in the event that Plaintiff seeks to amend his pleading and caption at some future date.  Currently, there is only one plaintiff in this action—Timba Bimont.  Accordingly, throughout this brief, we will refer to Plaintiff in the singular.

Plaintiff seeks an injunction under GBL § 349.  But Plaintiff admits that he now knows all of the facts concerning the alleged deception of which he complains.  There is no danger that he will be deceived again in the future and there is no threat of future harm to this Plaintiff. Injunctive relief will not redress his alleged injury and he therefore lacks standing to bring this claim.

Plaintiff's GBL § 349, fraud and negligent misrepresentation claims fail because the labels on Defendant's products state the precise quantity of product in ounces and grams, in compliance with federal law.  Thus, no reasonable consumer would be deceived as to the actual quantity of the product, since that quantity—2.7 ounces/76 grams—is clearly displayed on the label.  The negligent misrepresentation claim is also deficient because Plaintiff cannot satisfy the privity or special relationship requirement to sustain that cause of action.

Plaintiff's GBL claims fail for the additional reason that § 349(d) affords a safe harbor barring suit, where a manufacturer complies with all applicable laws and regulations.  Unilever did just that.  It cannot be held liable for not following regulations that apply only to food products in the labeling and packaging of its cosmetics.

Plaintiff appears to seek a refund of the purchase price of the Products, claiming that he would not have bought the Products had he known the truth.  Such damages are not recoverable under GBL § 349.

Plaintiff's unjust enrichment claim should be dismissed as duplicative of Plaintiff's statutory and tort claims.  The equitable remedy of unjust enrichment cannot be used as a catch–all to cure the defects in those causes of action.

Finally, to the extent Plaintiff's claims are based in part on Defendant's advertising and marketing practices, they should be dismissed because Plaintiff does not allege that he saw,

heard or relied on any of Defendant's advertisement or marketing.  Plaintiff therefore lacks standing to assert any claims based on advertising and marketing, and he cannot allege a causal connection between that conduct and his alleged harm.

## STATEMENT OF FACTS

Unilever is one of the world's leading consumer product companies.  Through a wholly owned subsidiary, it manufactures and sells various deodorants and antiperspirants, including AXE Gold Temptation and Degree Dry Protection brands (the "Products").  (C. ¶ 21).

Plaintiff Timba Bimont is a New York resident who claims to have purchased AXE and Degree deodorants and antiperspirants from convenience stores and pharmacies located in the New York area.  (C. ¶ 18).

The complaint contains five causes of action for:  (1) injunctive relief under GBL § 349, (2) damages under GBL § 349, (3) negligent misrepresentation, (5) common law fraud, and (6) unjust enrichment.[2]  All of these claims are based on the allegation that the 2.7 ounce version of Unilever's AXE and Degree products were sold in packages that are larger than necessary and therefore contain "non-functional slack-fill in violation of the federal Food, Drug & Cosmetic Act ("FDCA") Section 403(d), (21 U.S.C. 343(d)), the Code of Federal Regulations Title 21 part 100, et. seq...."  (C. ¶ 1).  Plaintiff quotes 21 C.F.R. § 100.100 which, *inter alia*, defines slack-fill as "the difference between the actual capacity of a container and the volume of product contained therein."  (C. ¶ 24).

In his first and second causes of action, Plaintiff alleges that the packages are misleading under GBL § 349. (C. ¶¶ 61–75.)  Count I requests injunctive relief restraining Unilever from packaging its Products with non-functional slack-fill (C. ¶ 68), and count II seeks monetary damages.  (C. ¶ 75).

---

[2]  The Complaint does not include a fourth cause of action.

3

Plaintiff's third, fifth, and sixth causes of action seek damages for the same alleged conduct under common law theories of negligent misrepresentation, fraud, and unjust enrichment, respectively.[3]  (C. ¶¶ 76–98).

The complaint relies on two statutes which, according to Plaintiff, proscribe non-functional slack-fill.  (C. ¶¶ 1, 9, 39).  Both of those statutes, however, apply exclusively to food, not cosmetics.  *See* 21 U.S.C. § 343(d) *et seq.*; NY AML § 201.

In addition, Plaintiff repeatedly cites 21 C.F.R. § 100.100 which states, *inter alia*, that a "container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill."  (C. ¶¶ 1, 9, 24, 34, 66, 68, 73).  These regulations concerning slack-fill likewise apply only to food products and not to deodorants and antiperspirants.  The complaint itself appears to recognize this limitation.  Referring to the FDCA generally, Plaintiff alleges that "[i]f any one representation in the labeling is misleading, the entire *food* is misbranded."  (C. ¶ 38, emphasis added).

The FDA's cosmetic labeling and packaging regulations, while comprehensive, do not contain similar regulations prohibiting non-functional slack-fill.  Among other requirements, cosmetic products are required to contain a declaration of net quantity of contents expressed, *inter alia*, in ounces and grams on the principal display panel.  *See* 21 C.F.R. § 701.10–13.  The front label on Unilever's Products state the precise quantity of antiperspirant or deodorant contained therein in both ounces (2.7 oz.) and grams (76 g.), as required by applicable FDA cosmetic regulations.

---

[3]  Plaintiff also lists the consumer protection statutes of all 50 states and the District of Columbia (C. ¶ 10), but does not base any of his causes of action on those laws of other jurisdictions.

Plaintiff also references Defendant's advertising and marketing practices throughout the complaint (C. ¶¶ 16, 39, 46, 54, 66, 73, 77, 83, 95), but does not allege that he ever saw, heard, or relied on Defendant's advertising or marketing.

Plaintiff alleges both that "[h]ad Plaintiff[] known Defendant's packaging was slack-filled, he would not have bought the slack-filled products" (C. ¶¶ 43, 45) and that he "paid prices [he] otherwise would not have paid had Defendant not misrepresented the Products' actual size." (C. ¶ 48).  Again, he seeks both monetary damages and injunctive relief.

Finally, Plaintiff purports to bring this case as a class action in which the putative class is defined as "[a]ll persons or entities in the United States who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate."[4]  (C. ¶ 49).  The class definition does not seek to limit the class to persons who were deceived or misled or who sustained an injury as a result of any alleged deception or misrepresentation.

## ARGUMENT

Under Fed. R. Civ. P. 12(b)(6), the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Labels, conclusions and mere recitation of the elements of a cause of action will not suffice.  *Id.*  Plaintiff must provide enough factual support that, if true, would "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The complaint falls well short of this standard for the following reasons.

---

[4]   The class definition goes on to exclude those affiliated with Defendant or the Court.

## I.   <u>PLAINTIFF'S CLAIMS ARE EXPRESSLY PREEMPTED BY FEDERAL LAW</u>

Preemption has its origin in the Supremacy Clause, U.S. Const. art. VI, cl. 2.  It may be express, by implication, or because of a conflict with congressional intent.  *See Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001).  The FDCA contains an express preemption clause that preempts any state law that would "establish or continue in effect any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter, the Poison Prevention Packaging Act of 1970 … or the Fair Packaging and Labeling Act ("FPLA")…."  21 U.S.C. § 379s (internal citations omitted).

### A.   **Because Deodorants and Antiperspirants Are Cosmetics, None of the Food Laws and Regulations Cited in Plaintiff's Complaint Apply**

The FDCA defines both foods and cosmetics.  *See* 21 U.S.C. § 321(f) ("The term 'food' means (1) articles used for food or drink for man or other animals, (2) chewing gum, and (3) articles used for components of any such article."); 21 U.S.C. § 321(i) ("The term 'cosmetic' means (1) articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance, and (2) articles intended for use as a component of any such articles; except that such term shall not include soap.").  Quite obviously, deodorants and antiperspirants are cosmetics.  *See* U.S. Food and Drug Administration, *FDA Basics: Are all personal care products regulated as cosmetics?*, available at http://www.fda.gov/ About/FDA/Transparency/Basics/ucm242716.htm (last visited Dec. 22, 2014).[5]  The FPLA adopts the definitions of food and cosmetics from the FDCA.  15 U.S.C. § 1459.

---

[5]  Antiperspirants are over-the-counter drugs in addition to being cosmetics.  *See* 21 U.S.C. § 321(g)(1); 21 C.F.R. § 350.1–3.  The FDCA contains an express preemption provision for over-the-counter drugs that is virtually identical to the express preemption clause applicable to cosmetics.  *Compare* 21 U.S.C. 379r *with* 21 U.S.C. § 379s.

Each of the statutory provisions cited in the complaint applies exclusively to food.  *See* FDCA, 21 U.S.C. 343(d) ("*food* shall be deemed to be misbranded—If its container is so made, formed, or filled as to be misleading") (emphasis added); (C. ¶¶ 2, 9, 38, 46, 54, 61, 70); N.Y. AGM. LAW § 201: ("*food* shall be deemed to be misbranded … [i]f its container is so made, formed, colored or filled as to be misleading") (emphasis added); (C. ¶¶ 39, 40).

Similarly, all of the FDA regulations cited in the complaint pertain exclusively to food. For example, the complaint relies extensively on 21 C.F.R. § 100.100, which is a FDA regulation governing non-functional slack-fill in food products.  (C. ¶¶ 2, 9, 24, 34, 46, 54, 61, 66, 68, 70, 73.)  That regulation states that:

> a *food* shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading. (a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill.  Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein.

21 C.F.R. § 100.100 (emphasis added).[6]

The FDA's cosmetic labeling and packaging regulations, while comprehensive, do not contain similar regulations prohibiting non-functional slack-fill.  For example, the FDA's cosmetic regulations cover misbranding, the form of the labeling requirements, the designations and labeling of ingredients, and exemptions from the labeling requirements.  *See* 21 C.F.R. § 701.1–3.  More specific regulations impose requirements as to the package form, information on the principal display panel, identity labeling, the name and place of business of manufacturer, packer or distributor, and a declaration of net quantity of contents expressed, *inter alia*, in

---

[6]  21 C.F.R. § 100.100 then enumerates six permissible reasons for a manufacturer to fill a food package to less than its capacity without violating this prohibition against non-functional slack-fill.

ounces.  *See* 21 C.F.R. § 701.10–13.  There is no cosmetic regulation similar to 21 C.F.R. § 100.100, which proscribes non-functional slack-fill in food products.[7]

The FDA's silence in not enacting cosmetic slack-fill regulations comparable to the food regulations contained in 21 C.F.R. § 100.100 is not accidental.  Section 5 of the FPLA expressly empowers both the Secretary of Health and Human Services, which oversees the FDA, and the Federal Trade Commission to promulgate regulations "whenever the promulgating authority determines that regulations containing prohibitions or requirements other than those prescribed by section 1453 of this title are necessary to prevent the deception of consumers or to facilitate value comparisons as to any consumer commodity."  15 U.S.C. § 1454(a) & (c).  The statute specifically authorizes the FDA and FTC to promulgate regulations to:

> (4) prevent the nonfunctional-slack-fill of packages containing consumer commodities.
>
> For purposes of paragraph (4) of this subsection, a package shall be deemed to be nonfunctionally slack-filled if it is filled to substantially less than its capacity for reasons other than (A) protection of the contents of such package or (B) the requirements of machines used for enclosing the contents in such package.

*Id.* at (c)(4).  Although the FDA promulgated specific regulations governing slack-fill in food products, neither the FDA nor the FTC promulgated slack-fill regulations governing cosmetics, despite having the explicit statutory authority to do so.

---

[7]   The FDA's over-the-counter drug regulations likewise cover the form of the labeling requirements, the designations and labeling of ingredients, and exemptions from the labeling requirements.  *See* 21 C.F.R. § 201.60–.66; 21 C.F.R. § 250.5.  Specific regulations for over-the-counter drugs impose requirements as to the information on the principal display panel, identity labeling, format and content requirements for labeling, and a declaration of net quantity of contents expressed, *inter alia*, in ounces.  *See* 21 C.F.R. § 201.60–.66.  As with cosmetics, there is no over-the-counter drug regulation similar to 21 C.F.R. § 100.100, which proscribes non-functional slack-fill in food products.

**B.** **State Law Claims Premised on Regulations that Are Different from, in Addition to, or Not Identical to the Federal Laws and Regulations Governing Cosmetics Are Expressly Preempted**

Each of Plaintiff's claims seek to impose liability based on Defendant's alleged failure to conform the labeling and packaging of its cosmetic products to the FDA's regulations governing non-functional slack-fill in food products.  Because, however, the FDA regulates food and cosmetics separately, the FDA's food regulations do not apply to cosmetic labeling and packaging.  *See Astiana v. Hain Celestrial Grp., Inc.,* 905 F. Supp. 2d 1013, 1016 (N.D. Cal. 2012), ("The only FDA statement regarding the use of the word 'natural' … is limited to the food labeling context ... The FDA has not issued any similar statement with regard to cosmetics labeling.  Because the FDA regulates food and cosmetics labels separately, … the court finds no basis for importing this policy statement into the cosmetics context.") (internal citations omitted).

By seeking to apply the FDA's regulations governing food to cosmetics, Plaintiff is seeking to impose different, additional, and non-identical requirements to the existing FDA regulations that govern cosmetics.  Plaintiff's claims are therefore preempted.  *See Ebner v. Fresh Inc.*, No. SACV 13–00477 JVS, 2013 WL 9760035, at *6 (C.D. Cal. Sept. 11, 2013) (state law claims based on defendant's allegedly deceptive packaging and net contents labeling of its lip balm product expressly preempted by 21 U.S.C. § 379s); *In re PepsiCo Inc. Bottled Water Marketing and Sales Practices Litig.*, 588 F. Supp. 2d 527, 538 (S.D.N.Y. 2008), (state law claims alleging that the use of the word "pure" on Aquafina water bottles misleadingly suggested that the water was from a mountain source when in fact Aquafina is purified tap water were preempted, finding that "[w]here federal requirements address the subject matter that is being challenged through state law claims, such state law claims are preempted to the extent they do not impose identical requirements"); *see also Turek v. Gen. Mills. Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) ("consistency is not the test" under the FDCA's preemption clauses—"identity is").

Directly on point is Judge Scheindlin's recent decision in *Bowling v. Johnson & Johnson*, No. 14–cv–3727, 2014 WL 5643955 (S.D.N.Y. Nov. 4, 2014).  There, the court dismissed state law claims based on allegedly misleading labels on Listerine mouthwash as expressly preempted by the FDCA.  The court initially noted that:

> preemption is certainly appropriate when a state law prohibits labeling that is permitted under federal law.  But it is *also* appropriate when a state law prohibits labeling that is *not prohibited* under federal law.  The standard, in other words, is not whether a state law actively undermines federal law.  It is whether state law diverges from federal law *at all*.

*Id*. at *2 (emphasis in original).  The *Bowling* court concluded that plaintiff's state law claims were preempted because "[i]f successful, this litigation would do exactly what Congress, in passing 21 U.S.C. 379r of the FDCA sought to forbid:  using state law causes of action to bootstrap labeling requirements that are not identical with federal regulations."  *Id*. at *3.

*Del Real, LLC v. Harris*, 966 F. Supp. 2d 1047 (E.D. Cal. 2013), is also on point.  *Del Real* involved a challenge to the slack‑fill provisions of the California Fair Packaging and Labeling Act ("CFPLA").  The CFPLA sought to prohibit non‑functional slack‑fill, other than for enumerated reasons, in products not subject to the FDCA's food slack‑fill requirements, essentially requiring compliance with the same slack‑fill regulations as those contained in 21 C.F.R. § 100.100.  *Id.* at 1054.

The plaintiff was a meat and poultry products packager that challenged California's slack‑fill regulations as preempted by the federal Poultry Products Inspection Act, 21 U.S.C. § 451 *et seq.* ("PPIA"), and the Federal Meat Inspection Act, 21 U.S.C. § 601 *et seq.* ("FMIA").  Both the PPIA and FMIA contained express preemption provisions similar to if not less restrictive than § 379s of the FDCA, preempting state law requirements that were "in addition to or different than" those contained in the PPIA, FMIA, and the regulations promulgated

10

thereunder.  Under the FMIA and PPIA, meat and poultry were exempted from the FDCA's food packaging requirements, but both statutes explicitly authorized the Secretary of Agriculture to prescribe standards governing slack-fill.  *Id.* at 1052.  Specifically, the Secretary was authorized to issue regulations prohibiting meat and poultry from being sold in packages "filled [so] as to be misleading," which the applicable regulations defined as "[i]f its container is so made, formed or filled so as to be misleading."  *Id.* at 1056–57 (citing 9 C.F.R. §§ 317.8(a), 301.2 & 381.1).[8]

Despite the express invitation from Congress, the governing agencies did not promulgate non-functional slack-fill regulations under either the PPIA or FMIA.  Because "the CFPLA prohibits nonfunctional slack-fill in packages, a prohibition that is simply non-existent under federal law," the *Del Real* Court held that the CFPLA's slack-fill provisions were expressly preempted.  *Id.* at 1061.  The Court concluded that "the CFPLA's slack-fill provisions are 'requirement[s] in addition to or different than' those set forth in the FMIA and PPIA."  *Id.* at 1064.  *See also Nat'l Meat Association v. Harris*, -- U.S. --, 132 S. Ct. 965, 970 (2012) ("FMIA's preemption clause sweeps widely.... The clause prevents a State from imposing any additional or different—even if non-conflicting—requirements that fall within the scope of the Act."); *Jones v. Rath Packing Co.*, 430 U.S. 519, 532 (1977) (California law that did not allow for variations in weight of bacon based upon moisture loss imposed requirements that were "different than" the federal standards and therefore preempted).

---

[8]    Although not cited in the complaint, the FDCA contains a similar proscription against misbranding of cosmetic products in 21 U.S.C. § 362(d) ("A cosmetic shall be deemed to be misbranded … if its container is so made, formed, or filled as to be misleading.") and a virtually identical provision that prohibits misbranding of over-the-counter drugs in 21 U.S.C. § 352(i) (A drug or device shall be deemed to be misbranded … [i]f it is a drug and its container is so made, formed, or filled as to be misleading.").  As discussed above, the FDA has the power to promulgate specific and detailed regulations to implement §§ 362(d) or 352(i) of the FDCA.  Although the FDA chose to promulgate specific regulations governing the packaging and labeling of cosmetics and drugs, it chose not to enact cosmetic or drug slack-fill regulations similar to those enacted for food.  Moreover, Plaintiff could not have brought suit under §§ 362(d) or 352(i) or any other provision of the FDCA since there is no private right of action under that statute.  *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997).

Here, the labeling and packaging of cosmetics are governed by specific and comprehensive FDA regulations. *See Astiana*, *supra*, 905 F. Supp. 2d at 1016 (citation omitted). *Accord*, *Ebner*, *supra* at *6. There are, however, no FDA regulations prohibiting non‑functional slack‑fill in cosmetics, similar to 21 C.F.R. § 100.100. The doctrine of preemption bars Plaintiff from attempting to impose such requirements on Defendant through the state law claims asserted in this case.

## II.  PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF BECAUSE HE CANNOT ALLEGE THE THREAT OF FUTURE HARM

In count I of the complaint, Plaintiff seeks injunctive relief under GBL § 349. Plaintiff, however, lacks standing to bring that claim because he does not and cannot allege a threat of future harm sufficient to satisfy the "case or controversy" requirement of Article III.

To establish the "irreducible constitutional minimum" of Article III standing, Plaintiff must plausibly allege: (1) an "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) that it is "likely," and not merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted). Plaintiff, as "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

When a plaintiff seeks injunctive relief, allegations of past harm alone are insufficient to establish Article III standing. *See Zielinski v. DeFreest*, No. 12 CIV. 1160 JPO, 2013 WL 4838833, at *16 (S.D.N.Y. Sept. 10, 2013). The Supreme Court has made clear that the standing requirement "cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.' "

*City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); s*ee also O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).[9]

The fact that Plaintiff brings this case as a putative class action does not change the analysis.  Putative class plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *Accord Allee v. Medrano*, 416 U.S. 802, 828–29 (1974) (Burger, C.J., concurring in part, dissenting in part).

*Tomasino v. Estee Lauder Companies Inc.*, No. 13–CV–4692 ERK JMA, 2014 WL 4244329 (E.D.N.Y. Aug. 26, 2014), is on point.  In that case, the plaintiff brought a putative class action lawsuit against a cosmetics manufacturer for allegedly deceptive product labeling, *inter alia*, in violation of GBL § 349.  *Id.* at *1.  The court held that the plaintiff did not allege "a sufficient future injury to establish standing to assert her claims for injunctive relief because she has demonstrated that she is, in fact, unlikely to purchase [the] products again."  *Id.* at *3. Indeed, as the court noted, the plaintiff in *Tomasino*, "made clear that she does not believe the ... products have the effects advertised by Estee Lauder, and that she would not have purchased them in the first place absent the allegedly misleading advertisements."  *Id.  See also Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013) (satellite radio customer lacked standing to seek an injunction since he "was no longer an XM customer at the time this action was filed" and because "he is now keenly aware of XM's renewal practices and policies, and as such, he is very unlikely to suffer from being billed without his knowledge").

---

[9]   To the extent the requested injunction is aimed at deterring future conduct, that is likewise insufficient to establish Article III standing.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108–09  (1998) (a "generalized interest in deterrence … is insufficient for purposes of Article III") (citing *Lyons*, 461 U.S. at 111).

Here, Plaintiff predicates his claim for injunctive relief upon past injury, but he makes no allegation—nor can he—that he is likely to be injured in the future.  Just like the plaintiffs in *Tomasino* and *Vaccariello*, Plaintiff acknowledges that he will *not* be injured in the future because he will not purchase Defendant's allegedly "slack-filled" products again.  (C. ¶ 43 ("Had Plaintiffs known Defendant's packaging was slack-filled, they would not have bought the slack-filled Products.")).

Finally, it does not matter that Plaintiff filed the complaint as a putative class action.  He cannot base his request for injunctive relief on the allegation "that injury has been suffered by other, unidentified members of the [proposed] class…."  *Steel Co.*, *supra*, 523 U.S. at 108.  For this additional reason, Plaintiff's second cause of action should be dismissed.

## III.   PLAINTIFFS' GBL § 349 CLAIMS SHOULD BE DISMISSED FOR FAILURE TO PLAUSIBLY ALLEGE THAT A REASONABLE CONSUMER WOULD BE DECEIVED BY THE SIZE OF THE PACKAGE

### A.   New York Employs an Objective Test in Analyzing GBL § 349 Claims

To state a *prima facie* case under GBL § 349, a plaintiff must allege that the defendant (1) engaged in consumer oriented conduct, (2) that is materially misleading, and (3) that plaintiff suffered injury as a result of the allegedly deceptive act or practice.  *City of N.Y. v. Smokes–Spirits.Com, Inc.*, 12 N.Y.3d 616, 621–22, 883 N.Y.S.2d 772, 776 (2009).  "The phrase 'deceptive acts or practices' under the statute is not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer."  *Thomas v. JPMorgan Chase & Co.*, 811 F. Supp. 2d 781, 800 (S.D.N.Y. 2011), (internal quotations and citations omitted).

In New York, the test for determining whether an action is materially misleading is whether the practice is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 744 (S.D.N.Y. 2012).  New York

courts apply an objective standard of deception in assessing claims under GBL § 349 and "[t]here can be no claim for deceptive acts or practices … when the alleged deceptive practice was fully disclosed." *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 227–28 (S.D.N.Y. 2011), (dismissing GBL § 349 claim) (quoting *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 404 (S.D.N.Y. 2010)), (dismissing plaintiff's GBL § 349 claim against StubHub where StubHub included a disclaimer on its website regarding the facts at issue); *Sands v. Ticketmaster-New York, Inc.*, 1994 WL 662956 (Sup. Ct. N.Y. Cnty. June 23, 1994) (dismissing plaintiff's GBL § 349 claim where the "practice that the plaintiff attacks is fully disclosed"), *aff'd* 207 A.D.2d 687, 687, 616 N.Y.S.2d 362, 363 (1st Dep't 1994). This objective determination can be made as a matter of law. *See, e.g.*, *Weinstein*, 819 F. Supp. at 228–29.

### B. Because the Package Accurately States the Quantity of Product in Ounces and Grams, Plaintiff's GBL Claims Fail as a Matter of Law

Plaintiff's GBL § 349 claims seek to predicate liability based on the size of the packaging, which allegedly misled Plaintiff into believing that he was buying more product than was actually sold. (C. ¶¶ 1–2, 5–6, 11, 31, 34, 36, 37, 41–47, 54, 66, 72–73). Because, however, the Products' labels specify the exact quantity of the product being sold by weight (in both ounces and grams) on the front of the package, as required by the applicable FDA cosmetic regulations, no reasonable consumer would be deceived by the size of the package into believing that the package contained more product than the stated quantity. *See Red v. Kraft Foods, Inc.*, No. CV–10–1028–GW (AGRx), 2012 WL 5504011 at *3 (C.D. Cal. Oct. 25, 2012) (dismissing California consumer fraud claims where "the claim alleges that a consumer will read a true statement on a package and will then disregard 'well–known facts of life' and assume things about the products *other than* what the statement actually says"); *Stokely-Van Camp Inc. v. Coca–Cola Co.*, 646 F. Supp. 2d 510, 531 (S.D.N.Y. 2009), ("It would be remarkable indeed if a

consumer were significantly concerned about obtaining the necessary daily requirement of calcium that he or she would drink a sports drink to obtain it, and yet so unconcerned that he or she would not even read the label that says the sports drink is not a sufficient source of calcium.").

In directly analogous circumstances, the Court in *Verzani v. Costco Wholesale Corp.*, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010), *aff'd* 432 Fed. Appx. 29, 2011 WL 4359936 (2d Cir. Sept. 20. 2011), rejected GBL § 349 claims premised on the allegation that a reasonable consumer would believe that the net weight disclosed on the label for a shrimp tray product referred only to shrimp and not to other ingredients in the package. The Court reasoned:

> Net weight means the weight of an item exclusive of its packaging…. Verzani's interpretation of 'net weight' as including 16 ounces of shrimp alone is objectively unreasonable … Contrary to plaintiff's wholly unsupported allegation, a reasonable consumer would not read the label as promising that the package contained sixteen ounces of shrimp…. In fact, the product's name alone, 'Shrimp Tray with Cocktail Sauce,' suggests that a consumer (at a minimum) is purchasing shrimp and cocktail sauce. A reasonable consumer reading the tray's label would not pick out 'shrimp' to the exclusion of all the information on the label (including the product's name and the listed ingredients) when assessing the net weight of the product.

*Id.* at *2 (citations omitted). The *Verzani* Court concluded that "[b]ecause the label accurately states the combined weight of the food in the tray, Verzani's GBL § 349 claim could not survive a motion to dismiss." *Id.* at *3.

Here, Defendant informed Plaintiff of the net quantity of its products in the only manner prescribed by the FDA, by listing the weight of the products on its front label. *See* 21 C.F.R. § 701.10–13. Defendant represented that the package contained 2.7 ounces of product, Plaintiff purchased 2.7 ounces of product, and Plaintiff received 2.7 ounces of product. (C. ¶¶ 1–2, 27,

75).  Because no reasonable consumer would be misled as to the quantity of product, Plaintiffs'

GBL § 349 claims should be dismissed.

## IV.    THE SAFE HARBOR PROVISION OF GBL § 349(d) IS A COMPLETE DEFENSE TO PLAINTIFF'S § 349 CLAIMS

GBL § 349(d) provides a safe harbor, barring any claim for damages if the defendant

complies with applicable federal regulations.  The statute provides that "it shall be a *complete*

*defense* that the act or practice ... complies with the rules and regulations…."  GBL § 349(d)

(emphasis added).

In the present case, there is no dispute that Defendant complied with all applicable FDA

cosmetic regulations, including informing the consumer of the net quantity of the products'

contents in the only manner prescribed by the FDA—in weight (in both ounces and grams) on

the package's primary display label.[10]   21 C.F.R. § 701.10–13.   Because Defendant fully

complied with all applicable FDA regulations governing cosmetics, Plaintiff's GBL § 349 claims

are barred by sub‑section (d) of that statute.  *See Porr v. Nynex Corp.*, 230 A.D.2d 564, 576, 660

N.Y.S.2d 440, 448 (2d Dep't 1997), *leave denied* 91 N.Y. 2d 807 (1998) ("there is no violation

of General Business Law § 349 if the challenged conduct is in compliance with the rules and

regulations of a *Federal* commission (General Business Law § 349 [d])"); *Am. Home Prods.*

*Corp. v. Johnson & Johnson*, 672 F. Supp. 135, 144–45 (S.D.N.Y. 1987) (aspirin manufacturer's

compliance with FDA labeling regulations afforded it a complete defense under § 349(d) to

consumer fraud claim brought by competitor); *see also People ex rel. Spitzer v. Direct Revenue,*

*LLC*, No. 401325/06, 2008 WL 1849855, at *5 (Sup. Ct. N.Y. Cnty. Mar. 12, 2008) (under GBL

---

[10]   Nor is there any dispute that Defendant complied with all applicable FDA over-the-counter drug regulations, including informing the consumer of the net quantity of the products' contents in the only manner prescribed by the FDA—in weight (in ounces) on the package's primary display label. 21 C.F.R. § 201.62.

§ 350, "it is a complete defense that the advertisement is subject to and complies with the rules and regulations of, and the statutes administered by the Federal Trade Commission").

*Ebner v. Fresh Inc.*, No. SACV 13–00477 JVS, 2013 WL 9760035, at *4 (C.D. Cal. Sept. 11, 2013), further illustrates the point. There, the court dismissed claims asserted under California's deceptive practices act because the defendant's net contents' declaration on the labeling of lip balm met FDA and state law requirements, thus falling within California's similar safe harbor from its consumer protection statutes. The court noted that "both the FDA and California legislature have decided that consumers will be adequately protected if a cosmetic label provides the net quantity of contents in accordance with the statutory requirements." *Id.* at *5. The court further relied on the FDA's authority to issue additional regulations if it determined that existing regulations were insufficient to protect the consumer, stating: "if the FDA found that stating the net quantity did not provide consumers with proper value comparisons, it could issue further regulations." *Id.* The *Ebner* court then concluded that "[b]ecause Defendant's labeling is permitted and required conduct under state and federal law, it is entitled to safe harbor." *Id.* at *6.

Here, the labeling and packaging of Defendant's products fully complies with all applicable FDA regulations governing cosmetics. *See*, *e.g.*, 21 C.F.R. § 701.10–13 *et seq.* Accordingly, Defendant's § 349 claims are barred by the safe harbor provisions of GBL § 349(d).

## V.    TO THE EXTENT PLAINTIFF CONTENDS THAT HE WOULD NOT HAVE PURCHASED THE PRODUCT BUT FOR THE ALLEGED DECEPTION, HIS CLAIM IS NOT COGNIZABLE UNDER GBL § 349

To the extent Plaintiff seeks to recover the full purchase price of the products he purchased (C. ¶¶ 11; 43; 45–48; 54; 56, 82, 85), he cannot recover those alleged damages under

GBL § 349.  New York law is clear:  the alleged deception cannot be both the act and the injury. In *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56, 698 N.Y.S.2d 615 (1999), the New York Court of Appeals squarely rejected the argument that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349").  *Accord Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 676 (S.D.N.Y. 2012) ("New York courts have rejected the notion that a defendant's deception alone—in other words, allegations of pecuniary loss arising solely from the purchase of the defendant's product—may suffice to plead 'actual injury' for a Section 349 claim.").

## VI.   PLAINTIFF'S FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS FAIL TO STATE A CAUSE OF ACTION

### A.   The Fraud and Negligent Misrepresentation Claims Are Subject to the Heightened Pleading Standard of Rule 9(b)

In the Second Circuit, "any claim for misrepresentation—either fraudulent or negligent—must meet Rule 9's heightened pleading standards."  *AVRA Surgical Robotics, Inc. v. Gombert*, 13 CIV. 3309 NRB, 2014 WL 4203089, at *7 (S.D.N.Y. Aug. 22, 2014).  *See also Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005).  To satisfy the heightened pleading standard of Rule 9(b), a plaintiff "must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000).  Plaintiff's complaint fails to meet this standard.

### B.   There Was No Misrepresentation or Reasonable Reliance Because the Labeling and Packaging Accurately State the Quantity in Ounces and Grams

To state a claim for fraud under New York law, a plaintiff must allege "a material false representation, an intent to defraud thereby, and reasonable reliance on the representation,

causing damage to the plaintiff." *May Dep't Stores Co. v. Int'l Leasing Corp., Inc.*, 1 F.3d 138, 141 (2d Cir. 1993). Negligent misrepresentation claims similarly require reliance on a materially false representation. *See Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012).

Plaintiff alleges that Unilever's Products are misleading as to the quantity of product contained inside, because the containers are larger than necessary. But this conveniently ignores the fact that Defendant truthfully and accurately disclosed the quantity of product in both ounces and grams—2.7 ounces/76 grams—on the package's primary display label.

As with Plaintiff's GBL § 349 claims, no reasonable consumer could reasonably have been misled as to the actual quantity of product in the package, when the label clearly stated the quantity in ounces and grams, in accordance with the applicable FDA regulations. Nor could a reasonable consumer have reasonably relied on the size of the package for information as to quantity when the label states the quantity in ounces and grams. This is an *objective* standard; there can be no fraud or misrepresentation where a plaintiff, in the exercise of reasonable care and diligence, would have discovered or realized the falsity of the alleged misrepresentation. *See, e.g.*, *Rosenblum v. Glogoff*, 96 A.D.3d 514, 515, 946 N.Y.S.2d 167, 169 (1st Dep't 2012) ("Where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he cannot claim justifiable reliance on defendant's misrepresentations." (quoting *Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*, 245 A.D.2d 96, 98–99 (1st Dep't 1997)); *88 Blue Corp. v. Reiss Plaza Assocs.*, 183 A.D.2d 662, 664, 585 N.Y.S.2d 14, 16 (1st Dep't 1992) (same). Plaintiff's fraud and negligent misrepresentation claims are therefore deficient.

### C. The Negligent Misrepresentation Claim Should Be Dismissed Because It Is Based on Mass Communications to the Public Generally and Plaintiff Cannot Allege the Requisite Privity or Special Relationship

Plaintiff's negligent misrepresentation claim is deficient for yet another reason. To recover for negligent misrepresentation, a plaintiff must be in privity of contract or have a special relationship with the defendant. *See Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 424, 541 N.Y.S.2d 335 (1989).

Under well-settled New York law, mass communications to the public at large are insufficient to satisfy the privity or special relationship requirement of a negligent misrepresentation claim. *See, e.g.*, *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 624 (S.D.N.Y. 2012) (dismissing negligent misrepresentation claim in action against drug manufacturer because "Plaintiff was not in privity of contract with Abbott, and she has not alleged that she was a 'known party' to Abbott or that Abbott undertook specific conduct linking it to her and evincing its understanding of her alleged reliance on its ads"); *Tuosto v. Philip Morris USA Inc.*, 05 CIV. 9384 (PKL), 2007 WL 2398507, at **14–15 (S.D.N.Y. Aug. 21, 2007) ("mass communication cannot establish privity with unidentified members of the public");

Because Plaintiff cannot satisfy the privity or special relationship requirement by relying on mass communications to the public, his negligent misrepresentation claim fails for this additional reason.

## VII. THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED BECAUSE IT IS DUPLICATIVE OF PLAINTIFFS' STATUTORY AND TORT CLAIMS THAT PLEAD SPECIFIC ACTIONABLE WRONGS

In New York, to state a claim for unjust enrichment, "[a] plaintiff must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." *Mandarin*

*Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182, 919 N.Y.S.2d 465, 471 (2011) (internal quotations and citation omitted).

Unjust enrichment is not available, however, if the plaintiff has pled specific actionable wrongs.  As explained by the New York Court of Appeals:

> [U]njust enrichment is not a catchall cause of action to be used when others fail.  It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff….   An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.

*Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 745, *reargument denied* 19 N.Y.3d 937 (2012); *see also Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 557 (S.D.N.Y. 2014) (dismissing unjust enrichment claim where it was duplicative and "simply rehashe[d]" other legal claims).

Moreover, "[u]njust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists."  *Federal Treasury Enterprise Sojuzplodoimport v. Spirits Int'l N.V., SPI*, 400 Fed. Appx. 611, 613 (2d Cir. 2010).  *Accord*, *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81, 854 N.Y.S.2d 83, 89 (2008) (unjust enrichment claim was properly dismissed because adequate remedy at law existed); *see also* 30A Corpus Juris Secundum Equity § 17 ("the touchstone for equity is the lack of an adequate legal remedy").

Here, Plaintiff asserts a claim for unjust enrichment as a "catchall" cause of action that is duplicative of his defective statutory and tort claims, each of which provide an adequate remedy at law.  New York law is clear that an unjust enrichment claim may not be used in this manner.  If  Plaintiff's other claims succeed, the unjust enrichment claim is duplicative.  If Plaintiff's other claims are defective, the equitable remedy of unjust enrichment cannot cure the defects in those causes of action.  Either way, Plaintiff's unjust enrichment claim should be dismissed.

**VIII.  TO THE EXTENT PLAINTIFF'S CLAIMS ARE BASED ON DEFENDANT'S ADVERTISING AND MARKETING PRACTICES, THEY SHOULD BE DISMISSED FOR LACK OF STANDING AND CAUSATION**

Plaintiff sprinkles references to Defendant's advertising and marketing throughout the complaint.  (C. ¶¶ 16, 39, 46, 54, 66, 73, 77, 83, 95).  But Plaintiff does not allege that he ever heard or saw—much less relied upon—any of Defendant's advertising or marketing.  To the extent Plaintiff seeks to premise liability on Defendant's advertising and marketing of its Products, such claims should be dismissed for want of a causal connection between Defendant's advertising and marketing and Plaintiff's alleged injury.

First, Plaintiff's inability to allege a causal connection between the injury and the advertising and marketing complained of fails to satisfy the constitutional standing requirement of Article III.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  It is well-settled that a putative class plaintiff who was not injured as a result of advertising and marketing lacks standing to bring claims based on that conduct.  *See, e.g.*, *Mlejnecky v. Olympus Imaging Am. Inc.*, No. 2:10–CV–02630, 2011 WL 1497096, at *5 (E.D. Cal. Apr. 19, 2011) (plaintiff lacked standing to pursue claims based on allegedly "false and misleading advertising" that plaintiff did not allege he viewed); *Johns v. Bayer Corp.*, No. 09–cv–1935, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) (same).

Secondly, causation is an essential element of each of Plaintiff's causes of action.  As the Appellate Division explained in affirming the dismissal of a GBL § 349 claim, "[i]f the plaintiff did not see any of these statements, they could not have been the cause of his injury, there being no connection between the deceptive act and the plaintiff's injury."  *Gale v. Int'l Bus. Machs. Corp.*, 9 A.D.3d 446, 447, 781 N.Y.S.2d 45, 47 (2d Dep't 2004).  *See also In re MI Windows & Doors, Inc. Prods. Liab. Litig.*, Nos. 12–MN–1, 12–CV–1261, 2013 WL 1363845, at *3 (D.S.C.

23

Apr. 3, 2013), (dismissing GBL § 349 claim where Plaintiff failed to plead that he "ever saw or heard a deceptive advertisement, act, or practice"); *Woods v. Maytag Co.,* No. 10–cv–0559, 2010 WL 4314313, at *14 (E.D.N.Y. Nov. 2, 2010) ("general references to advertisements … will not be sufficient to allege a deceptive act or practice."); *Cohen v. Hertz. Corp.*, No. 13 Civ. 1205, 2013 WL 9450421, at *5, (S.D.N.Y. Nov. 26, 2013) (same); *see also Pullman v. Alpha Media Pub., Inc.*, No. 12–CV–1924, 2013 WL 1290409, at *30 (S.D.N.Y. Jan. 11, 2013) (dismissing fraud claim because plaintiff did not view advertisements and editorials before making her purchase decision); *Whalen v. Pfizer, Inc.*, No. 600125/05, 2005 WL 2875291, at *6 (N.Y. Sup. Ct. Sept. 22, 2005) (dismissing unjust enrichment claim where "plaintiff ha[d] not seen the advertisements").

Here, Plaintiff does not allege that he ever saw, heard or relied on any of Defendant's advertising or marketing.  Thus, Plaintiff has not satisfied the causal connection requirement for standing, nor the causation element of any of his state law claims.  To the extent that any claims are based on Defendant's advertising or marketing, they should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Unilever's motion should be granted and the complaint should be dismissed with prejudice.

Dated: New York, New York
          December 22, 2014

Respectfully submitted,

**WINSTON & STRAWN LLP**


By:     /s/ Thomas J. Quigley
          Thomas J. Quigley
          Desiree M. Ripo
          Nicholas R. Alioto
          200 Park Avenue
          New York, NY  10166–4193
          Telephone:  (212) 294–6700
          Facsimile:  (212) 294–4700

          tquigley@winston.com
          dmripo@winston.com
          nalioto@winston.com

          *Attorneys for Defendant*
          *Unilever United States, Inc.*

25