UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| TIMBA BIMONT,<br>SYLVIA BETHEA,<br>LOURDES ROSADO,<br>ROSEMARY ARELLANO,<br>BRENDA STARR,<br>RONALD BRINKLEY,<br>WENDY SYROKA,<br>DAWN KELLY,<br>SERRENA UPTON,<br>KENDRA ANGEL and<br>MARK MCINTIRE,<br>*on behalf of themselves and others similarly situated,*<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>UNILEVER UNITED STATES, INC.,<br><br>　　　　　　　Defendant. | Case No. 14–cv–07749 (JPO) (AJP) |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166–4193

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .......................................................................................................4

ARGUMENT...........................................................................................................................7

I.      Plaintiffs' Claims Are Preempted ..................................................................................7

        A.       Plaintiffs' Claims Based on "Usable" Net Weight Are Preempted ......................7

        B.       Plaintiffs' Claims Based on Total Net Weight Are Preempted ...........................10

        C.       Plaintiffs' Slack-Fill Claims Are Preempted ........................................................13

II.     Plaintiff's Claims Should Be Dismissed Because No Reasonable Consumer
      Would Be Misled ...........................................................................................................15

        A.       No Reasonable Consumer Would Be Misled by the Fact that Consumers
             Cannot Access 100% of the Product from the Containers....................................15

        B.       Plaintiffs' Total Weight Allegations Are Not Objectively Misleading or,
             Alternatively, They Do Not Satisfy Rule 9(b)......................................................16

        C.       No Reasonable Consumer Would Be Misled by the Size of the Package in
             Light of the Net Weight Disclosed on the Labels.................................................17

III.    Plaintiffs' Statutory Claims Are Barred by the Safe Harbors Afforded to a
      Manufacturer that Complies with Applicable Regulations...............................................19

IV.    Plaintiffs Lack Standing to Seek Injunctive Relief Because They Cannot Allege
      the Threat of Future Harm ...............................................................................................20

V.     Plaintiffs' Claims Based on Advertising and Marketing Should Be Dismissed for
      Lack of Causation ...........................................................................................................21

VI.    The Georgia, Alabama, and Indiana Statutory Claims Should Be Dismissed for
      Failure to Comply with the Statutory Notice Requirements.............................................22

VII.   The Ohio Statutory Claim Should Be Dismissed Because It Is Not Available to
      Consumers.......................................................................................................................22

VIII.   Plaintiffs' Express Warranty Claim Should Be Dismissed Because Mandated
      Disclosures Are Not Warranties ......................................................................................23

IX.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed as Duplicative and
      Because Plaintiffs Have an Adequate Remedy at Law......................................................23

CONCLUSION......................................................................................................................24

**Page(s)**

**FEDERAL CASES**

*Allee v. Medrano*,
416 U.S. 802 (1974)........................................................................................21

*Astiana v. Hain Celestial Grp., Inc.*,
905 F. Supp. 2d 1013 (N.D. Cal. 2012) ...............................................13, 15

*Boris v. Wal-Mart Stores, Inc.*,
35 F. Supp. 3d 1163 (C.D. Cal 2014) ...............................................................15

*Bowling v. Johnson & Johnson*,
No. 14–cv–3727, 2014 WL 5643955 (S.D.N.Y. Nov. 4, 2014) ...................10, 14

*Carter v. Novartis Consumer Health, Inc.*,
582 F. Supp. 2d 1271 (C.D. Cal. 2008) .............................................................23

*Chiste v. Hotels.com L.P.*,
756 F. Supp. 2d 382 (S.D.N.Y. 2010) ...............................................................15

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)...........................................................................................20

*Cohen v. Hertz. Corp.*,
No. 13 Civ. 1205, 2013 WL 9450421 (S.D.N.Y. Nov. 26, 2013) .........................22

*Crozier v. Johnson & Johnson Consumer Cos., Inc.*,
901 F. Supp. 2d 494 (D.N.J. 2012) ...................................................................10

*Del Real, LLC v. Harris*,
966 F. Supp. 2d 1047 (E.D. Cal. 2013)..............................................................14

*Ebner v. Fresh,* No. SACV 13–00477 JVS, 2013 WL 9760035
(C.D. Cal. Sept. 11, 2013)...........................................................9, 16, 17, 18, 19

*Federal Treasury Enterprise Sojuzplodoimport v. Spirits Int'l N.V., SPI*,
400 F. App'x. 611 (2d Cir. 2010) .....................................................................24

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007)..............................................................................16

*Givens v. Rent-A-Ctr., Inc.*,
720 F. Supp. 160 (S.D. Ala. 1988) *aff'd*, 885 F.2d 879 (11th Cir. 1989)...............22

*Higgins v. Monsanto Co.*,
862 F. Supp. 751 (N.D.N.Y. 1994) ................................................................23

*Holbrook v. Louisiana-Pac. Corp.*,
533 F. App'x 493 (6th Cir. 2013) ..................................................................22

*In re Apple & AT & T iPad Unlimited Data Plan Litig.*,
802 F. Supp. 2d 1070 (N.D. Cal. 2011) .......................................................24

*In re Balko*,
348 B.R. 684 (Bankr. W.D. Pa. 2006) ..........................................................16

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
903 F. Supp. 2d 198 (S.D.N.Y. 2012) ..........................................................12

*In re PepsiCo Inc. Bottled Water Mktg. and Sales Practices Litig.*,
588 F. Supp. 2d 527 (S.D.N.Y. 2008) ..........................................................10

*Johns v. Bayer Corp.*,
No. 09–cv–1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ....................21

*Johnson v. Monsanto Chem. Co.*,
129 F. Supp. 2d 189 (N.D.N.Y. 2001) ..........................................................23

*Jones v. Rath Packing Co.*,
430 U.S. 519 (1977) ......................................................................................13

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ......................................................................16

*Kraft Foods N. Am., Inc. v. Rockland Cnty. Dep't of Weights and Measures*,
No. 01 Civ. 6980 (WHP), 2003 WL 554796 (S.D.N.Y. Feb. 26, 2003)................11

*Lorillard Tobacco Co. v. Reilly*,
533 U.S. 525 (2001) ........................................................................................6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ......................................................................................20

*Meat Ass'n v. Harris*,
-- U.S. --, 132 S. Ct. 965 (2012) ..................................................................15

*Miller v. Wells Fargo Bank, N.A.*,
994 F. Supp. 2d 542 (S.D.N.Y. 2014) ..........................................................23

*Mlejnecky v. Olympus Imaging Am. Inc.*,
No. 2:10–CV–02630, 2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) ...................21

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ............................................................................................................20

*Phillips v. Philip Morris Cos. Inc.*,
    290 F.R.D. 476 (N.D. Ohio 2013) .....................................................................................22

*Rath Packing Co. v. Becker*,
    530 F.2d 1295 (9th Cir. 1975) ...........................................................................................13

*Red v. Kraft Foods, Inc.*,
    No. CV–10–1028–GW, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)................................18

*Robins v. Global Fitness Holdings*, LLC,
    838 F. Supp. 2d 631 (N.D. Ohio 2012)...............................................................................22

*SMC Corp. v. Peoplesoft USA, Inc.*,
    No. 1:00-CV-01095-LJM-VS, 2004 WL 2538641 (S.D. Ind. Oct. 12, 2004)......................16

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998).............................................................................................................21

*Stokely-Van Camp Inc. v. Coca-Cola Co.*,
    646 F. Supp. 2d 510 (S.D.N.Y. 2009) ................................................................................18

*Stuart v. Cadbury Adams USA, LLC*,
    458 F. App'x 689 (9th Cir.2011) ........................................................................................15

*Tomasino v. Estee Lauder Cos. Inc.*,
    No. 13–CV–4692 ERK JMA, 2014 WL 4244329 (E.D.N.Y. Aug. 26, 2014) ......................20

*Turek v. Gen. Mills. Inc.*,
    662 F.3d 423 (7th Cir. 2011) .............................................................................................10

*Vaccariello v. XM Satellite Radio, Inc.*,
    295 F.R.D. 62 (S.D.N.Y. 2013) .........................................................................................20

*Verzani v. Costco Wholesale Corp.*,
    No. 09 Civ. 2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010), *aff'd* 432 F. App'x
    29, 2011 WL 4359936 (2d Cir. Sept. 20, 2011) ...............................................................8, 18

*Warth v. Seldin*,
    422 U.S. 490 (1975)...........................................................................................................21

*Weinstein v. eBay, Inc.*,
    819 F. Supp. 2d 219 (S.D.N.Y. 2011) ................................................................................15

*Welchert v. Am. Cynamid Inc.*,
    59 F.3d 69 (8th Cir. 1995) ................................................................................................23

*Woori Bank v. RBS Sec., Inc.*,
    910 F. Supp. 2d 697 (S.D.N.Y. 2012) ................................................................17

*Zielinski v. DeFreest*,
    No. 12 CIV. 1160 JPO, 2013 WL 4838833 (S.D.N.Y. Sept. 10, 2013) ...............20

**STATE CASES**

*A.B.C. Home & Real Estate Inspection, Inc. v. Plummer*,
    500 N.E.2d 1257 (Ind. Ct. App. 1986)................................................................22

*Brown Realty Assocs., Inc. v. Thomas*,
    193 Ga. App. 847, 389 S.E.2d 505 (1989)..........................................................22

*Corsello v. Verizon New York, Inc.*,
    18 N.Y.3d 777, 944 N.Y.S.2d 732 (2012) *reargument denied* 19 N.Y.3d 937 (2012) ..........23

*Gale v. Int'l Bus. Machs. Corp.*,
    9 A.D.3d 446, 781 N.Y.S.2d 45 (2d Dep't 2004) ................................................21

*Gipson v. Food Giant*,
    No. 3:13 CV00102-JMV, 2014 WL 670234 (N.D. Miss. Feb 20, 2014) ..............23

*In re MI Windows & Doors, Inc. Prods. Liab. Litig.*,
    Nos. 12–MN–1, 12–CV–1261, 2013 WL 1363845, (D.S.C. Apr. 3, 2013) ..........21

*Lopez v. Nissan N. Am., Inc.*,
    201 Cal. App. 4th 572 (2011) ......................................................................11, 19

*McCarty v. Pedraza*,
    17 N.E.3d 71, 80-81 (Ohio Ct. App. 2014)........................................................23

*New Jersey Citizen Action v. Schering-Plough Corp.*,
    842 A.2d 174 (N.J. Super. App. Div. 2003) ......................................................19

*Porr v. Nynex Corp.*,
    230 A.D.2d 564, 660 N.Y.S.2d 440 (2d Dep't 1997),
    *leave denied* 91 N.Y.2d 807 (1998) ................................................................19

*Samiento v. World Yacht Inc.*,
    10 N.Y.3d 70, 854 N.Y.S.2d 83 (2008) ............................................................24

**CONSTITUTION**

U.S. Const. art. VI, cl. 2 .................................................................6

**STATUTES**

3 Pa. C.S.A § 4117 ......................................................................12

15 U.S.C. § 1453 ...........................................................................8

15 U.S.C. § 1454 ......................................................................8, 13

15 U.S.C. § 1459 ...........................................................................7

15 U.S.C. § 1461 ...........................................................................7

21 U.S.C. § 321 .............................................................................7

21 U.S.C. § 352 ...........................................................................11

21 U.S.C. § 362 ...........................................................................11

21 U.S.C. § 379r ......................................................................7, 10

21 U.S.C. § 379s ...................................................................1, 7, 10

21 U.S.C. § 451 .......................................................................14, 15

21 U.S.C. § 453 ...........................................................................14

21 U.S.C. § 601 .......................................................................14, 15

Ala. Code § 8-19-7 .......................................................................19

Ala. Code § 8–19–10(e) .................................................................22

Cal. Bus. & Prof. Code § 12211 .....................................................12

Fed. R. Civ. P. 9(b) ...................................................................2, 16

Fla. Stat. § 531.41 ........................................................................12

Fla. Stat. § 501.212(1) ..................................................................19

Ga. Code § 10-2-3 ........................................................................12

Ga. Code § 10-1-396(1) .................................................................19

Ga. Code § 10-1-399(b) .................................................................22

Ind. Code § 24-5-0.5-5(a)(2) ................................................................ 22

Ind. Code § 24-5-0.5-6 ...................................................................... 19

N.Y. Ind. Code § 24-5-0.5-6 .............................................................. 19

N.Y. Agric. & Mkts. § 221.11 ............................................................. 12

N.Y. Gen. Bus. L. § 349 ............................................. 3, 5, 6, 18, 19, 20

Ohio Code § 4165.04(A)(1) ............................................................... 19

Ohio Rev. Code. § 1372.50 ................................................................ 12

Okla. Stat. tit. 15, § 754(2) ................................................................ 19

## REGULATIONS

410 Ind. Admin. Code § 12-1-1.4 ...................................................... 12

16 C.F.R. § 500 ............................................................................... 8, 11

21 C.F.R. § 100.100 .................................................. 4, 5, 13, 14, 15

21 C.F.R. § 201.62 ......................................................................... 8, 11

21 C.F.R. § 363 .................................................................................. 11

21 C.F.R. § 350.1–3 ............................................................................. 7

21 C.F.R. § 352 .................................................................................. 11

21 C.F.R. § 451 .................................................................................. 14

21 C.F.R. § 453 .................................................................................. 14

21 C.F.R. § 601 .................................................................................. 14

21 C.F.R. § 701.13 ......................................................................... 8, 11

Ala. Admin. Code § 80-13-6-02 ......................................................... 12

N.J. Admin. Code tit. 13 § 47K-5.2 .................................................... 12

Ohio Admin. Code §901:6-3-12 .......................................................... 12

Ohio Admin. Code § 901:6-9-01(C)(2) ................................................ 12

Okla. Admin. Code § 2-14-38a ........................................................... 12

Okla. Admin. Code § 35:10-11-1 ...................................................................................12

**OTHER AUTHORITIES**

National Institute of Standards and Technology, *Checking the Net
Contents of Packaged Goods* ..........................................................................11, 12

## PRELIMINARY STATEMENT

This brief is submitted in support of the motion by Unilever United States, Inc. ("Unilever" or "Defendant") to dismiss Plaintiffs' First Amended Complaint ("FAC"). Plaintiffs assert state consumer protection and common law claims based on three theories arising out of the labeling and packaging of Unilever's 2.7 ounce and 3.0 ounce AXE Gold Temptation and Degree Dry Protection deodorant and antiperspirant products (the "Products").

First, Plaintiffs contend that the disclosed net weight on the Products' labels is misleading because a residual amount sticks to the container and therefore not all of the product is "usable." Plaintiffs apparently seek to predicate liability on Unilever's failure to disclose the "usable" or "readily accessible" net weight in addition to or in lieu of the total net weight.

Second, Plaintiffs allege that the total net weight disclosed on the Products' labels is misleading because Plaintiffs somehow measured both the "usable" portion and "unusable" portion and arrived at a total net weight slightly less than that disclosed.

Third, Plaintiffs seek to impose liability on Unilever for selling Products in packages that are larger than the actual quantity of deodorant or antiperspirant contained inside. Plaintiffs allege that the packages contain "non-functional slack-fill." They claim to have been misled into thinking that the packages contained more than the net quantity disclosed on the labels.

All of Plaintiffs' claims are barred by the doctrine of federal preemption. The Food, Drug, and Cosmetic Act ("FDCA") expressly preempts state law claims that seek to impose any requirement on labeling and packaging that is "different from or in addition to, or that is otherwise not identical to" the FDCA and its implementing regulations promulgated by the Food and Drug Administration ("FDA"). 21 U.S.C. § 379s. The FDA's cosmetic and over-the-counter ("OTC") drug labeling and packaging regulations only require the Products to contain a declaration of net quantity of contents expressed in ounces on the principal display panel. The

Products' principal display labels state the quantity of antiperspirant or deodorant contained therein in both ounces (2.7 or 3.0), and grams (76 or 85). Plaintiffs' claims based on Unilever's failure to also disclose the "usable" net weight are preempted.

Federal regulations also permit minor variations from the net weight disclosed on the labels within specified ranges. The variations in total net weight alleged by Plaintiffs fall within the allowable ranges. Thus, Plaintiffs' total net weight claims, which seek to impose a requirement that the net weight in the container equal the disclosed net weight without any variation, is likewise preempted.

Plaintiffs' slack-fill claims are preempted because the FDA has chosen not to enact regulations for cosmetics and OTC drugs prohibiting non-functional slack-fill, as it did with respect to food products. Applying FDA food regulations to cosmetics and OTC drugs, as Plaintiffs here seek to do, would impose preempted state law requirements on Unilever.

Plaintiffs' claims also fail to state a cause of action under state law. Reasonable consumers are—or should be—aware that some residual amount of solid deodorants and antiperspirants will stick to the container and not be accessible by the consumer. This is fatal to Plaintiffs' "usable" net weight claims.

Plaintiffs' total net weight claims fail because it is not objectively misleading for there to be minor variances in net weight, as evidenced by the applicable federal standards that allow for such variations. In addition, Plaintiffs do not allege how they measured the "unusable" portion in determining that the total net weight falls short. Without this essential component, Plaintiffs' total net weight claims fail to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b) for those causes of action sounding in fraud.

Plaintiffs' slack-fill claims should be dismissed because the labels on Defendant's Products state the quantity of product in ounces and grams, in compliance with federal law. No reasonable consumer would be deceived as to the actual quantity of the product, since that quantity—2.7 ounces/76 grams or 3.0 ounces/85 grams—is clearly displayed on the label.

Plaintiffs' statutory consumer protection claims fail for the additional reason these laws afford a safe harbor barring suit, where a manufacturer complies with applicable laws and regulations. Unilever did just that. It cannot be held liable for not making additional disclosures over and above those required by federal law.

Plaintiffs' request for injunctive relief should be dismissed because Plaintiffs admit that they now know all of the facts concerning the alleged deception of which they complain. There is no danger that any of these Plaintiffs will be deceived in the future. Because there is no threat of future harm to these Plaintiffs, they lack standing to seek injunctive relief.

Plaintiffs' claims based on Defendant's advertising and marketing practices should be dismissed because Plaintiffs do not allege that they saw, heard, or relied on any such advertisement or marketing. Plaintiffs have not alleged a causal connection between Unilever's advertising and marketing practices and their alleged harms.

The three plaintiffs who have sued under the consumer protection statutes of Georgia, Alabama, and Indiana, respectively, cannot pursue those claims because they failed to give the pre-suit notice that is required by each of those states' statutes. And, the plaintiff who seeks to recover under Ohio's Deceptive Trade Practices Act cannot do so because that statute is not available to consumers.

Plaintiffs' common law claims for breach of express warranty are deficient because the net weight disclosures upon which they are based are mandated by federal law. A federally required disclosure cannot give rise to an express warranty cause of action.

Finally, Plaintiffs' unjust enrichment claim should be dismissed, both because it is duplicative of Plaintiffs' statutory and tort claims and because this equitable remedy is unavailable where, as here, an adequate remedy at law exists.

## STATEMENT OF FACTS

Unilever is one of the world's leading consumer product companies. Through a wholly owned subsidiary, it manufactures and sells various deodorants and antiperspirants, including the Products. Plaintiffs are eleven individuals who claim to have purchased the Products in the respective states in which they reside. (FAC ¶¶ 14-24).

The original complaint was brought on behalf of only one plaintiff, Timba Bimont, and asserted causes of action under New York law. All of the claims in the original complaint were based on the allegation that the 2.7 ounce version of Unilever's AXE and Degree products were sold in packages that are larger than necessary and therefore contain "non-functional slack-fill," which Plaintiffs define as "the difference between the actual capacity of a container and the volume of product contained within." (FAC ¶ 38). In the original complaint, Plaintiff repeatedly cited 21 C.F.R. 100.100, which set forth the FDA regulations that govern non-functional slack-fill in food products.[1]

After Unilever moved to dismiss the original complaint, Plaintiff amended by adding ten plaintiffs to the case, and asserting causes of action arising under the state laws of nine

---

[1] 21 C.F.R. 100.100 states that: "a *food* shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading. (a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein." 21 C.F.R. 100.100 (emphasis added). 21 C.F.R. 100.100 then enumerates six permissible reasons for a manufacturer to fill a food package to less than its capacity without violating this prohibition against non-functional slack-fill. *Id.*

4

jurisdictions in addition to New York. In the FAC, Plaintiffs re-assert the identical allegations regarding non-functional slack-fill, but delete the multiple references to 21 C.F.R. § 100.100, after Unilever's initial motion pointed out that those regulations applied exclusively to food products and not cosmetics or OTC drugs.

In addition to basing their claims on alleged slack-fill, Plaintiffs now contend that the "usable" net weight, which Plaintiffs define as the amount of the Product that the consumer can readily access from the container, is actually less than either the 2.7 ounces/76 grams or 3.0 ounces/85 grams displayed on the labels. (FAC ¶ 39). According to Plaintiffs, residual amounts of Unilever's solid deodorants and antiperspirants stick to the containers, and therefore, the amount actually accessible is less than the disclosed weight.

Plaintiffs also contend that the "total net weight" of the Products is less than the displayed net weights of 2.7 ounces/76 grams or 3.0 ounces/85 grams. (FAC ¶ 41). Plaintiffs purport to determine the "total net weight" by adding together the "usable" portion and the "unusable" portion, which Plaintiffs define as the portion "embedded in the container that cannot be accessed by the consumer." (FAC ¶ 41 and Ex. D). Plaintiffs do not identify how they were able to weigh the "unusable" portion since, by Plaintiffs' own definition, that portion remains stuck to the container after all of the "usable" portion is extracted. (*Id.*).

Accordingly, Plaintiffs now seek to premise liability on three substantive theories: (1) the net weight listed on the labels allegedly is inaccurate because Plaintiffs were not able to access the entire quantity of product and therefore not all of the disclosed net weight is "usable"; (2) the "total net weight" allegedly is inaccurate because the sum of the "usable" and "unusable" portions is less than the displayed net weight; and (3) the Products allegedly contain non-functional slack-fill.

Plaintiffs allege that these three claims give rise to liability under the following 13 state consumer protection statutes: (1) Injunctive relief under New York General Business Law ("NY GBL") § 349; (2) Damages under NY GBL § 349; (3) New Jersey Consumer Fraud Act; (4) California Consumer Legal Remedies Act; (5) California Unfair Competition Law; (6) California False Advertising Law; (7) Florida Deceptive and Unfair Trade Practices Act; (8) Pennsylvania Unfair Trade Practices and Consumer Protection Law; (9) Ohio Deceptive Trade Practices Act; (10) Georgia Fair Business Practices Act; (11) Alabama Deceptive Trade Practices Act; (12) Indiana Deceptive Consumer Sales Act; and (13) Oklahoma Consumer Protection Act.[2]

Although Plaintiffs purport to seek injunctive relief in some but not all of their first 13 causes of action, Plaintiffs admit that they now know of the alleged deception and they will not purchase any of the Products ever again. (FAC ¶ 57).

Count 14 of the FAC asserts a claim for breach of express warranty. Counts 15 and 16 seek damages under common law theories of negligent misrepresentation and unjust enrichment, respectively.

Plaintiffs also reference Defendant's advertising and marketing practices throughout the FAC. *See, e.g.*, FAC ¶¶ 4, 6, 12, 38, 80, 94, 103, 115, 116, 120, 121, 133, 143, 150, 158, 170, 177, 188, 189, 199, 212, 225, 237. Plaintiffs do not, however, allege that any of them ever saw, heard, or relied on Defendant's advertising or marketing.

Finally, Plaintiffs bring this case as a putative nationwide class action and they purport to rely on the consumer protection statutes of all 50 states. (FAC ¶ 6).

---

[2] Plaintiffs Kelley, Upton, and Angel failed to give Unilever the notice that is a prerequisite to filing suit under the laws of Georgia, Alabama, and Indiana, respectively. Plaintiff Wendy Syroka is an Ohio resident who purports to bring suit under the Ohio Deceptive Trade Practices Act, but consumers cannot sue under that statute.

**ARGUMENT**

**I.     PLAINTIFFS' CLAIMS ARE PREEMPTED**

Preemption has its origin in the Supremacy Clause, U.S. Const. art. VI, cl. 2.  It may be express, by implication, or because of a conflict with congressional intent.  *See Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001).  The FDCA contains an express preemption clause that preempts any state law pertaining to cosmetic products that would "establish or continue in effect any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter, the Poison Prevention Packaging Act of 1970 … or the Fair Packaging and Labeling Act ("FPLA")…."  21 U.S.C. § 379s (internal citations omitted).  The FDCA also contains an express preemption provision for OTC drugs that is virtually identical to the express preemption clause applicable to cosmetics.  *Compare* 21 U.S.C. § 379r *with* 21 U.S.C. § 379s.[3]

The FPLA contains a similar clause preempting, *inter alia*, state law requirements that "require information different from" the FLPA or the regulations promulgated thereunder. 15 U.S.C. § 1461 (2003).

**A.     Plaintiffs' Claims Based on "Usable" Net Weight Are Preempted**

Plaintiffs contend that the net weights of either 2.7 ounces or 3.0 ounces disclosed on the Products' labels are misleading because Plaintiffs are unable to access the entire quantity of product in the container.  Plaintiffs essentially seek to impose a requirement that Defendant disclose on the label of its deodorants and antiperspirants the "usable" or "readily accessible" net weight in addition to or in lieu of the Products' total net weight.

---

[3]  Deodorants and antiperspirants are cosmetics.  *See* 21 U.S.C. § 321(i).  Antiperspirants are OTC drugs in addition to being cosmetics.  *See* 21 C.F.R. § 350.1–3.  The FPLA adopts the definitions of cosmetics and drugs from the FDCA.  15 U.S.C. § 1459.

The FDA's cosmetic and OTC drug labeling and packaging regulations, while comprehensive, limit the manufacturer's obligation to disclose net weight as follows: "The label of a cosmetic in package form shall bear a declaration of the net quantity of contents. . . . The statement shall be in terms . . . of weight if the cosmetic is solid, semisolid, or viscous, or a mixture of solid and liquid." 21 C.F.R. § 701.13(a). "Statements of weight shall be in terms of [] pound and ounce." 21 C.F.R. § 701.13(b).[4]

The FDA defines "net quantity of contents" as follows: "The declaration shall accurately reveal the quantity of cosmetic in the package exclusive of wrappers and other material packed therewith." 21 C.F.R. § 701.13(g). *See also Verzani v. Costco Wholesale Corp.*, No. 09 Civ. 2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) ("net weight means the weight of an item exclusive of its packaging"), *aff'd* 432 F. App'x 29, 2011 WL 4359936, at *2 (2d Cir. Sept. 20, 2011). The regulations governing declarations of the net quantity of contents for OTC drugs are virtually identical. *See* 21 C.F.R. § 201.62(a) & (f).

The FDA's silence in not requiring disclosure of "usable" or "readily accessible" net weight for cosmetics and OTC drugs is not accidental. Section 5 of the FPLA expressly empowers both the Secretary of Health and Human Services, which oversees the FDA, and the Federal Trade Commission ("FTC") to promulgate regulations "whenever the promulgating authority determines that regulations containing prohibitions or requirements other than those prescribed by section 1453[5] of this title are necessary to prevent the deception of consumers or to facilitate value comparisons as to any consumer commodity." 15 U.S.C. § 1454(a) and (c).

[4] Cosmetics manufacturers may, but are not required to, also disclose the net weight of the product in grams. "[A]n accurate statement of the net quantity of contents in terms of the metric system of weight or measure may also appear on the principal display panel or on other panels." 21 C.F.R. § 701.13(r).

[5] Section 1453 of the FPLA and the regulations promulgated thereunder impose disclosure requirements on all consumer commodities that are similar to those applicable to cosmetics and OTC drugs. For example, the FPLA requires that a product's "net quantity of contents" appear on its principal display panel. *Id.* § 1453(a)(3)(A)(i); 16 C.F.R. § 500 *et. seq.*

Although the FDA promulgated specific regulations requiring the disclosure of net quantity, neither the FDA nor the FTC promulgated regulations mandating disclosure of "usable" or "readily accessible" net weight, despite having the explicit statutory authority to do so.

By seeking to require Defendant to disclose the "usable" or "readily accessible" net weight of its Products, Plaintiffs are clearly seeking to impose different, additional, and non-identical requirements to the existing FDA regulations that govern cosmetics and OTC drugs. *Ebner v. Fresh*, No. SACV 13–00477 JVS, 2013 WL 9760035 (C.D. Cal. Sept. 11, 2013), is directly on point. There, the court dismissed state law claims based on allegedly misleading labels on Sugar Lip Balm treatments that did not disclose the "reasonably accessible" weight of the product as expressly preempted by the FDCA. The plaintiff argued that it was misleading for the defendant to not disclose that only 3.3 grams out of the 4.3 grams of its lip balm were allegedly reasonably accessible to the consumer. The Court initially noted that:

> the FDA regulations provide that if the Commissioner determines for a specific packaged cosmetic that an existing practice of declaring net quantity of contents by weight, measure, numerical count, or a combination of these *does not facilitate value comparisons by consumers, he shall by regulation designate the appropriate term or terms to be used for such cosmetic.*
>
> Therefore, if the FDA found that stating the net quantity did not provide consumers with proper value comparisons, it could issue further regulations. For instance, the FDA could decide that lip products should state quantity in a manner that represents the amount accessible to the consumers through direct application to the lips. But to the Court's knowledge, the FDA has not found it necessary to designate alternative or additional requirements for products such as Defendant's Sugar. Instead, Defendant's statement of the net *quantity* of product in its Sugar package complies with the current and applicable FDA regulations for cosmetic labeling.

*Id.* at **5-6 (internal citations omitted, emphasis in original). The *Ebner* court concluded that the plaintiff's state law claims were preempted because requiring a declaration on a product's label of "the quantity that is 'reasonably accessible' to consumers . . . would impose requirements that are 'different' [from] or 'in addition' to the FDA regulations." *Id.* at *6.

The requirements sought to be imposed by Plaintiffs do not have to conflict with federal law to be preempted. As Judge Scheindlin explained in holding that claims based on allegedly misleading mouthwash labels were preempted:

> The standard, in other words, is not whether a state law actively undermines federal law. It is whether state law diverges from federal law *at all*. In settings "[w]here federal requirements address the subject matter that is being challenged through state law claims . . . the state requirements are not permitted unless they are *identical* to federal standards."

*Bowling v. Johnson & Johnson*, No. 14–cv–3727, 2014 WL 5643955, at *2 (S.D.N.Y. Nov. 4, 2014) (emphasis in original). Hence, "consistency is not the test, identity is." *Turek v. Gen. Mills. Inc.*, 662 F.3d 423, 427 (7th Cir. 2011). *Accord In re PepsiCo Inc. Bottled Water Mktg. and Sales Practices Litig.*, 588 F. Supp. 2d 527, 538 (S.D.N.Y. 2008); *Crozier v. Johnson & Johnson Consumer Cos., Inc.*, 901 F. Supp. 2d 494, 504 (D.N.J. 2012).

Here, the applicable FDA regulations only require a declaration of the weight of the product minus its packaging, not the "usable" or "readily accessible" net weight. As in *Bowling*, "[i]f "successful, this litigation would do exactly what Congress, in passing section 379r of the FDCA, sought to forbid: using state law causes of action to bootstrap labeling requirements that are 'not identical with' federal regulation." *Id*. at *3.

## B. Plaintiffs' Claims Based on Total Net Weight Are Preempted

Plaintiffs also allege that "the sum of (i) the usable portion of deodorant/antiperspirant and (ii) the unusable portion located under the bed, are below the net weight as advertised on the Product labels." (FAC ¶ 41). Plaintiffs attach a chart to the FAC that purports to list the "usable" net weight and "unusable" net weight to arrive at the total net weight. (FAC Ex. D). But, Plaintiffs do not provide any explanation as to how they arrived at these "measurements," particularly the "unusable" portion which, by Plaintiffs' own definition, is intertwined with the packaging. (FAC ¶ 41 and Ex. D). In making this claim, Plaintiffs essentially seek to impose a

requirement under state law that the total net weight must equal the net weight stated on the label, without any variation whatsoever. The federal laws and regulations governing the labeling and packaging of cosmetics and OTC drugs, however, permit variations within a designated range.

With respect to the labeling of cosmetics products, the FDCA provides that "reasonable variations shall be permitted, and exemptions as to small packages shall be established, by regulations prescribed by the Secretary." 21 U.S.C. § 362(b). The implementing regulation governing the labeling of cosmetics also allows for reasonable net weight variations provided that "[v]ariations from stated quantity of contents shall not be unreasonably large." 21 C.F.R. § 701.13(s).[6]

Here, Plaintiffs do not allege that the small variations in net weight listed in FAC Exhibit D are "unreasonably large" within the meaning of the relevant statutes and regulations. They cannot do so because the National Institute of Standards and Technology ("NIST"), an arm of the United States Department of Commerce, regulates the permissible variations in net weight in products such as deodorants and antiperspirants. *See* NIST Handbook 133, entitled, "Checking the Net Contents of Packaged Goods" ("NIST Handbook 133"); *see also Kraft Foods N. Am., Inc. v. Rockland Cnty. Dep't of Weights and Measures*, No. 01 Civ. 6980 (WHP), 2003 WL 554796, at *5 (S.D.N.Y. Feb. 26, 2003) (NIST Handbook 133 regulates for compliance with FDCA and FPLA labeling requirements); *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 578 (2011) (NIST is the agency "directed by Congress to develop national standards of measurement").

---

[6] 21 U.S.C. § 352, governing OTC drugs, contains the identical provision regarding net weight variations that is contained in 21 U.S.C. § 362(b). *See also* 21 C.F.R. § 201.62(q); 16 C.F.R § 500.25 (consumer commodities).

Table 2-5 of NIST Handbook 133, entitled "Maximum Allowable Variations (MAVs) for Packages Labeled by Weight," sets forth the maximum allowable variations in net weights from those listed on package labels.[7]  Notably, every state at issue in this case has adopted the NIST standards in some form for purposes of enforcement of laws requiring the declaration of net quantity.  *See, e.g.*, Ala. Admin. Code § 80-13-6-02; Cal. Bus. & Prof. Code § 12211; Fla. Stat. § 531.41; 410 Ind. Admin. Code § 12-1-1.4; N.Y. Agric. & Mkts. § 221.11; Okla. Admin. Code §§ 2-14-38a, 35:10-11-1; 3 Pa. C.S.A. § 4117; Ohio Admin. Code §§ 901:6-3-12, 901:6-9-01(C)(2)(b)-(d); Ohio Rev. Code. § 1372.50; N.J. Admin. Code tit. 13 § 47K-5.2; Ga. Code § 10-2-3.

According to Table 2-5 of NIST Handbook 133, for products with a labeled quantity of 54 to 81 grams, such as 2.7 ounce (approximately 76 grams) Axe and Degree products, a variation of up to 5.4 grams (or approximately 0.19 ounces) is permitted.  (NIST Handbook 133, Table 2-5.)  According to that same table, for products with a labeled quantity of 81 to 117 grams, such as 3.0 ounce (approximately 85 grams) Axe and Degree products, a variation of up to 7.2 grams (or approximately 0.25 ounces) is permitted.  (*Id.*)  Thus, even if the total net weight "measurements" listed in Exhibit D to the FAC are accurate—which Defendant does not concede—the net weight variations of which Plaintiffs complain fall well within the federal government's guidelines for permissible packaging variations.[8]

---

[7]   Handbook 133 is publicly available on NIST's official government website at: http://www.nist.gov/pml/wmd/pubs/upload/h133-2015-web-final.pdf, last visited Mar. 20, 2015.   "[I]t is well established that courts may take judicial notice of publicly available documents on a motion to dismiss."  *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 208 (S.D.N.Y. 2012).

[8]   The only product listed on Plaintiffs' Exhibit D that allegedly falls slightly outside of the NIST Maximum Allowable Variation of 0.19 ounces for a 2.7 ounce product is Axe Phoenix (with a variation of 0.2 ounces, according to Plaintiffs).  However, none of the 11 Plaintiffs claim to have purchased Axe Phoenix, and therefore that product is not at issue in this case.

Under Plaintiffs' theory, *any* variation below the net weight stated on Defendant's labels—no matter how small—renders the Products' labels false and misleading under state law. Because, however, the controlling federal regulations explicitly allow for variations in net weight within the range alleged by Plaintiffs, the state law requirements that Plaintiffs seek to impose are plainly "different from, in addition to or otherwise not identical with" those federal laws and regulations. Accordingly, Plaintiffs' total net weight claims are preempted. *See Jones v. Rath Packing Co.*, 430 U.S. 519, 531–32 (1977); *Rath Packing Co. v. Becker*, 530 F.2d 1295, 1316–17 (9th Cir. 1975).

### C. Plaintiffs' Slack-Fill Claims Are Preempted

Although the FAC deleted the multiple references to 21 C.F.R. § 100.100 contained in the original complaint, the substance of Plaintiffs' slack-fill claim remains the same. Plaintiffs essentially seek to impose a requirement that the Products conform to the slack-fill requirements promulgated by the FDA for food products. The FDA, however, regulates food separately and the FDA's food regulations do not apply to the labeling and packaging of cosmetics or OTC drugs. *See Astiana v. Hain Celestial Grp., Inc.,* 905 F. Supp. 2d 1013, 1016 (N.D. Cal. 2012) ("Because the FDA regulates food and cosmetics labels separately, … the court finds no basis for importing this [food] policy statement into the cosmetics context.") (internal citations omitted).

The FDA's cosmetic and OTC drug labeling and packaging regulations do not contain regulations similar to 21 C.F.R. § 100.100, which proscribes non-functional slack-fill in food products. As discussed above, Section 5 of the FPLA expressly empowers both the Secretary of Health and Human Services who oversees the FDA, and the FTC to promulgate regulations whenever either "determines that regulations containing prohibitions or requirements … are necessary to prevent the deception of consumers or to facilitate value comparisons as to any consumer commodity." 15 U.S.C. § 1454(a) & (c). The statute specifically authorizes the FDA

13

and FTC to promulgate regulations to: "prevent the nonfunctional-slack-fill of packages containing consumer commodities." *Id.* at (c)(4). Although the FDA promulgated specific regulations governing slack-fill in food products, neither the FDA nor the FTC promulgated slack-fill regulations governing cosmetics, despite having the express authority to do so.

By seeking to apply regulations that the FDA chose to promulgate *only* for food to cosmetics and OTC drugs, Plaintiffs are seeking to impose different, additional, and non-identical requirements to the existing FDA regulations that govern cosmetics and OTC drugs. *See Bowling*, 2014 WL 5643955 at *2 ("The standard [] is not whether a state law actively undermines federal law. It is whether state law diverges from federal law *at all*.").

In *Del Real, LLC v. Harris*, 966 F. Supp. 2d 1047 (E.D. Cal. 2013), the plaintiff was a meat and poultry packager that challenged the slack-fill provisions of the California Fair Packaging and Labeling Act ("CFPLA"). The CFPLA sought to prohibit non-functional slack-fill in products not subject to the FDCA's food slack-fill requirements, essentially requiring compliance with the same slack-fill regulations as those contained in 21 C.F.R. § 100.100. *Id.* at 1054.

Plaintiff argued that California's slack-fill regulations were preempted by the federal Poultry Products Inspection Act, 21 U.S.C. § 451 *et seq.* ("PPIA"), and the Federal Meat Inspection Act, 21 U.S.C. § 601 *et seq.* ("FMIA"). Both the PPIA and FMIA contained express preemption provisions and both statutes explicitly authorized the Secretary of Agriculture to prescribe standards governing slack-fill. *Id.* at 1052, 1056–57.[9] The Secretary of Agriculture,

---

[9] The FMIA and PPIA also contained provisions identical to 21 U.S.C. § 362(d), deeming meat and poultry as misbranded "if its container is so made, formed or filled to be misleading." 21 U.S.C. §§ 601(n)(4), 453(h)(4). Nevertheless, the *Del Real* court held that California's slack-fill law was preempted because the FDA did not issue regulations prohibiting non-functional slack-fill in the packaging of meat and poultry as it did with other foods.

however, did not promulgate regulations governing slack-fill under the PPIA or FMIA, despite having express Congressional authorization to do so.

The court held that California's slack-fill law was preempted because "the CFPLA prohibits nonfunctional slack-fill in packages, a prohibition that is simply non-existent under federal law" and, therefore, the CFPLA "sought to impose 'requirement[s] in addition to or different than' those set forth in the FMIA and PPIA." *Id.* at 1064. *See also Meat Ass'n v. Harris*, -- U.S. --, 132 S. Ct. 965, 970 (2012).

Here, the labeling and packaging of cosmetics and OTC drugs are governed by specific and comprehensive FDA regulations. *See Astiana*, *supra*, 905 F. Supp. 2d at 1016. There are, however, no FDA regulations prohibiting non-functional slack-fill in cosmetics or OTC drugs, similar to 21 C.F.R. § 100.100. The doctrine of preemption bars Plaintiff from attempting to impose such requirements on Defendant through the state law claims asserted in this case.

## II.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE NO REASONABLE CONSUMER WOULD BE MISLED

Courts apply an objective "reasonable consumer" standard in analyzing alleged deception under consumer protection statutes. *See Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 227–28 (S.D.N.Y. 2011); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 404 (S.D.N.Y. 2010); *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690–91 (9th Cir.2011). In other words, "a consumer's assumptions about a product are not the benchmark for establishing liability under any of the consumer protection statutes." *Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1168 (C.D. Cal 2014).

### A.   No Reasonable Consumer Would Be Misled by the Fact that Consumers Cannot Access 100% of the Product from the Containers

Plaintiffs' "usable net weight" claim should be dismissed for the additional reason that no reasonable consumer would be misled into believing that he or she would be able to use every

last bit of product contained within the deodorant or antiperspirant container. It is a matter of basic common experience for any purchaser of deodorants and antiperspirants that it is virtually impossible to use all of the product within the container. This is no different than numerous other products regulated under the FDCA. For example, reasonable consumers know that it is not possible to use every last bit of toothpaste in a tube, every drop of shampoo in a bottle, or all of the peanut butter in a jar. At some point, a bar of soap becomes too small to be useful, and must be replaced with a brand new bar even though a sliver of soap still remains. That is the unavoidable nature of products of this type, which every reasonable consumer knows or should know. *See Ebner*, 2013 WL 9760035, at *7. Even if the Plaintiffs in this case are somehow devoid of basic life experience, there is nothing objectively deceptive about the fact that some residual amount sticks to the container.

**B. Plaintiffs' Total Weight Allegations Are Not Objectively Misleading or, Alternatively, They Do Not Satisfy Rule 9(b)**

The Products' total net weight as alleged by Plaintiff is not objectively misleading because, as discussed above, it fully complies with the applicable federal regulations concerning allowable variances. As the federal agency charged with establishing compliance with net weight requirements has recognized, it is not deceptive for a consumer product's net weight to vary by a small margin. For this additional reason, Plaintiffs' total net weight claims should be dismissed.

Alternatively, Plaintiffs' conclusory allegations of "usable" net weight fail to meet the heightened pleading standard of Rule 9(b). Rule 9(b) requires Plaintiffs to state the circumstances constituting fraud with particularity and it applies to a number of the FAC's state consumer protection claims. *See, e.g.*, *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (New Jersey); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)

(California); *In re Balko*, 348 B.R. 684, 696 (Bankr. W.D. Pa. 2006) (Pennsylvania); *SMC Corp. v. Peoplesoft USA, Inc.*, No. 1:00-CV-01095-LJM-VS, 2004 WL 2538641, at *4 (S.D. Ind. Oct. 12, 2004) (Indiana). This heightened standard applies with equal force to Plaintiffs' negligent misrepresentation claim. *See Woori Bank v. RBS Sec., Inc.*, 910 F. Supp. 2d 697, 705 (S.D.N.Y. 2012).

Plaintiffs purport to calculate the total net weight of the Products by adding together the net weight of the "usable" portion and the net weight of the "unusable" portion. (FAC Ex. D). Even assuming that Plaintiffs expelled all that they could from the container and then weighed it to determine the "usable" portion (which Plaintiffs have not pled), Plaintiffs do not identify how they purportedly determined the weight of the "unusable" portion for use in the calculation of total net weight. The FAC defines the "unusable" net weight portion as that "embedded under the plastic platform ('bed') on which the deodorant sticks stand." (FAC ¶ 39). Common sense dictates the small amount of product "embedded under the plastic platform" would be virtually impossible to measure with any degree of accuracy. To plead causes of action sounding in fraud, at the very least, Plaintiffs should be required to plead how they purportedly determined that the Products' total net weight is inaccurate.

### C. No Reasonable Consumer Would Be Misled by the Size of the Package in Light of the Net Weight Disclosed on the Labels

Plaintiffs' slack-fill claims seek to predicate liability based on the size of the packaging, which allegedly misled Plaintiffs into believing that they were buying more product than was actually sold. Because, however, the Products' labels specify the quantity of the product by weight in ounces and grams on the front of the package, as required by the applicable regulations, no reasonable consumer would be misled by the size of the package into believing that the package contained more product than the stated quantity.

*Ebner v. Fresh*, No. SACV 13–00477 JVS, 2013 WL 9760035 (C.D. Cal. Sept. 11, 2013), is again on point. There, the court dismissed state law claims based on the allegedly misleading packaging of Sugar Lip Balm in "vastly oversized tubes and boxes, making them appear to a reasonable consumer as if they contain a far larger quantity of lip balm product than they actually contain." *Id.* *7. The Court reasoned:

> in light of Sugar's label, which accurately states the net quantity of product in the tube, it is not reasonable to infer that the oversized packaging and metallic weight would mislead reasonable consumers as to the quantity they are receiving.

*Id.*

Similarly, in *Verzani v. Costco Wholesale Corp.*, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010), *aff'd* 432 F. App'x 29, 2011 WL 4359936 (2d Cir. Sept. 20. 2011), the Court rejected NY GBL § 349 claims premised on the allegation that a reasonable consumer would believe that the net weight disclosed on the label for a shrimp tray product referred only to shrimp and not to other ingredients in the package. *Id.* at *2. The *Verzani* Court concluded that "[b]ecause the label accurately states the combined weight of the food in the tray, Verzani's [NY] GBL § 349 claim could not survive a motion to dismiss." *Id.* at *3. *See also Red v. Kraft Foods, Inc.*, No. CV–10–1028–GW (AGRx), 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012); *Stokely-Van Camp Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 531 (S.D.N.Y. 2009).

As discussed above, Plaintiffs' purported challenges to the net weight disclosed on the Products' labels fail as a matter of law for multiple reasons. Defendant represented that its Product packages contained either 2.7 or 3.0 ounces of product in accordance with the FDA prescribed measurements, Plaintiffs allegedly purchased either 2.7 or 3.0 ounces of product, and Plaintiffs received 2.7 or 3.0 ounces of product. Because no reasonable consumer would be

misled as to the quantity of product by virtue of the size of the package, Plaintiffs' claims based on alleged slack-fill should be dismissed.

## III. PLAINTIFFS' STATUTORY CLAIMS ARE BARRED BY THE SAFE HARBORS AFFORDED TO A MANUFACTURER THAT COMPLIES WITH APPLICABLE REGULATIONS

Counts 1 through 13 of the FAC assert causes of action based on the consumer protection statutes of the states in which the respective Plaintiffs allegedly reside. These consumer protection statutes, however, provide safe harbors if the Defendant complies with applicable federal regulations. For example, NY GBL § 349(d) bars any claim for damages if the defendant complies with applicable federal regulations. *See* NY GBL § 349(d). *See also*, *Porr v. Nynex Corp.*, 230 A.D.2d 564, 576, 660 N.Y.S.2d 440, 448 (2d Dep't 1997), *leave denied* 91 N.Y.2d 807 (1998). Statutory safe harbors also exist in Florida (Fla. Stat. § 501.212(1)); Ohio (Ohio Code § 4165.04(A)(1)); Georgia (Ga. Code § 10-1-396(1)); Alabama (Ala. Code § 8-19-7); Indiana (Ind. Code § 24-5-0.5-6); and Oklahoma (Okla. Stat. tit. 15, § 754(2)). Similar safe harbor doctrines exist at common law. *See, e.g.*, *Lopez*, 201 Cal. App. 4th at 575-76 (California); *New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177 (N.J. Super. App. Div. 2003) (New Jersey).

In this case, Unilever complied with all applicable FDA cosmetic and OTC drug regulations, including disclosing the net quantity of the Products' contents in the only manner prescribed by the FDA—in weight (in both ounces and grams) on the packages' primary display labels. "Because Defendant's labeling is permitted and required conduct under state and federal law, it is entitled to safe harbor." *Ebner*, 2013 WL 9760035, at *6.

**IV.    PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF BECAUSE THEY CANNOT ALLEGE THE THREAT OF FUTURE HARM**

Plaintiffs seek injunctive relief in addition to damages.  Plaintiffs, however, lack standing to bring a claim for injunctive relief because they do not and cannot allege a threat of future harm.  To establish the "irreducible constitutional minimum" of Article III standing, Plaintiffs must plausibly allege:  (1) an "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) that it is "likely," and not merely "speculative," that the injury will be "redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted).  Plaintiffs, as "[t]he part[ies] invoking federal jurisdiction bear[] the burden of establishing these elements."  *Id.* at 561.

When a plaintiff seeks injunctive relief, allegations of past harm alone are insufficient to establish Article III standing.  *See Zielinski v. DeFreest*, No. 12 CIV. 1160 JPO, 2013 WL 4838833, at *16 (S.D.N.Y. Sept. 10, 2013).  The standing requirement "cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.' "  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

*Tomasino v. Estee Lauder Companies Inc.*, No. 13–CV–4692 ERK JMA, 2014 WL 4244329 (E.D.N.Y. Aug. 26, 2014), is illustrative.  In that case, the plaintiff brought a putative class action lawsuit against a cosmetics manufacturer for allegedly deceptive product labeling, *inter alia*, in violation of NY GBL § 349.  The court held that the plaintiff did not allege "a sufficient future injury to establish standing to assert her claims for injunctive relief because she has demonstrated that she is, in fact, unlikely to purchase [the] products again."  *Id.* at *3.  As the court emphasized, the plaintiff in *Tomasino*, "made clear that she does not believe the ... products have the effects advertised by Estee Lauder, and that she would not have purchased them in the

first place absent the allegedly misleading advertisements." *Id. See also Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013) (satellite radio customer lacked standing to seek an injunction since he "was no longer an XM customer at the time this action was filed" and "he is now keenly aware of XM's renewal practices and policies, and as such, he is very unlikely to suffer from being billed without his knowledge"). Just like the plaintiffs in *Tomasino* and *Vaccariello*, Plaintiffs here acknowledge that they will not be injured in the future because they will not purchase Defendant's allegedly deceptive Products again. (FAC ¶ 57).[10]

Finally, it does not matter that Plaintiffs filed the complaint as a putative class action. They cannot base their requests for injunctive relief on the allegation "that injury has been suffered by other, unidentified members of the [proposed] class…." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998); *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *accord Allee v. Medrano*, 416 U.S. 802, 828–29 (1974) (Burger, C.J., concurring in part, dissenting in part).

## V.  PLAINTIFFS' CLAIMS BASED ON ADVERTISING AND MARKETING SHOULD BE DISMISSED FOR LACK OF CAUSATION

Plaintiffs sprinkle generic references to Defendant's advertising and marketing throughout the FAC. But Plaintiffs do not allege that they ever heard or saw—much less relied upon—any of Defendant's advertising or marketing.[11]  Without the requisite causal connection between the alleged conduct and the harm, Plaintiffs cannot premise any of their claims on Defendant's advertising or marketing practices. *See Gale v. Int'l Bus. Machs. Corp.*, 9 A.D.3d

---

[10]  While Plaintiffs admit that they will not purchase Defendant's Products in the future now that they know the supposed "truth," they also express a desire "to stop Defendant's [allegedly] misleading practice."  (FAC ¶ 7). Without a likelihood of future harm to themselves, Plaintiffs' desire to stop a challenged practice is plainly insufficient to establish Article III standing for injunctive relief.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108–09 (1998) (a "generalized interest in deterrence … is insufficient for purposes of Article III") (citing *Lyons*, 461 U.S. at 111).

[11]  Other courts have held that a plaintiff who is not harmed by advertising and marketing lacks standing to pursue claims based on that conduct. *See, e.g., Mlejnecky v. Olympus Imaging Am. Inc.*, No. 2:10–CV–02630, 2011 WL 1497096, at *5 (E.D. Cal. Apr. 19, 2011); *Johns v. Bayer Corp.*, No. 09–cv–1935, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010).

446, 447, 781 N.Y.S.2d 45, 47 (2d Dep't 2004) (dismissing NY GBL § 349 claim because, "[i]f the plaintiff did not see any of these statements, they could not have been the cause of his injury, there being no connection between the deceptive act and the plaintiff's injury."); *In re MI Windows & Doors, Inc. Prods. Liab. Litig.*, Nos. 12–MN–1, 12–CV–1261, 2013 WL 1363845, at *3 (D.S.C. Apr. 3, 2013), (dismissing NY GBL § 349 claim where Plaintiff failed to plead that he "ever saw or heard a deceptive advertisement, act, or practice"); *Cohen v. Hertz. Corp.*, No. 13 Civ. 1205, 2013 WL 9450421, at *5, (S.D.N.Y. Nov. 26, 2013) (advertisements insufficient to allege deceptive act or practice).

## VI.  THE GEORGIA, ALABAMA, AND INDIANA STATUTORY CLAIMS SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH THE STATUTORY NOTICE REQUIREMENTS

Plaintiffs Kelley, Upton, and Angel assert claims for relief under the consumer protection statutes of Georgia, Alabama, and Indiana, respectively.  But, these Plaintiffs failed to give the notice mandated for each of those statutes as a condition of bringing suit, requiring dismissal of counts 10, 11, and 12 of the FAC.  *See* Ga. Code § 10-1-399(b) (Georgia); Ala. Code § 8–19–10(e) (Alabama); Ind. Code § 24-5-0.5-5(a)(2) (Indiana).[12]

## VII.  THE OHIO STATUTORY CLAIM SHOULD BE DISMISSED BECAUSE IT IS NOT AVAILABLE TO CONSUMERS

In Count 9 of the FAC, Plaintiff Wendy Syroka purports to sue under Ohio's Deceptive Trade Practices Act ("DTPA").  "The vast majority of federal courts and all lower state courts to address the issue have concluded that relief under the DTPA is not available to consumers." *Phillips v. Philip Morris Cos. Inc.*, 290 F.R.D. 476, 485 (N.D. Ohio 2013).  *See also Holbrook v. Louisiana-Pac. Corp.*, 533 F. App'x 493, 498 (6th Cir. 2013); *Robins v. Global Fitness*

---

[12]  *See also, Brown Realty Assocs., Inc. v. Thomas*, 193 Ga. App. 847, 851, 389 S.E.2d 505, 510 (1989); *Givens v. Rent-A-Ctr., Inc.*, 720 F. Supp. 160, 162 (S.D. Ala. 1988) *aff'd*, 885 F.2d 879 (11th Cir. 1989); *A.B.C. Home & Real Estate Inspection, Inc. v. Plummer*, 500 N.E.2d 1257, 1262 (Ind. Ct. App. 1986).

*Holdings*, LLC, 838 F. Supp. 2d 631, 650 (N.D. Ohio 2012). Because consumers lack standing to sue under that statute, Plaintiff Syroka's claims under the Ohio DTPA should be dismissed.

## VIII. PLAINTIFFS' EXPRESS WARRANTY CLAIM SHOULD BE DISMISSED BECAUSE MANDATED DISCLOSURES ARE NOT WARRANTIES

Plaintiffs assert a claim for breach of express warranty based on their allegations that the net weight disclosed on the labels of the Products is overstated. These net weight disclosures, however, are mandatory federal labeling requirements, not voluntary promises relating to the products that could form the basis of a bargain. Because Defendant's net weight disclosures are specifically required by the FDCA, they do not give rise to an express warranty. *See, e.g.*, *Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1283–86 (C.D. Cal. 2008) (express warranty arises from voluntary statement, not FDA mandated statement); *accord Welchert v. Am. Cynamid Inc.*, 59 F.3d 69, 73 n.6 (8th Cir. 1995); *Gipson v. Food Giant*, No. 3:13 CV00102-JMV, 2014 WL 670234, at **2–3 (N.D. Miss. Feb 20, 2014); *Higgins v. Monsanto Co.*, 862 F. Supp. 751, 761 (N.D.N.Y. 1994); *Johnson v. Monsanto Chem. Co.*, 129 F. Supp. 2d 189, 194 (N.D.N.Y. 2001).

## IX. PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED AS DUPLICATIVE AND BECAUSE PLAINTIFFS HAVE AN ADEQUATE REMEDY AT LAW

"An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 745 (2012) *reargument denied* 19 N.Y.3d 937 (2012). As explained by the New York Court of Appeals:

> [U]njust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.

*Id.*; *see also Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 557 (S.D.N.Y. 2014); *McCarty v. Pedraza*, 17 N.E.3d 71, 80-81 (Ohio Ct. App. 2014).

Moreover, "[u]njust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists." *Federal Treasury Enterprise Sojuzplodoimport v. Spirits Int'l N.V., SPI*, 400 F. App'x 611, 613 (2d Cir. 2010). *See also Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81, 854 N.Y.S.2d 83, 89 (2008).[13] Here, Plaintiffs have pled specific actionable wrongs seeking adequate remedies at law, barring their duplicative unjust enrichment claim.

## CONCLUSION

For the foregoing reasons, the FAC should be dismissed with prejudice.

Dated: New York, New York
      March 20, 2015              Respectfully submitted,

                              **WINSTON & STRAWN LLP**

                    By:    /s/ Thomas J. Quigley
                            Thomas J. Quigley
                            Desiree M. Ripo
                            Nicholas R. Alioto
                            200 Park Avenue
                            New York, NY 10166–4193
                            Telephone: (212) 294–6700
                            Facsimile: (212) 294–4700

                            tquigley@winston.com
                            dmripo@winston.com
                            nalioto@winston.com

                            *Attorneys for Defendant*
                            *Unilever United States, Inc.*

---

[13]  California does not recognize a claim for unjust enrichment at all.  *See, e.g., In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("courts have repeatedly held that "there is no cause of action in California for unjust enrichment' ") (quoting *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (Cal. Ct. App. 2003)).