**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

TIMBA BIMONT, :
SYLVIA BETHEA :
LOURDES ROSADO, :
ROSEMARY ARELLANO, :
BRENDA STARR, :
RONALD BRINKLEY, ;
WENDY SYROKA, :
DAWN KELLEY, :
SERRENA UPTON, :
KENDRA ANGEL, and :
MARK MCINTIRE,
on behalf of themselves and others similarly
situated,

Case No. 14-cv-07749 (JPO) (AJP)

Plaintiffs,

- against -

UNILEVER UNITED STATES, INC., :

Defendant.

---------------------------------------------------------x


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................... 2

LEGAL STANDARD.................................................................................... 7

ARGUMENT ............................................................................................... 8

I.      PLAINTIFFS' CLAIMS ARE NOT PREEMPTED........................................... 8

    A.    Usable Net Weight Claims Are Not Preempted ................................ 9
    B.    Total Net Weight Claims Are Not Preempted................................ 12
    C.    Slack-Fill Claims Are Not Preempted ........................................... 14

II.     PLAINTIFFS' CLAIMS SHOULD NOT BE DISMISSED BECAUSE
PLAINTIFFS    HAVE ALLEGED SUFFICIENT FACTS TO SUGGEST A
REASONABLE CONSUMER COULD BE MISLED ................................................. 16

    A. Plaintiffs Have Plausibly Pled That A Reasonable Consumer Could Be Misled .....
    .................................................................................................. 16
    B. Plaintiffs' Total Net Weight Claims Are Objectively Misleading And Need Not
    Satisfy Rule 9(b) ............................................................................ 17
    C. Plaintiffs Have Plausibly Pled That A Reasonable Consumer Would Be Misled
    By The Size Of Defendant's Packaging .............................................. 20

III.    SAFE HARBOR PROVISIONS DO NOT SHIELD DEFENDANT FROM
         LIABILITY ................................................................................... 20

IV.    PLAINTIFFS MAY SEEK INJUNCTIVE RELIEF AS THERE IS A THREAT
         OF FUTURE INJURY TO CLASS MEMBERS .................................. 21

V.     PLAINTIFFS HAVE MORE THAN ADEQUATELY ALLEGED CAUSATION
         BASED ON THE ADVERTISING AND MARKETING OF THE PRODUCTS21

VI.    DEFENDANT HAD SUFFICIENT NOTICE OF THE CLAIMS OF THE
         GEORGIA, ALABAMA, & INDIANA PLAINTIFFS ........................ 22

VIII. Plaintiffs' EXPRESS WARRANTY CLAIM SHOULD NOT BE
         DISMISSED .................................................................................. 23

IX.     PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS NOT DUPLICATIVE .. 23

CONCLUSION........................................................................................... 25

# TABLE OF AUTHORITIES

*Ackerman v. Coca-Cola Co.*, No. CV-09-0395(JG),
 2010 WL 2925955 (E.D.N.Y. July 21, 2010) .................................................... 6, 8, 16, 19

*Alfaro v. E. F. Hutton & Co., Inc.*, 606 F. Supp. 1100 (E.D. Pa. 1985) ....................................... 18

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...................................................................................... 7

*Baggett v. Hewlett Packard Co.*, 582 F.Supp.2d 1261 (C.D. Cal. 2007) ..................................... 12

*Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005) .................................................................. 8

*Bell Atl.Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................................ 7

*Bourgi v. West Covina Motors, Inc.*, 166 Cal. App. 4th 1649,
 83 Cal. Rptr. 3d 758, 767 (Cal. Ct. App. 2008) ................................................................ 13

*Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998) .............................................................. 7

*Ebner v. Fresh*, No. SACV 13-00477 JVS, 2013 WL 9760035 (C.D. Cal. Sept. 11, 2013) ....... 11

*Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106 (2d Cir. 2010) ...................................... 7

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*,
 689 F. Supp. 2d 585, 604 (S.D.N.Y. 2010)....................................................................... 22

*Dep't of Legal Affairs v. Father & Son Moving & Storage, Inc.*,
 643 So.2d 22, 24 (Fla. 4th DCA 1994) ............................................................................. 13

*Hanley v. Chicago Title Ins. Co.*, No. 12-cv-4418,
 2013 WL 3192174 (S.D.N.Y. June 24, 2013) ................................................................... 7

*Hughes v. Ester C Co.*, No. 12-0041,
 2013 WL 1080533 (E.D.N.Y. Mar. 15, 2013) ............................................................. 6, 24

*In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*,
 701 F. Supp. 2d 356 (E.D.N.Y. 2010) .............................................................................. 24

*In re PepsiCo Bottled Water Mktg. & Sales Practices Litig.*,
 588 F.Supp.2d 527, 532 (S.D.N.Y. 2008) .......................................................................... 9

*In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006) .................................... 18

*Ivie v. Kraft Foods Global, Inc.*, No. 12-cv-02554,
 2013 U.S. Dist. LEXIS 25615, at *34 (N.D. Cal. 2013).................................................... 16

*In re the Prudential Ins. Co.*,
  975 F. Supp. 584 ( D.N.J. 1997) ................................................................ 17, 18

*Leonhart v. Nature's Path Foods, Inc.*, No. 13-cv-00492,
  2014 U.S. Dist. LEXIS 164425, at *20 (N.D. Cal. 2014) ............................... 16

*Martorella v. Deutsche Bank Nat'l Trust Co.*, No. 12–80372–CIV,
  2013 WL 1137514 (S.D. Fla. Mar. 18, 2013) ................................................ 25

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ..................................................... 9

*Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005) ............................... 17

*Ross v. A.H. Robins Co.*, 607 F.2d 545 (2d Cir. 1979) ....................................... 18

*Samet v. Procter & Gamble Co.*, No. 12-cv-01891,
  2013 U.S. Dist. LEXIS 86432 (N.D. Cal. 2013) ...................................... 15, 16

*Swingless Golf Club Corp. v. Taylor*,
  679 F. Supp. 2d 1060 (N.D. Cal. 2009) ........................................................ 17

*St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144 (E.D.N.Y. 2010) ....................... 24, 25

*State of Fla., Office of Atty. Gen., Dept. of Legal Affairs v. Tenet Healthcare Corp.*,
  420 F.Supp.2d 1288 (S.D.Fla. 2005) ............................................................. 13

*Torres v. JC Penney Corp.*, 12-cv-01105-JST,
  2013 U.S. Dist. LEXIS 66506 (N.D.Cal. May 8, 2013) .................................... 13

*United States ex rel. Polansky v. Pfizer, Inc.*, No. 04-CV-0704 (ERK),
  2009 WL 1456582 (E.D.N.Y. May 22, 2009) ................................................. 18

*Thomas v. Costco Wholesale Corp.*, No. 12-cv-02908,
  2014 U.S. Dist. LEXIS 46405 (N.D. Cal. 2014) ............................................. 16

*Verzani v. Costco Wholesale Corp.*, 2011 WL 3911499 (S.D.N.Y 2010) ................................. 19

*Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398 (E.D.N.Y. 2010) ................................ 19, 20

*Williams v. Gerber Prods, Inc.*, 552 F.3d 934 (9th Cir. 2008) ............................... 6, 15

*Wyeth v. Levine*, 555 U.S. 555, 129 S. Ct 1187, 173 L. Ed. 2d. 51 (2009) ............................. 8, 9

*Woods v. Maytag Co.*, 807 F. Supp. 2d 112 (E.D.N.Y. 2011) ...................................... 7

## STATE CASES

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)............................................................ 16

*Niagara Mohawk Power Corp. v. Freed*, 265 A.D.2d 938 (N.Y. App. Div. 1999) ...................... 24

*Pramer, S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89 (N.Y. App. Div. 2010) ............................ 24


## RULES

Fed. R. Civ. P. 8 ..................................................................................................................... passim

Fed. R. Civ. P. 9(b) ............................................................................................................... passim

Fed. R. Civ. P. 12(b)(6)............................................................................................................. 4, 7

Fed. R. Civ. P. 15 ........................................................................................................................ 25

## STATUTES

15 U.S.C. § 1451 ........................................................................................................................ 10

15 U.S.C. § 1453(b) ............................................................................................................... passim

21 U.S.C. § 352 .......................................................................................................................... 14

21 U.S.C. § 352(i)(1) .................................................................................................................. 15

21 U.S.C. § 362 .......................................................................................................................... 14

21 U.S.C. § 362(d) ..................................................................................................................... 15

Ala. Code § 8-19-10(e) .............................................................................................................. 22

Cal. Bus. & Prof. Code § 12606 ................................................................................................ 16

Ga. Code § 10-1-399(b) ............................................................................................................. 22

Indiana Code § 24-5-0.5(a)(2) ................................................................................................... 22

Ohio Rev. Code Ann. §§ 1345.09(A) ..................................................................................... 5, 22

Ohio Rev. Code Ann. §§ 1345.09(D) ..................................................................................... 5, 22

## REGULATIONS

21 C.F.R. § 100.100 ............................................................................................................. passim

**Boxes (for Lyn)**

*All morning she trawls all over*
*the house looking for*
*boxes...boxes.*

*Box after box she brings or drags up*
*to her Teletubbie room*

*as if she were a little*
*mad scientist*
*and needed boxes...boxes*

*for some mad crazy experiment.*
*I go up to shave my face slowly*

*watching her from the mirror.*
*She lines up her army of*
*boxes...boxes*

*and one by one*
*painstakingly methodically*

*she puts a box within a box*
*until the boxes filled up*
*with boxes*

*Finally one box contains all boxes.*
*I give her a newly shaven kiss*

*as she explains:*
*"The emptiness was empty*
*so I...filled it up!"*

*by Dónall Dempsey*

Humans have an archetypal expectation that emptiness will be filled. Like a house that is not a home until it is filled with furniture, we cherish the packages that are brimming with surfeit. "Brown paper packages tied up with strings" are our favorite things in *The Sound of Music* because we expect them to be full of **_stuff_**, not half empty like Defendant's Products.

In our daily social intercourses, whether transacting in love or merchandise, we expect our counterparties to approach us honestly with hearts and packages that are fulsome, not empty. Yet

just as we are betrayed by lovers who come at us with half empty hearts, consumers are betrayed when packages purchased contain unexpected emptiness and shortfall.

## PRELIMINARY STATEMENT

The average consumer spends 13 seconds purchasing a brand in-store.[1] As such, consumers rely heavily on the product packaging when deciding whether to purchase a particular item. Consumers especially rely on a product's packaging dimensions in making value comparisons.[2] This lawsuit is about Defendant under-filling the Products at issue and packaging them with excessive empty space so that consumers are misled into believing that they are receiving more than what they actually purchased. Consumers continue to react in disbelief when the deodorant/antiperspirant products they purchase are used up in a short period, because they do not know they only used 3 inches of Product, not the 5 inches they believed they bought due to the size of the Product packaging. As stated in the First Amended Complaint (the "FAC" or "Complaint"), Defendant made and continues to make misrepresentations about the Products that have resulted in economic injury to Plaintiffs and the Class. *See* FAC ¶ 4.

With intent to induce consumers to purchase its Products for a premium, Defendant manufactures, markets and sells the Products (i) with labels that list a false and misleading net weight of actual usable deodorant/antiperspirant, (ii) with labels that list a false and misleading total net weight of deodorant/antiperspirant (whether usable or unusable) and (iii) with non-functional slack-fill, in violation of consumer protection laws of the fifty states and District of Columbia (FAC ¶ 2).

---

[1] http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-your-brands-20-second-windown.html (citing the Ehrenberg-Bass Institute of Marketing Science's Report 67 "Shopping Takes Only Seconds…In-Store and Online").

[2] According to Brian Wansink, Professor of Marketing at Cornell University, consumers tend to ignore size labels and base their buys largely on package dimensions. Faced with a large box and a smaller box, both with the same amount of product inside, he said, consumers are apt to choose the larger box because they think it's a better value. *See http://www.consumerreports.org/cro/magazine-archive/2010/january/shopping/product-packaging/overview/product-packaging-ov.htm.*

In its Memorandum of Law in Support of its Motion to Dismiss ("Def. Mem."), Defendant argues, among other things, that (i) minor variance in net weight is not objectively misleading, and (ii) reasonable consumers would not be deceived by slack-fill in the packaging because the net weight is listed. Def. Mem. at 2. Tellingly, Defendant does not deny that it underfills the Products, nor does Defendant argue that the excessive empty space in the Products is functional. Instead, Defendant's motion is substantially based on its argument that (i) Plaintiffs' claims are preempted by federal law and (ii) that the FDA has not enacted a regulation identical to 21 C.F.R. § 100.100, the food slack-fill regulation, for drugs or cosmetics.

Defendant entirely misconstrues the allegations of the Complaint. First, Plaintiffs are not suing Defendant solely based on a violation of the Food, Drug, and Cosmetic Act ("FDCA"), nor is Plaintiffs' suit brought to enforce Defendant's compliance with the FDCA. Each Plaintiff resides in a state that has enacted consumer protection laws that forbid misleading labeling and packaging in language identical to the federal laws. *See* FAC ¶ 35. Plaintiffs' claims are predicated on Defendant's deceptive labeling and packaging, which is not the result of mere variance or functionality, but was intentionally designed by Defendant to make consumers think they were getting more product than they actually received. As a result, Plaintiffs and the Class have been induced to buy the Defendant's Products over competitor products.

Defendant mischaracterizes Plaintiffs' Complaint as an impermissible attempt to impose labeling and packaging requirements that are "different from or in addition to, or that [are] otherwise not identical to" the FDCA and its implementing regulations promulgated by the Food and Drug Administration ("FDA"). *See* Def. Mem. at 1. Plaintiffs, however, do not seek to impose different or greater obligations upon Defendant than the FDCA requires. To the contrary, the FAC plainly states that Defendant failed to abide by the FDCA, and in doing so, misled Plaintiffs in

violation of state consumer protection laws. *See* FAC ¶ 63. As such, the Products at issue are misbranded as a matter of law. *Id*.

Defendant's second argument against Plaintiffs' misleading packaging claims fares no better. While Defendant does not deny that it underfills the Products in its Motion, it claims that no reasonable consumer would be misled by its packaging because the labels state the net weight of the Products. However, if net weight information were sufficient to prevent consumers from ever being misled about a product's content, the FDA and the fifty states and District of Columbia would have no need to enact additional regulations that explicitly forbid misleading packaging. Moreover, whether Defendant's packaging is misleading is an intensely factual inquiry and as such is not appropriate for a motion to dismiss.

As Defendant is acutely aware that the FAC adequately satisfies Rule 8(a)'s pleading requirements, it now claims that Plaintiffs' usable net weight claims need to meet the heightened pleading standard of Rule 9(b).[3] Given there are no common law fraud claims in the FAC, Plaintiffs need only satisfy the notice pleading standard of Rule 8(a). In support of its pleading argument, Defendant claims that the FAC does not allege how the unusable portion of deodorant/antiperspirant was measured and as a result fails to meet the requirements of Rule 9(b). Defendant's contention is implausible for the following reasons: (i) Defendant does not claim ignorance as to how the total net weight was measured but claims ignorance as to how the net weight of unusable product was measured, (ii) the FAC clearly defines the unusable portion of deodorant/anti-perspirant as that which is embedded under the plastic platform on which the products stand. *See* FAC ¶ 39. Common sense dictates that the unusable portion was measured in the same manner as the usable portion – by extracting and weighing the product. More importantly,

---

[3] Defendant's motion to dismiss filed on March 20, 2015 stated it was moving to dismiss under Rule 12(b)(6), Rule 8 and Rule 9(b). Subsequently, Defendant filed a second notice of motion indicating it is moving to dismiss only under Rules 12(b)(6) and 9(b).

the particulars of the method or device used to measure the Products is more appropriate for fact discovery and not a motion to dismiss as all the allegations in the Complaint must be accepted as true at this stage of the pleadings.

Plaintiffs have also adequately alleged the threat of future injury. The FAC states that as a result of Defendant's conduct, Plaintiffs and the Class were misled and will continue to be misled as a result of not being able to rely on Defendant's packaging and net weight representations. FAC ¶¶ 48, 98. Reliance has also been pled adequately. Plaintiffs have stated that Defendant's labeling and packaging was deceptive. FAC ¶ 5. Further, each Plaintiff has asserted that he/she was exposed to the Product packaging, purchased the Products in reliance on the packaging, and was financially injured as a result. FAC ¶¶ 14-24.

Next, Defendant argues that the Georgia, Alabama and Indiana statutory claims should be dismissed for failure to provide pre-suit notice. As stated below, Defendant had sufficient notice of the claims of the Georgia, Alabama and Indiana Plaintiffs. In addition, the Court should dismiss the allegation that Ohio's consumer fraud statute is not available to consumers. This is simply not true. The Ohio Consumer Sales Practice Act explictly creates a private right of action for consumers to rescind transactions or recover damages and/or for injunctive relief for unfair and deceptive acts in connection with consumer transactions. *See* Ohio Rev. Code Ann. § 1345.09(A) and § 1345.09(D).

Defendant also seeks to have Plaintiffs' breach of express warranty claim dismissed based on the premise that its net weight disclosures cannot give rise to an express warranty cause of action. However, any affirmation of fact or promise which relates to the goods, or any description of the products at issue, which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation, promise, or description.

Finally, Defendant contends that the unjust enrichment claim in the FAC is duplicative. As discussed below, Plaintiffs' unjust enrichment claim is not duplicative as Plaintiffs may plead an alternative theory of liability and may seek more than just the premium paid for the Products.

Plaintiffs assert claims for violations of the consumer protection statutes of all fifty states and the District of Columbia, as well as for breach of express warranty, negligent misrepresentation and unjust enrichment. In support of these claims Plaintiffs allege that they relied on the Product labels and packaging and would not have bought the purchased Products had they not been misled by false and misleading net weight statements and deceptive packaging. FAC ¶ 4. Notwithstanding these facts and other detailed allegations in the Complaint, Defendant has moved to dismiss.

Defendant argues that Plaintiffs' allegations are implausible – that no reasonable consumer could be misled by Defendant's Product packaging. Defendant is wrong. The factual allegations of the FAC, which must be construed in Plaintiffs' favor, belie this assertion. Plaintiffs allege that they viewed Defendant's misleading labeling and Product packaging, relied on the representations and were thereby deceived in deciding to purchase the Products for a premium price. FAC ¶ 5. Logic suggests that reliance on a product's packaging in assessing its content is not only plausible but reasonable. Importantly, Plaintiffs allege that the claim had the desired effect – it was an incentive for consumers to buy the Products. (*See* FAC ¶¶ 2, 245).

Moreover, on this Motion, where Defendant proffers its own subjective and self-serving interpretation of the expectations of a reasonable consumer, Plaintiffs' interpretation is neither disproven nor discounted as implausible; at best, several issues of fact exist that should not be determined on a motion to dismiss.[4] A simple review of the 69-page FAC reveals that it provides

---

[4] *See Williams v. Gerber Prods, Inc.,* 552 F.3d 934, 938 (9th Cir. 2008); *Ackerman v. Coca-Cola Co.,* No. CV-09-0395(JG), 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010) (Gleeson, J.); *see also Hughes v. Ester C Co.,* No. 12–CV–0041 (JFB), 2013 WL 1080533, at *17 (E.D.N.Y. Mar. 15, 2013).

more than sufficient detail for Defendant to be able to answer – all that the complaint must do. Accordingly, it more than meets the applicable pleading standards.

## LEGAL STANDARD

Defendant has moved to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In determining such a motion, the test is whether the plaintiff is entitled to offer evidence to support his/her claim, not whether he/she is ultimately likely to prevail. *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). In considering a Rule 12(b)(6) motion to dismiss, a court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.,* No. 12- 4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir. 2010)). "The question on a Rule 12(b)(6) motion is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (citations omited). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and …determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 118–19 (E.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)) (denying motion to dismiss GBL section 349 claim).

To survive a motion to dismiss, a party need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, "[t]he plausibility standard is not akin to a 'probability requirement….'" *Iqbal*, 129 S. Ct. at 1946; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" (quotation omitted)).

In its Motion to Dismiss, Defendant simply ignores the specific factual allegations that (i) it has a systematic practice of short-weighting its deodorant/antiperspirant Products across numerous

product lines (FAC ¶ 59), (ii) Plaintiffs relied on the labels and physical appearance of its containers (FAC ¶ 5), (iii) the dimensions of the containers (Exhibit A to FAC), (iv) the actual amount of product within the containers (Exhibit C and Exhibit D to FAC), (v) the cost of the Products (FAC ¶¶ 14-24, 37), (vi) that Plaintiffs only received 52% of the amount of the products in relation to its packaging (FAC ¶ 50), (vii) that due to the deceptive labeling and packaging, Plaintiffs believed they were purchasing a much greater amount of product than actually received (FAC ¶ 55), and (viii) that had Plaintiffs known the true amount of deodorant/antiperspirant in the containers, they would not have purchased them (FAC ¶57).

It is respectfully submitted that the clear and unambiguous factual allegations in the Complaint render Plaintiffs' claims more than plausible, satisfy the notice pleading standard of Fed. R. Civ. P. 8(a), and are patently sufficient to sustain the claims upon which this action is predicated. Therefore, Defendant's motion to dismiss must be swiftly turned aside.

## ARGUMENT

### I.   PLAINTIFFS' CLAIMS ARE NOT PREEMPTED

Courts have unequivocally recognized that federal law does not preempt state law causes of action for labeling violations if they "seek to impose requirements that are identical to those imposed by the FDCA." *Ackerman v. Coca Cola*, No. 09-0395, 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010). This is so because "a state statute mirroring its federal counterpart does not impose any additional requirement merely by providing a damage remedy for conduct that would otherwise violate federal law, even if the federal statute provides no private right of action." *Ackerman*, 2010 WL 2925955, at *6 (citing *Bates*, 544 U.S. at 432). Courts have consistently held that there is a strong presumption against preemption. *See, e.g., Wyeth v. Levine*, 555 U.S. 555, 129 S. Ct 1187, 173 L. Ed. 2d. 51 (2009). In *Wyeth*, the court held that state law product defect claims based upon inadequate drug warning labels were not preempted simply because the FDA regulated,

and had approved, the drug warning label for the product in question. *Id*. at 581.

While individuals are prohibited from bringing private enforcement actions under the FDCA, that prohibition does *not* prevent individuals from bringing private actions based on state law claims, even where the remedial objectives are consistent with the FDCA. In *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996), the Supreme Court allowed a private action under a state law claim for negligent design of a medical device, even though the device at issue was regulated by the Medical Device Amendments of 1976 ("MDA"), which prohibits private actions by individuals against manufacturers. *Id*. The court found that the notion that federal law prohibited a private cause of acton under state law was "not only unpersuasive [but] implausible," noting that the defendants' "construction of [the MDA] would…have the perverse effect of granting complete immunity from design defect liability to an entire industry that, in the judgment of Congress, need more stringent regulation 'to provide for the safety and effectiveness of medical devices intended for human use." *Id*. at 487. Applying *Medtronic*, New York courts have held that "state law causes of action are not preempted where they merely provide a damages remedy for claims premised on a violation of federal law that does not itself provide a private right of action, but [they] *are* preempted where they impose obligations not imposed by federal law." *In re PepsiCo Bottled Water Mktg. & Sales Practices Litig.*, 588 F.Supp.2d 527, 532 (S.D.N.Y. 2008). Here, none of Plaintiffs' claims impose any "requirement" that is not already found in the FDCA. In fact, each state statute referenced in the FAC that pertains to the labeling and packaging of products, mirrors the language of the FDCA identically. *See* FAC ¶ 35.

### A.    Usable Net Weight Claims Are Not Preempted

Defendant's preemption claim rests on the assumption that simply by listing the net quantity of the products, "exclusive of wrappers and other material packed therewith," Defendant has labeled and packaged the products lawfully. Taken to its logical extension, Defendant's

argument implies that even if a manufacturer packages a product with 50% of product inaccessible to consumers, such manufacturer is immune from liability for misleading consumers.

Contrary to Defendant's claim that the federal law is silent on net weight disclosures that provide clarification, it is clear that Congress understood that consumers could be misled about the meaning of the term "net quantity" when making purchases. The Fair Packaging and Labeling Act ("FPLA") states as follows:

> Informed consumers are essential to the fair and efficient functioning of a free market economy. **Packages and their labels should enable consumers to obtain accurate information as to the quantity of the contents and should facilitate value comparisons**. Therefore, it is hereby declared to be the policy of the Congress to assist consumers and manufacturers in reaching these goals in the marketing of consumer goods. 15 U.S.C. § 1451.

It is plain that in making a value comparison between products, a reasonable consumer would consider, as Plaintiffs have, the quantity of product actually available for use. This is particularly true for the Products at issue, as many of Defendant's competitors sell deodorants and antiperspirants in which the usable portion matches the net weight listed on the labels. As stated in the FAC, Defendant's labeling and Product packaging were material factors in Plaintiffs' and Class members' decisions to purchase the Products. Based on Defendant's labeling and Product packaging, Plaintiffs and Class members believed that they were getting more of the Products than was actually being sold or at the very least, believed they were getting the amount stated on the Product labels. Had Plaintiffs known Defendant's labeling was false and its packaging slack-filled, they would not have bought the Products. FAC ¶ 57.

The contention that Plaintiffs' usable net weight claims impose different or additional requirements on Defendant merely by suggesting that Defendant could provide clarification as to what consumers are getting is baseless. Plaintiffs do not seek to impose any requirements that are different or in addition to what is already permitted under federal law. The FPLA explicitly authorizes manufacturers to add supplemental statements to clarify net weights. As permitted by

the FPLA, "**[nothing] shall prohibit supplemental statements, at other places on the package, describing in nondeceptive terms the net quantity of contents**." 15 U.S.C. § 1453(b). The FPLA includes a supplemental statement provision precisely to enable manufacturers to provide consumers with clarification as to net quantities, as net quantities were designed to *inform* consumers and not *mislead* them.

The FAC simply states that Defendant could provide consumers with clarification as to the volume and usable quantity of its Products by adding indicators marking the actual dimensions of the Product or by using packaging that enables consumers to discern the actual volume being sold, as some of its competitors do. *See* FAC ¶ 54. Defendant relies heavily on *Ebner v. Fresh*, No. SACV 13-00477 JVS, 2013 WL 9760035 (C.D. Cal. Sept. 11, 2013) for the proposition that because the Product labels specify the net quantity, no reasonable consumer would be misled by the size of the packaging. Def. Mem. at 17. *Ebner v. Fresh* is distinguishable from Plaintiffs' case in several respects. First, the court in *Ebner* stated as follows:

> As a preliminary matter, it is important to note the FAC's actual allegations. The FAC does not allege that Defendant's conduct is deceptive because Sugar products contain less than the quantity of product stated on the label…in sum, this is not a case where the manufacturer short weights the amount of product, and thus profits.

*Id*. at *3,*8.

Unlike *Ebner*, Plaintiffs here contend that Defendant failed to *actually provide* the net quantity of product promised. The FAC states that several Axe® and Degree® Products sold by Defendant are below even the amount advertised on the labels as net weight. *See* FAC ¶ 41 and Exhibit D to FAC. The instant case is also distinguishable in that plaintiffs in *Ebner* sought to redefine the term 'net quantity' to reflect only 'reasonably accessible' product. *Ebner*, 2013 WL 9760035, at *6. Plaintiffs' Complaint does not alter Defendant's existing labeling requirements by any means, it merely points to supplemental methods of packaging the products to prevent consumers from being misled. For instance, the FAC states that a brand new Product can be

repelled to show that in its starting position, it has already been propelled to bring the deodorant/antiperspirant up to the top of the body of the container. FAC ¶ 52. There is no doubt that there is no practical business purpose for the excessive empty space in the Products other than to mislead consumers as to the actual volume of usable deodorant/antiperspirant in the Products. *Id*.

The allegations in the FAC are more akin to the misconduct alleged by plaintiff in *Baggett v. Hewlett Packard Co.*, 582 F.Supp.2d 1261 (C.D. Cal. 2007). The defendant in *Baggett* represented that its printers would notify users when the toner cartridge was "empty" and would then stop functioning. *Id*. at *1264. Plaintiff alleged that when the purchased printer stopped working because of "empty" ink cartridges, a significant amount of toner actually remained in the cartridges. *Id*. The manufacturer argued that the purchaser was able to use the promised amount of toner and that he could not complain that it had included extra toner in the cartridges. *Id*. at *1265. The purchaser replied that consumers did have a reasonable expectation that they would be able to use all the ink in their cartridges. The court agreed, finding that the purchaser had shown that the misrepresentation about whether toner remained in the cartridges was material and had sufficiently alleged concealment. *Id*. at *1266-69. Plaintiff had sufficiently alleged fraudulent conduct by alleging that the public would likely believe representations that the cartridge was empty of toner when the printer indicated it was empty, even though it was not. *Id*. Here, Plaintiffs had similarly reasonable expectations that the Product labeling and packaging correctly reflected the amount of deodorant/antiperspirant being purchased for use.

### B.    Total Net Weight Claims Are Not Preempted

Plaintiffs' total net weight claims are not preempted for the same reasons its usable net weight claims are not preempted – Plaintiffs do not seek to impose any requirements that are different or additional to what is required under federal law. Defendant claims that its labeling and packaging complies with federal laws because reasonable variations in weight are permitted. What

Defendant has failed to address in its Motion to Dismiss is Plaintiffs' well pled allegation that the short weight in the Products is *not* due to reasonable variation. As stated in the FAC, Defendant lacked any lawful justification for packaging its Products with labels that are false and misleading and in containers that are made, formed or filled as to be misleading. FAC ¶ 48.

Plaintiffs have alleged that the underfilling was willful and the consistently short-weighted Products, are part of a systematic practice by Defendant. *See* FAC ¶¶ 59, 88. Weight and measure laws of the fifty states only create a safe harbor under state consumer laws where the misconduct is explicitly authorized. In *Torres v. JC Penney Corp.*, the court found that the viability of defendants' argument that its conduct was protected under safe harbor laws depended on the existence of a safe harbor that clearly authorized them to fail to make a disclosure as to the products at issue. *Torres v. JC Penney Corp.*, 12-cv-01105-JST, 2013 U.S. Dist. LEXIS 66506 at *13 (N.D.Cal. May 8, 2013). Judge Tigar concluded that defendants had not shown that the federal or state laws at issue contained such a safe harbor and "[e]ven if they had, the question of whether certain conduct falls within the scope of a safe harbor for the purpose of absolving a defendant of a duty to disclose a material fact is a question of fact that cannot be resolved on a motion to dismiss." *See Torres,* 2013 U.S. Dist. LEXIS 66506 at *12, (quoting *Bourgi v. West Covina Motors, Inc.*, 166 Cal. App. 4th 1649, 83 Cal. Rptr. 3d 758, 767 (Cal. Ct. App. 2008).

As explained by Judge Seitz in *State of Fla., Office of Atty. Gen., Dept. of Legal Affairs v. Tenet Healthcare Corp.*, 420 F.Supp.2d 1288 (S.D.Fla. 2005):

> [A]n act does not need to violate a specific rule or regulation in order to be considered deceptive. *Dep't of Legal Affairs v. Father & Son Moving & Storage, Inc.*, 643 So.2d 22, 24 (Fla. 4th DCA 1994). Therefore, the relevant analysis for this Court is whether Tenet, as the moving party, has demonstrated that a specific federal or state law **affirmatively authorized** it to engage in the conduct alleged in the Complaints, not whether Plaintiffs have demonstrated that Tenet's conduct violates a specific rule or regulation.

*Id*. at 1310.

As stated in the FAC, Defendant intentionally made materially false and misleading representations regarding the size, amount and contents of the Products. *See* FAC ¶¶ 38, 241-242. Defendant's packaging was intended to mislead consumers into thinking that they were receiving more product than they actually were. *See* FAC ¶ 48. Any shortfall in the Products is not due to unintentional variance but Defendant's intentional conduct. Such misconduct is not explicity authorized by the FDCA, FPLA or any of the consumer protection statutes of the states in which the respective Plaintiffs reside. Defendant's labeling and packaging practices explain why every Axe® and Degree® Product line investigated by Plaintiffs and listed in the FAC falls short of the net weight listed on its respective container.

Defendant is also wrong in stating that under Plaintiffs' theory, any variation below the net weight in Defendant's labels renders a product false and misleading. While Defendant is correct in stating that the National Institute Standards and Technology ("NIST") permits net weight variation in products, nothing in the regulations contemplates *intentional* and *systematic* underfilling as alleged in Plaintiffs' Complaint.

### C. Slack-Fill Claims Are Not Preempted

Next, Defendant makes irrelevant arguments addressed mostly at claims in the original complaint and not the First Amended Complaint. Defendant states that Plaintiffs' slack-fill claims should be dismissed because the FDA has not enacted 21 C.F.R. § 100.100, a food slack-fill regulation, for drugs or cosmetics. This argument is of no consequence to Plaintiffs' claims because as stated in the FAC, federal law forbids the packaging of products in containers made, formed, or filled as to be misleading. *See* 21 U.S.C. § 352, 21 U.S.C. § 362. Whether the FDCA refers to such packaging by the term of art "non-functional slack-fill" or simply as misleading packaging in its regulations has no bearing on the merit of Plaintiffs' claims.

Under 21 U.S.C. § 352(i)(1), "[a] drug or device shall be deemed to be misbranded. . . "[i]f it is a drug and its container is so made, formed, or filled as to be misleading. . . ." *See* FAC ¶ 30. Under 21 U.S.C. § 362(d), "[a] cosmetic shall be deemed to be misbranded. . . [i]f its container is so made, formed, or filled as to be misleading. . . ." *See* FAC ¶ 32. The Complaint specifically states that numerous states forbid the misbranding of drugs and cosmetics in language identical to its federal counterparts, including each of the states in which the Plaintiffs reside. *See* FAC ¶ 35. Plaintiffs claim that the challenged Products are packaged with an excessive amount of empty space which amounts to deception. Federal courts have typically acknowledged that it is inappropriate to dismiss allegations that plaintiffs were deceived by misleading packaging. *See Samet v. Procter & Gamble Co.*, No. 12-cv-01891, 2013 U.S. Dist. LEXIS 86432, at *32-33 (N.D. Cal. 2013) (holding that "...the amount of slack-fill expected by a reasonable consumer is a debatable factual question that is inappropriate to resolve at the motion to dismiss stage."); *Williams v. Gerber Prods, Inc.*, 552 F.3d 934, 938-39 (9th Cir. 2008) (holding the district court erred in determining as a matter of law that the product packaging was not deceptive because "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer.").

As stated in the FAC, Plaintiffs and Class members relied on the size of the containers to believe that the entire volume of the packaging would be filled to capacity with deodorant/antiperspirant. *See* FAC ¶ 49. As a result, consumers believed that they were buying more of the Product than what was being sold. *Id*. Even if the FDCA contained no "non-functional slack-fill" provision, Plaintiffs would still be able to assert their state consumer protection claims because each state in the FAC prohibits misleading packaging of drugs and/or cosmetics. Plaintiffs have asserted that Defendant's conduct constitutes an unlawful business act and/or practice. *See* FAC ¶ 49. Further, Defendant conveniently ignores that with regard to the California Plaintiffs,

California law specifically forbids packaging products in containers with non-functional slack-fill.

*See* Cal. Bus. & Prof. Code § 12606.

## II. PLAINTIFFS' CLAIMS SHOULD NOT BE DISMISSED BECAUSE PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUGGEST A REASONABLE CONSUMER COULD BE MISLED

### A. Plaintiffs Have Plausibly Pled That A Reasonable Consumer Could Be Misled

Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label…

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (2011).

In its motion, Defendant ignores this law and in

stead argues that no reasonable consumer could be misled. Def. Mem. at 15. However, courts have repeatedly held it improper to determine as a matter of law on a motion to dismiss the plausibilty of consumers' interpretations of product labeling. *See, e.g., Ackerman*, 2010 WL 2925955, at *17 ("[W]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and therefore usually cannot be resolved through a motion to dismiss.") (quoting *Gerber,* 552 F.3d at 938)). Even more to the point, numerous courts have found allegations that consumers were misled in connection with slack-filled packaging to be a sufficient basis for a cause of action. *See Leonhart v. Nature's Path Foods, Inc.*, No. 13-cv-00492, 2014 U.S. Dist. LEXIS 164425, at *20 (N.D. Cal. 2014) (denying motion to dismiss slack fill claims); *Ivie v. Kraft Foods Global, Inc.*, No. 12-cv-02554, 2013 U.S. Dist. LEXIS 25615, at *34 (N.D. Cal. 2013) (denying motion to dismiss slack fill claims); *Thomas v. Costco Wholesale Corp.*, No. 12-cv-02908, 2014 U.S. Dist. LEXIS 46405, at *28 (N.D. Cal. 2014) (denying motion to dismiss slack fill claims); *Samet v. Procter & Gamble Co.*, 2013 U.S. Dist. LEXIS 86432, at *32-33 (N.D. Cal. 2013) (denying motion to dismiss slack fill claims).

In its Motion, Defendant states that reasonable consumers are aware that 100% of a product is not always accessible. While that may be true, a reasonable consumer who has purchased Defendant's Products may not be as readily aware of the amount of product they are receiving is well below what is advertised due to the deceptive packaging employed by Defendant. As stated in the FAC, a brand new Product can be repelled to show that in its starting position, it has already been propelled to bring the deodorant/antiperspirant up to the top of the body of the container. FAC ¶ 46. There is no doubt that there is no practical business purpose for the non-functional slack-fill used to package the Products other than to mislead consumers as to the actual volume of usable deodorant/antiperspirant in the Products. *Id*. A consumer can use the Product and believe that he or she has used an amount of deodorant/antiperpirant equal to the entire volume of the container (approximately five inches of deodorant/antiperspirant) because he/she cannot see the empty slack-fill space even after he/she completely uses the Product. In reality, such consumer only used up to three inches worth of Product.

**B. Plaintiffs' Total Net Weight Claims Are Objectively Misleading And Need Not Satisfy Rule 9(b)**

Complaints for violation of consumer protection laws are subject to the notice pleading standards of Federal Rule of Civil Procedure 8(a)(2). *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (Section 349 claims "need only meet the bare-bones notice-pleading requirements of Rule 8(a)"). The heightened pleading requirements of Rule 9(b) do not apply to allegations regarding a defendant's state of mind. Thus, knowledge and intent need only be alleged generally to state a valid claim for fraud. Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Swingless Golf Club Corp. v. Taylor*, 679 F. Supp. 2d 1060, 1067 (N.D. Cal. 2009). *See also*, *In re the Prudential Ins. Co.*, 975 F. Supp. 584 at 596-97( D.N.J. 1997) (finding that "[w]ith respect to class action claims, 'less specificity is required when the complaint presents the claims of a [proposed] class

and individual identification of the circumstances of the fraud as to each class member would require voluminous pleadings.'") (quoting *Alfaro v. E. F. Hutton & Co., Inc.*, 606 F. Supp. 1100, 1108 (E.D. Pa. 1985)).

Faced with Plaintiffs' detailed and highly credible allegations, Defendant argues that the Court should ignore the named Plaintiffs' own experience in purchasing its Products. Not only have Plaintiffs satisfied Rule 8(a)'s requirements but they have also satisfied Rule 9(b)'s heightened requirements by adequately pleading the who, what, when, where, and how of the alleged deceptive conduct.[5] The allegations in the FAC provide "all of the essential factual background that would accompany the first paragraph of any newspaper story – that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (citations omitted); *see also U.S. ex rel. Polansky v. Pfizer, Inc.*, 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009) ("Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud.").

**Who:** The FAC specifically identifies Defendant as the entity which manufactured, distributed, advertised, marketed, and sold the Products under the AXE® and Degree® product lines. (FAC at ¶ 2, 25, 36).

**What:** The FAC identifies and describes the Products. (FAC at ¶¶ 26, 36-37). Plaintiffs allege that Defendant purposefully sold the Products (i) with labels that list a false and misleading net weight of actual usable deodorant/antiperspirant, (ii) with labels that list a false and misleading total net weight of deodorant/antiperspirant (whether usable or unusable) and (iii) with non-functional slack-fill, (FAC at ¶¶ 2, 4, 38).

**Where:** The FAC explains that Defendant made the misleading claim directly on the Product packaging. (FAC at ¶ 38; Exhibit A to FAC). Moreover, the FAC identifies exactly where each of the named Plaintiffs purchased the Products. (FAC at ¶¶ 14-24).

**When:** Plaintiffs allege when they purchased the Products. (FAC at ¶¶ 14-24). Moreover, the FAC identifies exactly where each of the named Plaintiffs purchased the

---

[5] *See Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir. 1979) (stating that in the Second Circuit, even for the claims where Rule 9(b) applies, the rule's requirements must be read in conjunction with and "harmonized with the general directives…of Rule 8 that the pleadings should contain a 'short and plain' statement of the claim or defense and with each averment should be 'simple, concise and direct.'")).

Products. (FAC at ¶¶ 14-24). Plaintiffs allege that they were exposed to Defendant's misrepresentations prior to purchase and relied on them. (FAC at ¶ 14-24).

**How**:     The FAC explains how Defendant's labeling is false and misleading. As a result of Defendant's conduct, Plaintiffs and Class members were misled (and Class members will continue to be misled) into believing that they were receiving more deodorant/antiperspirant than they actually were. (FAC at ¶ 48). In making their purchases, Plaintiffs and Class members relied on the net weight listed on the Product labels in evaluating how much deodorant/antiperspirant was in the Products. Plaintiffs and Class members also relied on the size of the container to believe that the entire volume of the packaging would be filled to capacity with deodorant/antiperspirant. (FAC at ¶ 49).

Thus, Defendant's argument that Plaintiffs' claims are not sufficiently pled is unfounded. The allegations in the FAC are more than sufficient to state plausible and objectively misleading claims. *See Ackerman,* 2010 WL 2925955, at *17; *Waldman v. New Chapter, Inc.,* 714 F. Supp. 2d 398, 405-6 (E.D.N.Y. 2010) (denying motion to dismiss consumer fraud claims where plaintiff alleged misleading product packaging).

Defendant's citation to *Verzani v. Costco Wholesale Corp.*, 2011 WL 3911499 (S.D.N.Y 2010) is inapposite, if not outright misleading. In *Verzani*, the court held that plaintiff could not "salvage" his state law claim with "persistent allegations that Costco's labeling of the Shrimp Tray violates the FDCA". *Id*. at 3. Here, Plaintiffs' claims are not just premised on an FDCA violation but on state laws which forbid false and deceptive labeling and packaging. Additionally, Plaintiffs here claim that the entire line of Products are systematically under-filled, the issue is not the net weight of one ingredient versus another as was contemplated by the plaintiffs in *Verzani*. As stated in the FAC and shown in Exhibit D to the Complaint, Defendant also sold and continues to sell certain Products in which even the total net weight of the deodorant/antiperspirant (whether usable or not) is below the amount advertised on the labels as net weight. FAC ¶ 41. As such, Defendant's net weight labels are false and deceptive. *Id*.

### C. Plaintiffs Have Plausibly Pled That A Reasonable Consumer Would Be Misled By The Size Of Defendant's Packaging

Plaintiffs have plausibly pled a misleading practice. Plaintiffs and Class members relied on the size of the container to believe that the entire volume of the packaging would be filled to capacity with product, exclusive of the container's functional elements. Misleading labeling and packaging constitute unlawful business acts and practices and is geared toward making consumers believe that they are buying more of the Product than what is being sold. *See* FAC ¶¶ 48-59.

State agencies have also acknowledged the potential for consumers to be misled by deceptive packaging. In 2008, three California district attorneys entered into a settlement with Reckitt Benckiser Group, Inc., the manufacturer of the drug Mucinex, after arguing that the Mucinex packaging constituted misleading advertising because it was roughly four times larger than the actual product.[6] Moreover, in New York, plaintiffs have also been successful in maintaining oversized-packaging claims not only under statutes prohibiting misleading advertising but also under a common law theory of unjust enrichment. In *Waldman v. New Chapter*, Inc., 714 F. Supp. 2d 398 (E.D.N.Y. 2010), the court allowed the plaintiff's unjust enrichment claim to proceed against a nutritional supplement company whose product only filled half of its container. The court ruled that the size of the package could constitute a "misleading representation" that resulted in the unjust enrichment of the manufacturer even though the weight of the product and the number of servings enclosed were clearly listed on the outer packaging. *Id*. at 404.

## III. SAFE HARBOR PROVISIONS DO NOT SHIELD DEFENDANT FROM LIABILITY

Defendant also contends that because the FDA only requires the net quantity to be listed and variance is permitted, Plaintiffs' claims are barred under safe harbor doctrine. Taken to its logical extension, Defendant's argument would suggest that it could intentionally underfill all its

---

[6] http://www.co.shasta.ca.us/docs/DA/pr-2008/121908_pr_Mucinex.pdf?sfvrsn=0; http://www.martindale.com/business-law/article_Mintz-Levin-Cohn-Ferris-Glovsky-Popeo-PC_2007126.htm.

Products without concern for any consumer protection laws – so long as the short weight remains slightly under the maximum allowable variation and the label accurately reflects the net quantity of even the inaccessible content. In an effort to prevent such deceptive conduct, the FPLA has explicitly stated that additional disclosures are permitted on labeling to avoid misleading consumers as to net quantity. Further, as stated above, courts have found that safe harbor laws shield defendants from liability for explicitly permitted conduct, an intentional practice of short weighting products is outside the scope of safe harbor laws.

## IV.  PLAINTIFFS MAY SEEK INJUNCTIVE RELIEF AS THERE IS A THREAT OF FUTURE INJURY TO CLASS MEMBERS

Plaintiffs have adequately alleged the threat of future injury. The FAC states that as a result of Defendant's conduct Plaintiffs and Class members were misled (and Class members will continue to be misled) into believing that they were receiving more product than they actually were. *See* FAC ¶ 45. In addition, the FAC states that Plaintiffs and members of the Class will continue to be harmed as they are unable to rely on Defendant's packaging and net weight representations. *See* FAC ¶ 89.

## V.  PLAINTIFFS HAVE MORE THAN ADEQUATELY ALLEGED CAUSATION BASED ON THE ADVERTISING AND MARKETING OF THE PRODUCTS

Defendant summarily declares that Plaintiffs failed to allege causation based on Defendant's advertising and marketing.  Defendant need look no further than the Exhibit A of the FAC which displays the Product packaging itself. The FAC clearly sets forth that Plaintiffs and Class members viewed Defendant's misleading labeling and Product packaging, relied on the representations and were thereby deceived in deciding to purchase the Products for a premium price. *See* FAC ¶ 5. In addition, each Plaintiff has alleged that she/she was exposed to the product packaging and has alleged individual reliance on such packaging. *See* FAC ¶¶14-24.

As described in detail above in connection with Plaintiffs' consumer fraud claims, Plaintiffs have sufficiently alleged reliance on Defendant's advertising and marketing. The statements above cannot credibly be deemed conclusory or said to fail to draw the connection between Defendant's label representation and packaging and Plaintiffs' reasonable interpretation and ultimate purchasing decisions.

## VI. DEFENDANT HAD SUFFICIENT NOTICE OF THE CLAIMS OF THE GEORGIA, ALABAMA, & INDIANA PLAINTIFFS

Defendant also claims that the Georgia, Alabama and Indiana statutory claims should be dismissed for failure to provide pre-suit notice. As shown in Exhibit F to the FAC, Plaintiffs sent a demand letter to Defendant on January 13, 2015. The letter states it is on behalf of California Plaintiff, Rosemary Arellano, and all others similarly situated. Further, Indiana Code § 24-5-0.5(a)(2) does not require notice to contain every claimant's name, only the nature of the alleged deceptive conduct. The notice requirements of Georgia and Alabama do not apply where the prospective respondent does not maintain a place of business or keep assets within the state. *See* Ga. Code § 10-1-399(b) (Georgia); Ala. Code § 8-19-10(e) (Alabama). As such, the Georgia and Alabama Plaintiffs were under no obligation to provide additional or separate pre-suit notice.

## VII. OHIO STATE LAW PROVIDES A PRIVATE RIGHT OF ACTION FOR VIOLATIONS OF ITS CONSUMER PROTECTION STATUTE

In addition, Defendant argues that Ohio's consumer fraud statute is not available to consumers. This is simply not true. The Ohio Consumer Sales Practice Act explicitly creates a private right of action for consumers to rescind transactions or recover damages and/or for injunctive relief for unfair and deceptive acts in connection with consumer transactions. *See* Ohio Rev. Code Ann. §§ 1345.09(A) and 1345.09(D).

## VIII. PLAINTIFFS' EXPRESS WARRANTY CLAIM SHOULD NOT BE DISMISSED

"A prima facie claim for breach of express warranty requires the plaintiff to show that there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment." *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 604 (S.D.N.Y. 2010) (citation omitted). The FAC alleges that Defendant, as the manufacturer, marketer, distributor and seller of the Products, provided Plaintiffs and other members of the Class with written express warranties, including, but not limited to, warranties that the Products have a particular net weight. FAC ¶ 235. The weight listed on the Products' labels is inaccurate because the amount of deodorant/antiperspirant that is accessible for usage in the Products is significantly less than the net weight stated on the Products' labels. *Id*. In some instances, the Products fall short of the advertised net weight even when taking the unusable portion of deodorant/antiperspirant into account. *Id*.

Defendant bases its express warranty argument on the premise that its net weight disclosures cannot give rise to an express warranty because the disclosures are mandatory. However, any affirmation of fact or promise which relates to the goods, or any description of the products at issue, which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation, promise, or description. The net weight claims made by Defendant are an affirmation of fact that became part of the basis of the bargain and created an express warranty that the good would conform to the stated promise. Plaintiffs placed importance on Defendant's net weight claims. *Id*. As such, Plaintiffs express warranty claims should not be dismissed.

## IX. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS NOT DUPLICATIVE

To prevail on a claim for unjust enrichment in New York, a plaintiff need only plead that (1) the defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the

circumstances were such that equity and good conscience require the defendant to make restitution. *Hughes v. Ester C Co.*, No. 12-0041, 2013 WL 1080533 at *24 (E.D.N.Y. Mar. 15, 2013). The FAC easily establishes these elements by alleging (1) that Defendant received certain monies as a result of the uniform deceptive labeling and packaging of its Products; (2) Plaintiffs and the Class conferred a benefit on Defendant through purchasing the Products displaying false net weight statements and misleading packaging; and (3) Defendant has knowledge of this benefit, has voluntarily accepted and retained the benefits conferred on it and will be unjustly enriched if it is allowed to retain such funds. (FAC ¶¶ 256-259). Thus, Plaintiffs have stated a claim for unjust enrichment.[7]

New York courts recognize that unjust enrichment claims are quite versatile – they may be pled in the alternative, and they are not mutually exclusive with other types of claims. *See* Fed. R. Civ. P. 8(a)(3) ("[A] demand for the relief sought, which may include relief in the alternative or different types of relief."); s*ee also, e.g., Pramer, S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89, 100 (N.Y. App. Div. 2010); *Niagara Mohawk Power Corp. v Freed*, 265 A.D.2d 938, 939 (N.Y. App. Div. 1999). As the court held in *In re Bayer Corp. Combination Aspirin*, sustaining a misleading statement claim for unjust enrichment:

> [P]lantiffs charge defendant with employing misleading statements about the virtues of the combination product to market them to consumers. Because of these misrepresentations, plaintiffs purchased the combination products and defendant retained those benefits. If the allegations in the Complaint are true, then defendant reaped a financial reward at plaintiffs' expense. This is sufficient to state a claim for unjust enrichment.

*In re Bayer Corp. Combination Aspirin*, 701 F. Supp. 2d 356 at 384 (E.D.N.Y. 2010).

Defendant argues that Plaintiffs' unjust enrichment claim is either duplicative of the consumer protection claims or fail for the same reasons as the consumer protection claims.

---

[7] *See St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d. at 183 (E.D.N.Y. 2010) ("[D]ismissal of plaintiff's alternative theory of unjust enrichment on motion to dismiss would violate the liberal policy of Rule 8.").

Plaintiffs are entitled, under Rule 8(d), to plead unjust enrichment as an alternative theory of liability. *See St. John's Univ., New York*, 757 F. Supp. 2d. at 183-84 (E.D.N.Y. 2010).[8] Moreover, Defendant ignores that Plaintiffs may recover for more than just the premium paid under a theory of unjust enrichment, and as such, the claim cannot be viewed as duplicative. If Defendant's conduct was and is indeed misleading and deceptive, the unjust enrichment claim is not duplicative, as it allows for alternative relief as compared to Plaintiffs' state consumer fraud claims. Because the adequacy of Plaintiffs' remedies at law are still in dispute, it is premature to dismiss Plaintiffs' request for equitable relief at this time, and in any event, the issue is one of fact that is not proper for resolution at this stage of the litigation.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendant's Motion in its entirety.[9]

Dated: April 10, 2015

<div style="margin-left:40%">

Respectfully submitted,

/s/ C.K. Lee
C.K. Lee, Esq.
**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181

</div>

---

[8] *See Martorella v. Deutsche Bank Nat'l Trust Co.*, No. 12–80372–CIV, 2013 WL 1137514, at *8 (S.D. Fla. Mar. 18, 2013) ("[a]lthough equitable relief ultimately may not be awarded where there exists an adequate remedy at law, Plaintiff certainly may plead alternative equitable relief" (quotation omitted)).
[9] If the Court does not deny Defendant's Motion in its entirety, Plaintiffs hereby respectfully request leave to amend the Complaint pursuant to Federal Rule of Civil Procedure 15(a). *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").