UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| TIMBA BIMONT, | ) | |
| SYLVIA BETHEA, | ) | |
| LOURDES ROSADO, | ) | |
| ROSEMARY ARELLANO, | ) | Case No. 14–cv–07749 (JPO) (AJP) |
| BRENDA STARR, | ) | |
| RONALD BRINKLEY, | ) | |
| WENDY SYROKA, | ) | |
| DAWN KELLY, | ) | |
| SERRENA UPTON, | ) | |
| KENDRA ANGEL and | ) | |
| MARK MCINTIRE, | ) | |
| *on behalf of themselves and others similarly* | ) | |
| *situated*, | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | |
| v. | ) | |
|  | ) | |
| UNILEVER UNITED STATES, INC., | ) | |
|  | ) | |
| Defendant. | ) | |
|  | ) | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

WINSTON & STRAWN LLP
200 Park Avenue
New York, NY  10166–4193
212-294-6700

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT.....................................................................................................................2

I.    Plaintiffs' Claims Are Expressly Preempted ........................................................2

    A.    Plaintiffs' Claims Based on Usable Net Weight Are Preempted............................3

    B.    Plaintiffs' Claims Based on Total Net Weight Are Preempted ..............................4

    C.    Plaintiffs' Slack-Fill Claims Are Preempted .........................................................5

II.    Plaintiff's Claims Should Be Dismissed Because No Reasonable Consumer Would Be Misled ...................................................................................8

    A.    No Reasonable Consumer Would Be Misled by the Fact that Consumers Cannot Access 100% of the Product from the Containers.......................................8

    B.    Plaintiffs' Total Weight Allegations Are Not Objectively Misleading or, Alternatively, They Do Not Satisfy Rule 9(b)..........................................................8

    C.    No Reasonable Consumer Would Be Misled by the Size of the Package in Light of the Net Weight Disclosed on the Labels.......................................9

III.    Plaintiffs' Statutory Claims Are Barred by the Safe Harbors Afforded to a Manufacturer that Complies with Applicable Regulations...................................10

IV.    Plaintiffs Lack Standing to Seek Injunctive Relief Because They Cannot Allege the Threat of Future Harm ..................................................................................11

V.    Plaintiffs' Claims Based on Advertising and Marketing Should Be Dismissed for Lack of Causation .................................................................................................12

VI.    The Indiana Statutory Claim Should Be Dismissed for Failure to Give the Required Notice; the Georgia and Alabma Statutory Claims Should Be Limited to Individual, Not Class-Wide Causes of Action ....................................................12

VII.    The Ohio Statutory Claim Should Be Dismissed Because It Is Not Available to Consumers...........................................................................................................13

VIII.    Plaintiffs' Express Warranty Claim Should Be Dismissed Because Mandated Disclosures Are Not Warranties ........................................................................14

IX.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed as Duplicative and Because Plaintiffs Have an Adequate Remedy at Law........................................14

CONCLUSION................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ackerman v. Coca Cola*,
  No. 09-0395, 2010 WL 2925955 (E.D.N.Y. Jul. 21, 2010)......................................................5, 6

*Allee v. Medrano*,
  416 U.S. 802 (1974)................................................................................................................12

*Bowling v. Johnson & Johnson*,
  No. 14–cv–3727, 2014 WL 5643955 (S.D.N.Y. Nov. 4, 2014) ................................................7

*Buckman Co. v. Plaintiffs' Legal Committee*,
  531 U.S. 341 (2001)..................................................................................................................2

*Cipollone v. Liggett Group, Inc.*,
  505 U.S. 504 (1992)..................................................................................................................3

*Dicuio v. Brother Int'l Corp.*,
  No. CIV.A. 11-1447 FLW, 2012 WL 3278917 (D.N.J. Aug. 9, 2012) ....................................12

*Duncan v. Walker*,
  533 U.S. 167 (2001)..................................................................................................................6

*Ebner v. Fresh*,
  No. SACV 13-0047 JVS, 2013 WL 9760035 (C.D. Cal. Sept. 11, 2013)................................4

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014)........................................................................................14

*Goldstein v. Home Depot U.S.A., Inc.*,
  609 F. Supp. 2d 1340 (N.D. Ga. 2009) ..................................................................................12

*Honig v. Comcast of Georgia I, LLC*,
  537 F. Supp. 2d 1277 (N.D. Ga. 2008) ..................................................................................13

*Horowitz v. Stryker Co.*,
  613 F. Supp. 2d 271 (E.D.N.Y. 2009) ....................................................................................14

*In re ConAgra Foods, Inc.*,
  No. CV 11-05379 MMM, 2015 WL 1062756 (C.D. Cal. Feb. 23, 2015) ...............................12

*McNair v. Synapse Grp. Inc.*,
  672 F.3d 213 (3d Cir. 2012).....................................................................................................12

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996)........................................................................................................6

*Parker v. Stryker Corp.*,
    584 F. Supp. 2d 1298 (D. Colo. 2008)............................................................................3

*Samet v. Procter & Gamble Co.*,
    5:12-cv-01891-PSG, 2013 WL 6491143 (N.D. Cal. Dec. 10, 2013).............................5

*St. John's Univ., New York v. Bolton*,
    757 F. Supp. 2d 144 (E.D.N.Y. 2010) .........................................................................14

*State of Fla. v. Tenet Healthcare Corp.*,
    420 F. Supp. 2d 1288 (S.D. Fla. 2005) ........................................................................11

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)........................................................................................................11

*Torres v. JC Penney Corp.*,
    12-cv-01105-JST, 2013 U.S. Dist. LEXIS 66506 (N.D. Cal. May 8, 2013) .....................10, 11

*Turek v. Gen. Mills. Inc.*,
    662 F.3d 423 (7th Cir. 2011) .........................................................................................7

*United States v. Menasche,*
    348 U.S. 528 (1955)........................................................................................................6

*Waldman v. New Chapter, Inc.*,
    714 F. Supp. 2d 398 (E.D.N.Y. 2010) .......................................................................9, 10

*Warth v. Seldin*,
    422 U.S. 490 (1975)......................................................................................................11

*Weisblum v. Prophase Labs, Inc.*,
    No. 14-CV-3587 JMF, 2015 WL 738112 (S.D.N.Y. Feb. 20, 2015) .................................14, 15

*Williams v. Gerber Prods, Inc.*,
    552 F.3d 934 (9th Cir. 2008) .........................................................................................5

*Wyeth v. Levine*,
    555 U.S. 555 (2009)........................................................................................................3

STATE CASES

*Corsello v. Verizon New York, Inc.*,
    18 N.Y.3d 777, 944 N.Y.S.2d 732 (2012) ...................................................................14

*Ex Parte Exxon Corp.*,
    725 S.2d 930 (Sup. Ct. Ala. 1998)...............................................................................13

*Gaidon v. Guardian Life Ins. Co. of America,*
 94 N.Y.2d 330, 704 N.Y.S.2d 177 (1999) .................................................................10

*Pramer, S.C.A. v. Abaplus Int'l Corp.,*
 76 A.D.3d 89, 907 N.Y.S.2d 154 (1st Dep't 2010) ..................................................14

*Small v. Lorillard Tobacco Co., Inc.,*
 94 N.Y.2d 43, 698 N.Y.S.2d 615 (1999) ..................................................................10

**STATUTES**

15 U.S.C. § 1454(c)(4)...................................................................................................7

21 U.S.C. § 362(d) .........................................................................................................7

21 U.S.C. § 379r ....................................................................................................2, 6, 7

21 U.S.C. § 379s ....................................................................................................2, 6, 7

21 U.S.C. § 451 *et seq.*.................................................................................................6

21 U.S.C. § 601 *et seq.*.................................................................................................6

Ala. Code § 8-19-10(f)..................................................................................................13

F.R.C.P. 8(a) ..................................................................................................................8

F.R.C.P. 9(b)...............................................................................................................8, 9

Ga. Code § 10-1-399(a) ...............................................................................................13

Ohio Rev. Code Ann. § 4165.01 *et seq.*.....................................................................14

Ohio Rev. Code Ann. §§ 1345.09(A), (D)...................................................................13

**REGULATIONS**

21 C.F.R. § 100.100 ...................................................................................................5, 7

21 C.F.R. §§ 201.62(a), (f)............................................................................................3

21 C.F.R. §§ 701.13(a), (b), (g) ...................................................................................3

**OTHER AUTHORITIES**

H.R. Rep. No. 105-310 ..................................................................................................7

iv

**PRELIMINARY STATEMENT**

In opposition to Unilever's motion, Plaintiffs quote poems and song lyrics, while attempting to obfuscate the reasons why each of their claims should be dismissed.[1]   But as demonstrated in Unilever's moving brief and below, each of Plaintiffs' three substantive theories of liability—usable net weight, total net weight and non-functional slack-fill—are preempted by federal law and legally insufficient under state law.

Plaintiffs base the entirety of their usable net weight claims on the contention that Unilever failed to include additional statements on its Products' labels to "clarify the net weights" that are disclosed on the front label in ounces and grams.  Because the applicable FDA regulations do not require "clarifying statements," Plaintiffs' attempt to impose them on Unilever through their usable net weight claims is preempted.  Plaintiffs further admit that they were aware that in products of this type, not all of the contents can be accessed by the consumer. Accordingly, their usable net weight claims also fail under state law because Plaintiffs cannot have been misled by a fact of which they admittedly were aware.

Plaintiffs concede that the applicable federal standards permit minor variations in the Products' net weight and all of the Products allegedly purchased by Plaintiffs had a total net weight that was within the allowable variations.  They premise the entirety of their total net weight claims on the unsupported, conclusory allegation that Defendant "intentionally and systematically" under-filled the Products, but within the variations allowed by the applicable federal standards.  Plaintiffs' total net weight claims are preempted because they seek to add a requirement under state law that would create different standards depending on a manufacturer's intent and frequency of occurrence.  Their total net weight claims fail under state law as well,

---

[1]  Capitalized terms used in this brief have the same meaning as those defined in Unilever's moving brief.

because a minor variation in net weight that fully complies with the federal standards is not objectively misleading.

Plaintiffs' slack-fill claims are preempted because FDA regulations only prohibit non-functional slack-fill in food products, not cosmetics or OTC drugs.  Plaintiffs' attempt to import the FDA's food regulations to cosmetics and OTC drugs, which the FDA has not seen fit to do, would result in the imposition of state law requirements that are different than, in addition to and otherwise not identical with the existing FDA regulations for cosmetics and OTC drugs.  Finally, because Plaintiffs admit that they saw and relied on the net weights disclosed on the Products' labels, they could not have been misled as to the quantity of product inside, regardless of the size of the packages.

For these reasons and the others discussed herein and in Unilever's opening brief, the FAC should be dismissed.

## ARGUMENT

## I.    PLAINTIFFS' CLAIMS ARE EXPRESSLY PREEMPTED

Plaintiffs conflate two distinct forms of preemption.  They repeatedly argue that their claims are not preempted because they are not "solely based on a violation" of the FDCA.  (Pl. Br. p. 3.)  But that type of preemption—known as *Buckman* preemption—is not the basis for Defendant's argument.[2]  Rather, Defendant's motion is premised on the *express* preemption clauses of the FDCA for cosmetics and OTC drugs, which preempt state law claims that would impose "a requirement that is different from or in addition to, or that is otherwise not identical with" the FDCA and applicable FDA regulations.  21 U.S.C. §§ 379s & 379r.

---

[2]  *See Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 352-53 (2001).

### A.       Plaintiffs' Claims Based on Usable Net Weight Are Preempted

Plaintiffs base their usable net weight claims on the contention that Defendant has failed

"to add supplementary statements to clarify net weights" to its Products even though Unilever is

permitted to do so by federal law.  (Pl. Br. P. 10.)  Although Unilever is *permitted* to add such

clarifying statements to its product labeling, it is not *required* to do so.  Because Plaintiffs'

usable net weight claims seek to transform permissible conduct into conduct that is mandatory,

these claims are preempted.  *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 520-21 (1992)

(state laws claims that would require additional warnings on cigarette labels other than those

mandated by Congress are expressly preempted); *Parker v. Stryker Corp.*, 584 F. Supp. 2d 1298,

1303 (D. Colo. 2008) (state law claim preempted because it "would contradict the FDA's

determination that the representations made on the label were adequate and appropriate and,

thus, impose requirements different from or in addition to the federal requirements").[3]

Plaintiffs further argue that Congress included a policy declaration in the FPLA that

"[p]ackages and their labels should enable consumers to obtain accurate information as to the

quantity of the contents and should facilitate value comparisons."  (Pl. Br. p. 10, *quoting* 15

U.S.C. § 1451.)  Defendant does not disagree; but that policy is not at issue on this motion.  The

FDA's cosmetic and OTC drug regulations limit the manufacturer's labeling obligations to the

disclosure of its products' net weight.   *See*  21 C.F.R.  § 701.13(a), (b), (g); 21 C.F.R.

§ 201.62(a), (f).  By seeking to compel Defendant to add "supplemental statements to clarify net

---

[3]   *Wyeth v. Levine*, 555 U.S. 555 (2009), relied on by Plaintiffs, is inapposite because it did not involve express preemption at all.  In *Wyeth*, the Supreme Court held that state law product liability claims based upon inadequate drug warning labels were not preempted precisely because "if Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision…." *Id.* at 574.

3

weights," Plaintiffs' usable net weight claims would impose different, additional, and non-identical requirements to the existing FDA regulations.[4]

## B.      Plaintiffs' Claims Based on Total Net Weight Are Preempted

Plaintiffs concede that the NIST standards establish the permissible net weight variations. (Pl. Br. at 14.)  And Plaintiffs do not dispute that Defendant complied with the applicable NIST standards with respect to the Products at issue.  Nevertheless, Plaintiffs premise their total net weight claims on the wholly conclusory allegation that, even though Defendant's net weights were within the allowable NIST ranges, Defendant engaged in "*intentional* and *systematic* underfilling*." (*Id.*)  Even assuming for purposes of this motion that Plaintiffs' conclusory allegations are true—which Defendant by no means concedes—Plaintiffs' total net weight claims are preempted because they seek to impose a requirement that prohibits any underfilling at all, even if within the permissible NIST ranges.

In seeking to premise liability on Defendant's supposed "intentional and systematic underfilling," but within the ranges permitted by the applicable federal standards, Plaintiffs seek to add a scienter element to those standards.  In other words, Plaintiffs' theory is that underfilling within the NIST ranges is permissible if it is done occasionally and unintentionally, but it is not permissible if done intentionally and systematically.  The NIST standards do not prescribe different allowable variances in net weight depending on the manufacturer's intent and frequency of occurrence.  Plaintiff's total net weight theory would impose an obligation on Defendant that is different from, in addition to, or otherwise not identical with the existing federal requirements.

---

[4]  In Defendant's opening brief, we cited *Ebner v. Fresh*, No. SACV 13-0047 JVS, 2013 WL 9760035 (C.D. Cal. Sept. 11, 2013), where a similar usable net weight claim was held to be preempted.  (Def. Br. at 9.)  Plaintiffs attempt to distinguish *Ebner* by arguing that, unlike *Ebner*, Plaintiffs here have also alleged that the Products' total net weight is misleading. (Pl. Br. at 11.)  But, that does not make *Ebner* distinguishable.  The analysis pertaining to why Plaintiffs' usable net weight claims are preempted is distinct from an analysis of Plaintiffs' separate claims based on total net weight.

### C.      Plaintiffs' Slack-Fill Claims Are Preempted

The requirement that Plaintiffs now seek to impose prohibiting non-functional slack-fill in cosmetics and OTC drugs is identical to and derived directly from the FDA's food regulations. For example, the FAC defines "slack-fill" as "the difference between the actual capacity of a container and the value of product contained therein."  (FAC ¶ 38.)  This is a direct quote from the FDA's food regulations in 21 C.F.R. § 100.100(a).  Moreover, the FAC does not seek to impose liability solely because the Products contain slack-fill, but only because they allegedly contain slack-fill that is "non-functional."  The FDA defines "non-functional slack-fill" as "the empty space in a package that is filled to less than capacity for reasons other than" the six grounds enumerated in 21 C.F.R. § 100.100(a).

The only way that a jury empaneled by this Court could determine whether the alleged slack-fill in Defendant's Products qualifies as "non-functional" would be if it applied the definition of "non-functional slack-fill" for food products that is set forth in 21 C.F.R. § 100.100, to the cosmetics and OTC drugs at issue in this case.  Indeed, Plaintiffs alleged as much in the original complaint and only removed the citations to 21 C.F.R. § 100.100, not the substantive allegations, in the FAC.  Clearly, application of the FDA food regulations would impose a state law requirement different than, in addition to or otherwise not identical with the existing FDA cosmetic and OTC drug regulations which, unlike food products, do not prohibit non-functional slack-fill.

*Ackerman v. Coca Cola*, No. 09-0395, 2010 WL 2925955 (E.D.N.Y. Jul. 21, 2010), cited by Plaintiffs, is distinguishable.[5]  In *Ackerman*, the Court held that consumer protection claims

---

[5]  Plaintiffs also rely on *Samet v. Procter & Gamble Co.*, No. 5:12-cv-01891-PSG, WL 6491143 at *2 (N.D. Cal. Dec. 10, 2013), and *Williams v. Gerber Prods, Inc.*, 552 F.3d 934, 938-39 (9th Cir. 2008).  The products at issue in both *Samet* and *Williams* were foods, *not* cosmetics or OTC drugs, and the respective court's holdings were based on the existence of FDA regulations governing slack-fill in food products.

based on various state statutes were not expressly preempted by the Nutritional Labeling and Education Act ("NLEA") because the plaintiffs there "sufficiently state[d] a claim that defendants have violated FDA regulations." *Id*. at \*13.  Similarly, in *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996), the Court held that state law products liability claims were not preempted under § 360k of the Medical Device Amendments of 1976 ("MDA"), *inter alia*, because the plaintiffs' "allegations may include claims that Medtronic has, to the extent they exist, violated FDA regulations."  *Id.* at 495.  In contrast to those cases, Plaintiffs here do not contend that Unilever violated any FDA regulations, except for regulations that apply only to food, not to cosmetics or OTC drugs.

It bears emphasis that, by its terms, the FDCA's preemption clause applicable to cosmetics and OTC drugs was intended by Congress to be broader in scope than the MDA and other federal statutes that only preempt state law requirements that are "different from or in addition to" existing FDA regulations.  The FDCA not only preempts additional and different requirements, but also those that are "**otherwise not identical with**" the governing regulations. 21 U.S.C. §§ 379s & 379r.

Congress' inclusion of the "otherwise not identical with" language, which is not contained in many other preemption statutes, has meaning.[6]  It is a cardinal principle of statutory construction that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Duncan v. Walker,* 533 U.S. 167, 174 (2001).  Thus, it is the Court's duty "to give effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538-39 (1955).

---

[6]  For example, in addition to the MDA, the Federal Meat Inspection Act, 21 U.S.C. § 601 *et seq.*, and Poultry Products Inspection Act, 21 U.S.C. § 451 *et seq.*, only preempt requirements that are "different than or in addition to" federal law.

The "otherwise not identical with" language means just that.  Plaintiff's slack-fill claims, which would require Unilever to comply with the FDA's food regulations in the packaging of its cosmetics and OTC drugs, clearly would impose requirements that are "otherwise not identical with" the existing FDA cosmetic and OTC drug regulations.[7]

Finally, Plaintiffs cannot avoid the preemptive effect of §§ 379s & 379r by relying on the general statement in 21 U.S.C. § 362(d) and repeated in various state laws, that a product can be deemed to be misbranded if, *inter alia*, it is filled as to be misleading.  Congress explicitly authorized the FDA to enact regulations to:  "prevent the non-functional slack-fill of packages containing consumer commodities."  15 U.S.C. § 1454(c)(4).  Despite that express invitation from Congress, the FDA elected not to go beyond food products and extend its regulations prohibiting non-functional slack-fill to cosmetics and OTC drugs.  *See* 21 C.F.R. § 100.100.  Thus, it does not matter whether Plaintiffs' slack-fill claims are consistent with § 362(d).  In comparing Plaintiffs' slack-fill claims to the FDCA and regulations promulgated by the FDA, "consistency is not the test; identity is."  *Turek v. Gen. Mills. Inc.*, 662 F.3d 423, 427 (7th Cir. 2011).  *Accord Bowling v. Johnson & Johnson*, No. 14–cv–3727, 2014 WL 5643955, at *2 (S.D.N.Y. Nov. 4, 2014) ("The standard … is whether state law diverges from federal law *at all*…. [S]tate requirements are not permitted unless they are *identical* to federal standards.").

There is no identity between Plaintiffs' proposed prohibition on non-functional slack-fill in the packaging of cosmetics and OTC drugs and the FDA regulations which restrict any such prohibition to food products.

---

[7]  The legislative history of the 1997 amendment to the FDCA that added the express preemption clauses to the FDCA for cosmetics and OTC drugs emphasizes that under those provisions, a state law requirement is preempted "if there is a federal requirement related to that aspect or aspects of the cosmetic, and the state requirement is not *identical* with the federal requirement…."  H.R. Rep. No. 105-310 at 80 (emphasis added).

II.   **PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE NO REASONABLE CONSUMER WOULD BE MISLED**

A.   **No Reasonable Consumer Would Be Misled by the Fact that Consumers Cannot Access 100% of the Product from the Containers**

As explained in Defendant's moving papers, it is a matter of common experience and common sense that purchasers of consumer products such as deodorants, antiperspirants, shampoo, toothpaste, *etc.*, cannot use every last bit of product in the container.  Faced with this reality, Plaintiffs now admit that it "may be true" that "reasonable consumers are aware that 100% of a product is not always accessible." (Pl. Br. p. 17.)  This admission is fatal to Plaintiffs' usable net weight claims because Plaintiffs cannot have been misled by a fact of which they admittedly were aware.

B.   **Plaintiffs' Total Weight Allegations Are Not Objectively Misleading or, Alternatively, They Do Not Satisfy Rule 9(b)**

As discussed above, Plaintiffs concede the applicability of the NIST standards which permit variations in the disclosed net weight of the Products, within precisely specified ranges. By establishing these standards, the federal government's view is that such minor variations in net weight would not mislead consumers.  Because the Products fall within the allowable variances, Plaintiffs' total net weight claims are not objectively misleading.

Plaintiffs further argue that, "[g]iven there are no common law fraud claims in the FAC, Plaintiffs need only satisfy the notice pleading standard of Rule 8(a)." (Pl. Br. at 4.)  Plaintiffs are wrong.  As set forth in Defendant's moving papers, the Rule 9(b) standard applies to the state consumer protection statutes which form the basis of Counts III, IV, V, VI, VIII, and XII of the FAC, as well as the negligent misrepresentation claim in Count XV. (*See* Def. Br. at 16-17.)

Plaintiffs' allegations of total net weight do not satisfy Rule 9(b) for two reasons.  First, Plaintiffs have not pled a single fact to support their bald assertion that Unilever acted

8

"intentionally and systematically."  Second, Plaintiffs' allegation that some product remains embedded in the package's plastic and is not accessible to the consumers, (FAC ¶ 39), is contradicted by their contention that they were able to measure the unusable portion "in the same manner as the usable portion—by extracting and weighing the product."  (Pl. Br. at 4.)  Such contradictory allegations lack the particularity required by Rule 9(b).  At a minimum, Rule 9(b) requires Plaintiffs to disclose facts supporting both their conclusion of intentional and systematic conduct and their method for weighing the portion of the Products they claim is inaccessible.

### C.    No Reasonable Consumer Would Be Misled by the Size of the Package in Light of the Net Weight Disclosed on the Labels

Plaintiffs admit—and Defendant agrees—that "labels matter."  (*Id.* p. 16.)  Plaintiffs further admit that in making their purchasing decisions, they "relied on the net weight listed on the Product labels in evaluating how much deodorant/antiperspirant was in the Products."  (FAC ¶ 49.)  These admissions confirm that Plaintiffs were not misled by the size of the package because the disclosure of the Products' net weight, upon which Plaintiffs concededly relied, is sufficient to give consumers all of the information needed to assess the *quantity* of the package's product.

*Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398 (E.D.N.Y. 2010), cited by Plaintiffs, is internally inconsistent and arguably supports Unilever's position.  In *Waldman*, plaintiffs brought common law fraud and NY GBL § 349 claims against a food manufacturer, alleging that the size of its Berry Green cereal boxes misled them into believing they were purchasing "more" than the package actually contained.  *Id.* at 400.  This is precisely what Plaintiffs plead in this case.  The *Waldman* Court initially and correctly held that " 'more' cannot mean weight, because the box accurately disclosed that the product weighs 180 grams."  *Id.* 402-03.  The Court continued:

9

> Rather, at most, the Complaint alleges that Berry Green's packaging implicitly misrepresents the product's *volume* and *density*.  After all, if Berry Green was less dense, then 180 grams of product might, in fact, fill the unnecessarily large jar it came in.
>
> The question then turns to: does the Complaint plead facts to suggest that this misrepresentation was material?  And the answer is no.  Plaintiff pleads nothing to suggest that she, or other class members, cared about Berry Green's density.

*Id.* at 403 (emphasis in original).  The *Waldman* Court dismissed the fraud claim because the alleged misrepresentation was not material.  *Id.*[8]

Here, Plaintiffs claim to have "believed that they were getting more of the Products than was actually being sold." (Pl. Br. at 10.)  But, as in *Waldman*, their allegations of "more" cannot mean weight because the net weight is disclosed on the label.  Nor is there any allegation that Plaintiffs cared about the density of the Products.  Accordingly, any alleged misrepresentation emanating from the size of the package was not material to Plaintiffs and cannot satisfy the causation requirement of each of Plaintiffs' causes of action.

## III.    PLAINTIFFS' STATUTORY CLAIMS ARE BARRED BY THE SAFE HARBORS AFFORDED TO A MANUFACTURER THAT COMPLIES WITH APPLICABLE REGULATIONS

Plaintiffs cite *Torres v. JC Penney Corp.*, 12-cv-01105-JST, 2013 U.S. Dist. LEXIS 66506 (N.D. Cal. May 8., 2013), to argue that Unilever is not entitled to the protection afforded

---

[8] Even though the *Waldman* Court found that the slack-fill allegations were not material, that Court allowed the NY GBL § 349 claim to proceed, erroneously concluding that an immaterial misrepresentation could form the basis of a claim under NY GBL § 349.  The *Waldman* court based its decision on a misreading of *Gaidon v. Guardian Life Ins. Co. of America,* 94 N.Y.2d 330, 344-50, 704 N.Y.S.2d 177, 186 (1999).  *Gaidon* did not—as the *Waldman* Court apparently believed—hold that an immaterial misrepresentation can sufficiently state a claim under NY GBL § 349. In *Gaidon*, the New York Court of Appeals relied on the different burdens of proof applicable to fraud and NY GBL § 349 claims in simply holding that the plaintiffs stated a cause of action under NY GBL § 349, but not fraud.  In so doing, it found that plaintiffs' allegations of materiality fell somewhere in between those necessary to satisfy the heightened pleading standard of fraud and "trifling," which would mean they were not material.  *Id.* at 350, 704 N.Y.S.2d at 186.  The *Gaidon* court held that the alleged misrepresentations in that case were material to some degree, but not enough to satisfy the heightened standard for fraud.  On a much different factual situation, the *Waldman* Court held that size was not material to the purchasers' decision.  Respectfully, it should not have allowed the NY GBL § 349 claim to proceed since, in order to be actionable, a misrepresentation must have *caused* the alleged harm and if a misrepresentation is not material to the purchaser's decision, it cannot meet the causation requirement of NY GBL § 349. *See Small v. Lorillard Tobacco Co., Inc.,* 94 N.Y.2d 43, 57, 698 N.Y.S.2d 615 (1999).

by the safe harbor provisions that provide immunity from state consumer protection statutes if a manufacturer complies with existing regulations.  In *Torres*, however, the issue was whether certain "FTC Guides" protected the defendant's conduct.  The court found that defendants did not establish that the FTC Guides were legislative or quasi-legislative provisions having the force and effect of law.  *Id.* at *3.  Here, there is no question that the applicable FDA regulations have the full force and effect of law.

Similarly, in *State of Fla. v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288 (S.D. Fla. 2005), the defendant failed to "identify any federal statute or regulation that 'specifically permitted' it to grossly inflate its charges."  *Id.* at 1310.  In contrast, Unilever identified the precise federal statutes, regulations, and standards that permit the alleged conduct upon which Plaintiffs rely as the basis for their claims.

## IV.   PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF BECAUSE THEY CANNOT ALLEGE THE THREAT OF FUTURE HARM

Plaintiffs concede that they are now aware of Defendant's allegedly misleading practices and they do not intend to purchase the Products again.  Plaintiffs, however, claim to have the requisite standing to seek injunctive relief because future potential class members might purchase the Products.  (Pl. Br. at 21.)  But applicable Supreme Court precedent squarely holds that the existing Plaintiffs must themselves have standing.  They cannot acquire it through "a generalized interest in deterrence," seeking to protect the rights of others who are not parties to the suit.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108-09 (1998); *see also Warth v. Seldin*, 422 U.S. 490, 502 (1975) (putative class plaintiffs lack Article III standing to seek redress for an "injury [that] has been suffered by other, unidentified members of the [proposed] class…").  Thus, because none of the named plaintiffs have Article III standing, their claim for

11

injunctive relief should be dismissed.   *See Allee v. Medrano*, 416 U.S. 802, 829 (1974)

("standing cannot be acquired through the back door of a class action").[9]

## V.   PLAINTIFFS' CLAIMS BASED ON ADVERTISING AND MARKETING SHOULD BE DISMISSED FOR LACK OF CAUSATION

Plaintiffs do not and cannot cite to any factual allegations in the FAC indicating that any

of them ever saw, heard or relied upon any of Defendant's advertisements or marketing

practices.   Instead, Plaintiffs argue that, "Defendant need look no further than the Exhibit A of

the FAC which displays the Product packaging itself.   The FAC clearly sets forth that the

Plaintiffs and Class members viewed the Defendant's misleading Product labeling and

packaging, relied on the misrepresentations and were thereby deceived in deciding to purchase

the Products for a premium price.   *See* FAC ¶ 15."   (Pl. Br. at 21.)

Plaintiffs conflate labeling and packaging on the one hand, with advertising and

marketing on the other.   Even assuming, *arguendo*, that Plaintiffs saw and relied on the labeling

and packaging, to the extent they seek to premise liability on Defendants' advertising and

marketing, other than labeling and packaging, their claims should be dismissed for failure to

plead a causal link between Unilever's advertisements and marketing practices on the one hand,

and their purported harm on the other.

## VI.   THE INDIANA STATUTORY CLAIM SHOULD BE DISMISSED FOR FAILURE TO GIVE THE REQUIRED NOTICE; THE GEORGIA AND ALABAMA STATUTORY CLAIMS SHOULD BE LIMITED TO INDIVIDUAL, NOT CLASS-WIDE CAUSES OF ACTION

Plaintiffs contend that a demand letter which only listed California Plaintiff Arellano, and

only provided notice of an intent to seek relief under specific provisions of California's

---

[9]   Courts regularly dismiss claims for injunctive relief where consumers claim to have been aware of an alleged misrepresentation concerning a product they purchased.   *See, e.g.*, *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 225 (3d Cir. 2012); *Dicuio v. Brother Int'l Corp.*, No. CIV.A. 11-1447 FLW, 2012 WL 3278917, at *15 (D.N.J. Aug. 9, 2012); *Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1348 (N.D. Ga. 2009); *In re ConAgra Foods, Inc.*, No. CV 11-05379 MMM, 2015 WL 1062756, at *33 (C.D. Cal. Feb. 23, 2015).

consumer protection laws (as well as inapplicable federal law, which Plaintiffs have since

abandoned), was somehow sufficient to provide Defendant with the notice of a potential claim

under every other state law.  (*See* FAC, Ex. F.)   Plaintiffs cite no legal support for this

contention.  There is none.  The *Arellano* demand letter was limited to California law.  For this

reason, Count XII of the FAC, which asserts a claim under Indiana law, should be dismissed for

failure to give the required notice.

Plaintiffs further contend that they were not required to give notice under the laws of

Georgia and Alabama because those states' laws do not require notice where the prospective

respondent does not maintain a place of business or keep assets within the state.  (Pl. Br. at 22.)

Both of those statutes, however, only permit a plaintiff to sue individually, and do not permit

individuals to bring suit as a class representative.  *See* Ala. Code § 8-19-10(f); *Ex Parte Exxon

Corp.*, 725 S.2d 930, 933 (Sup. Ct. Ala. 1998); Ga. Code § 10-1-399(a); *Honig v. Comcast of

Georgia I, LLC*, 537 F. Supp. 2d 1277, 1289 (N.D. Ga. 2008).  Accordingly, Counts X and XI,

which seek recovery under the consumer protection statutes of Georgia and Alabama,

respectively, should be dismissed to the extent they seek class-wide relief.

## VII.    THE OHIO STATUTORY CLAIM SHOULD BE DISMISSED BECAUSE IT IS NOT AVAILABLE TO CONSUMERS

In response to Defendant's argument that Ohio Plaintiff Syroka's statutory claim should

be dismissed, Plaintiffs argue that "[t]he Ohio Consumer Sales Practice Act explicitly creates a

private right of action for consumers…. *see* Ohio Rev. Code Ann. §§ 1345.09(A) and

1345.09(D)." (Pl. Br. p. 22.)  But, the Ohio Consumer Sales Practice Act is not the statute that

Plaintiff Syroka sued under.  Rather, Count XI of Plaintiffs' FAC seeks relief solely under the

Ohio Deceptive Trade Practices Act, Ohio Rev. Code Ann. § 4165.01 *et seq.*  (*See* FAC ¶¶ 174–

83.)  Because the Ohio statute cited in Count XI of the FAC does not permit consumers to bring

13

a private right of action, it does not matter whether one is permitted under the unrelated statute cited for the first time in Plaintiffs' opposition brief.

## VIII.   PLAINTIFFS' EXPRESS WARRANTY CLAIM SHOULD BE DISMISSED BECAUSE MANDATED DISCLOSURES ARE NOT WARRANTIES

Plaintiffs rely on general warranty law, but ignore the authorities cited in Unilever's main brief which clearly hold that federally mandated disclosures cannot give rise to an express warranty cause of action.  *See also Horowitz v. Stryker Co.*, 613 F. Supp. 2d 271, 285-86 (E.D.N.Y. 2009).  This ground for dismissing Count XIV stands completely unrebutted.

## IX.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED AS DUPLICATIVE AND BECAUSE PLAINTIFFS HAVE AN ADEQUATE REMEDY AT LAW

In *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 944 N.Y.S.2d 732 (2012), the New York Court of Appeals held that an equitable claim for unjust enrichment is not available where it simply duplicates other legal causes of action, or if it is pled as a catchall in the event that the plaintiff's legal claims fail.  Citing *Pramer, S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89, 100, 907 N.Y.S.2d 154, 161 (1st Dep't 2010), and *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144 (E.D.N.Y. 2010), Plaintiffs respond by arguing that they may bring an unjust enrichment claim under state law, as long as it is pled in the alternative.  Both of those cases, however, pre-dated *Corsello* and they are no longer good law.  *See Weisblum v. Prophase Labs, Inc.*, No. 14-CV-3587 JMF, 2015 WL 738112, at *11 (S.D.N.Y. Feb. 20, 2015) (*Abaplus* is no longer good law in light of *Corsello*); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 483-84 (S.D.N.Y. 2014) (*Bolton* is no longer good law because it pre-dates *Corsello* and a federal court sitting in diversity must follow the New York Court of Appeals).

Thus, Plaintiffs' argument that they may plead unjust enrichment in the alternative is based upon cases that pre-date controlling New York Court of Appeals precedent to the contrary.

As in *Weisblum* and *Goldemberg*, this Court should dismiss Plaintiffs' unjust enrichment claim because Plaintiffs have pled duplicative causes of action that, if sustainable, would provide adequate remedies at law.

## CONCLUSION

For the foregoing reasons and those cited in Unilever's moving brief, the FAC should be dismissed with prejudice.

Dated: New York, New York
        April 30, 2015                                      Respectfully submitted,

**WINSTON & STRAWN LLP**


By:     /s/ Thomas J. Quigley
        Thomas J. Quigley
        Desiree M. Ripo
        Nicholas R. Alioto
        200 Park Avenue
        New York, NY  10166–4193
        Telephone:  (212) 294–6700
        Facsimile:  (212) 294–4700

        tquigley@winston.com
        dmripo@winston.com
        nalioto@winston.com

        *Attorneys for Defendant*
        *Unilever United States, Inc.*