UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                          :

TIMBA BIMONT, SYLVIA BETHEA,           :
LOURDES ROSADO, ROSEMARY             :
ARELLANO, BRENDA STARR, RONALD    :         14-CV-7749 (JPO)
BRINKLEY, WENDY SYROKA, DAWN      :
KELLEY, SERRENA UPTON, KENDRA     :      OPINION AND ORDER
ANGEL, and MARK MCINTIRE, *on behalf of* :
*themselves and others similarly situated*,    :
                       Plaintiffs,  :
                          :
            -v-               :
                          :
UNILEVER UNITED STATES, INC.,       :
                    Defendant.  :
                          :
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      Plaintiffs Timba Bimont, Sylvia Bethea, Lourdes Rosado, Rosemary Arellano, Brenda

Starr, Ronald Brinkley, Wendy Syroka, Dawn Kelley, Serrena Upton, Kendra Angel, and Mark

McIntire bring this putative class action against Unilever United States, Inc. ("Unilever"),

alleging violations of the consumer protection laws of several states, breach of warranty,

negligent misrepresentation, and unjust enrichment.  Unilever moves to dismiss this action

pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that all of the claims are

completely preempted by the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 300, *et seq.*,

and its accompanying regulations.  For the reasons that follow, Unilever's motion is granted.

## I.    Background

      Unilever sells many popular deodorants[1] under the AXE and Degree brands.  (Dkt. No.

14, First Amended Complaint ¶¶ 1, 7, 26 ("FAC").)  The packaging of these products, according

---

[1] Technically, the products at issue are deodorants and antiperspirants.  For convenience, the
Court refers to the products as "deodorants."

to the FAC, violates the consumer protection laws of New York, New Jersey, California, Florida,

Pennsylvania, Ohio, Georgia, Alabama, Indiana, and Oklahoma, and the common law of every

state,[2] because it (1) misstates the "actual weight of usable product" in each stick of deodorant;

(2) misstates the "total net weight (including usable and unusable portions of deodorant . . . )";

and (3) contains "non-functional slack-fill[, which,] when displayed for sale to Plaintiffs and

other reasonable consumers, caused the false impression that there was more product than

actually packaged."  (*Id.* ¶ 4 (emphasis omitted).)  The individual Plaintiffs are residents of these

states who allege that they purchased AXE and Degree products and were deceived by their

packaging.  (*Id.* ¶¶ 14–24.)

## II.      Discussion

Unilever moves to dismiss the FAC on the ground that all of Plaintiffs' causes of action

are preempted by federal law, among other grounds.  Because the Court concludes that all of the

claims are completely preempted, the Court need not, and does not, reach Unilever's other

arguments for dismissal.

### A.      Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient

factual allegations "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible if the well-pleaded factual allegations

of the complaint, presumed true, permit the court to "draw the reasonable inference that the

---

[2] Although Plaintiffs allege that the brands violate the consumer protection laws of all 50 states, they make substantive allegations only under the consumer protection statutes of those states of which the Plaintiffs are domiciliaries.  (FAC ¶¶ 6, 89–232.)  Because the Court concludes that the Plaintiffs' allegations would be preempted under any applicable state statute, the Court need not specifically evaluate the various state statutes at issue here.  Plaintiffs also assert claims on behalf of a nationwide class for the common law causes of action of breach of warranty, negligent misrepresentation, and unjust enrichment, which are discussed below.

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 557).

"[T]here is no private right of action to enforce the FDCA." *Church & Dwight Co. Inc.*

*v. SPD Swiss Precision Diagnostics, GmbH*, No. 14 Civ. 585 (AJN), 2014 WL 2526965, at *7

(S.D.N.Y. June 3, 2014) (citing *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010)).

The FDCA is enforced by the United States Food and Drug Administration ("FDA"). *See POM*

*Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2235 (2014) ("[T]he FDCA and its

regulations provide the United States with nearly exclusive enforcement authority, including the

authority to seek criminal sanctions in some circumstances" (citing 21 U.S.C. §§ 333(a), 337));

*see also* 21 U.S.C. § 337(a) ("[A]ll . . . proceedings for the enforcement, or to restrain violations,

of [the FDCA] shall be by and in the name of the United States.").

The FDCA explicitly forbids the states to "establish or continue in effect any requirement

for labeling or packaging of a cosmetic that is different from or in addition to, or that is

otherwise not identical with, a requirement specifically applicable to a particular cosmetic or

class of cosmetics under [the FDCA] . . . or the Fair Packaging and Labeling Act." 21 U.S.C.

§ 379s(a). Similar language forbids non-identical state requirements for over-the-counter

("OTC") drugs.[3] 21 U.S.C. § 379r(a). While states are forbidden from altering the substantive

prohibitions applicable to subjects regulated by (or, perhaps, that *could* be regulated by) the

---

[3] The parties agree that the products at issue here are both cosmetics and OTC drugs.

FDA, they are free to create private rights of action under state statutes that impose requirements identical to those of the FDCA.  *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 757 (9th Cir. 2015) ("[T]he FDCA does not preempt state laws that allow consumers to sue cosmetics manufacturers that label or package their products in violation of federal standards."); *see also Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 447 (2005) (holding that similar language in the Federal Insecticide, Fungicide, and Rodenticide Act does not preempt state causes of action for the violation of requirements identical to those under federal law).

Thus, the question here is whether any of Plaintiffs' claims under state law impose requirements "different from or in addition to, or . . . otherwise not *identical* with, a requirement *specifically applicable*" to cosmetics or OTC drugs under the FDCA.  21 U.S.C. § 379s (emphasis added); *see also Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 375 (S.D.N.Y. 2014) ("In the context of OTC drugs, the FDCA expressly preempts state law labeling requirements that are 'different from,' 'addition[al] to,' or 'otherwise not identical with' federal labeling requirements." (brackets in *Bowling*)).

A state law that applies to drugs or cosmetics is preempted if it imposes a requirement that is not identical to the requirements of the FDCA and the FDA's regulations.  But this comes with a caveat: preemption does not preclude a state-law claim if the state requirement is outside the scope of the relevant federal requirements.  *See Ackerman v. Coca-Cola Co.*, No. 09 Civ. 395 (JG) (RML), 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010) ("[T]here are two ways plaintiffs may escape [the FDCA's] preemptive force: (1) if the plaintiffs' claims seek to impose requirements that are identical to those imposed by the FDCA; or (2) if the requirements plaintiffs seek to impose are not with respect to claims of the sort described in [the Act]."); *see also Ault v. J.M. Smucker Co.*, No. 13 Civ. 3409 (PAC), 2014 WL 1998235, at *3 (S.D.N.Y. May 15, 2014) (holding that a state cause of action regarding the phrase "all natural" is not

preempted because "no federal specifications exist here"); *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 538 (S.D.N.Y. 2008) ("Where federal requirements address the subject matter that is being challenged through state law claims, such state law claims are preempted to the extent they do not impose identical requirements."); *Vt. Pure Holdings, Ltd. v. Nestle Waters N. Am., Inc.*, No. CIV.A.03-11465 (DPW), 2006 WL 839486, at *6 (D. Mass. Mar. 28, 2006) ("[W]here no federal requirement exists, preemption does not occur.").

Courts appear to differ on the degree of distinction from federal law that is permissible in this context.  On the one hand, some hold that state laws imposing non-identical requirements in areas that the FDA *could* have regulated are preempted.  That is, these decisions have indicated that a state law cause of action is preempted both "when a state law prohibits labeling that is permitted under federal law" as well as when it "prohibits labeling that is *not prohibited* under federal law." *Bowling*, 65 F. Supp. 3d at 375.  Under this view, "[t]he standard . . . is not whether a state law actively undermines federal law.  It is whether state law diverges from federal law *at all*." *Id.*; *see also Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) (Posner, J.) ("The disclaimers that the plaintiff wants added to the labeling of the defendants' [food product] are not identical to the labeling requirements imposed on such products by federal law, and so they are barred."); *PepsiCo*, 588 F. Supp. 2d at 534 ("[S]tate law causes of action are not preempted where they merely provide a damages remedy for claims premised on a violation of federal law that does not itself provide a private right of action, but are preempted where they impose obligations not imposed by federal law.").[4]

---

[4] As Judge Posner has explained: "It is easy to see why Congress would not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide.  Manufacturers might have to print 50 different labels, driving consumers who buy food products in more than one state crazy." *Turek*, 662 F.3d at 426.

Other cases apply preemption where the state law imposes requirements that are not identical to federal law in an area in which the FDA engages in *some* regulation. *E.g.*, *Astiana*, 783 F.3d at 758; *Vt. Pure*, 2006 WL 839486, at *6. These cases hold that the relevant "scope" of federal law is defined by the FDA's regulatory choices. If the FDA regulates a given subject matter, it preempts all non-identical state laws within that subject matter. But if the FDA says nothing about the subject matter, states are free to regulate.

Finally, at least one court has taken a more permissive approach to the interaction between the FDCA and state consumer protection statutes, holding that they "serve complementary, though somewhat overlapping, roles," whereby the FDCA "constitutes only a floor upon which states can build additional protections." *Jovel v. i-Health, Inc.*, No. 12 Civ. 5614 (JG), 2013 WL 5437065, at *6 (E.D.N.Y. Sept. 27, 2013). This approach applies preemption only where state law requirements plainly conflict with federal requirements—most commonly, where a state law claim would prohibit conduct that is explicitly permitted by federal law.

State claims are preempted, then, if they (1) impose any non-identical requirement on conduct that *could* be regulated by the FDA (*e.g.*, *Bowling*, 65 F. Supp. 3d at 376); (2) impose any non-identical requirement on conduct whose subject matter has been regulated by the FDA (*e.g.*, *Vt. Pure*, 2006 WL 839486, at *6); or (3) impose any conflicting requirement on conduct that has been regulated by the FDA (*e.g.*, *Jovel*, 2013 WL 5437065, at *6). *Compare also Astiana*, 783 F.3d at 758 (concluding that a suit that might "require [the defendant] to remove . . . allegedly misleading advertising statements [concerning whether the product is 'All Natural'] from its product labels" would "not run afoul of the FDCA" because "FDA regulations do not require [the defendant] to label its products as 'All Natural'"), *with Bowling*, 65 F. Supp. 3d at 376 ("For plaintiffs to establish that their state law claims are not preempted, it is insufficient to

show that the FDA has not permitted the label . . . .  Rather, plaintiffs would need to plead facts

suggesting that the FDA has affirmatively *prohibited* the label." (emphasis omitted)).

As explained further below, Plaintiffs' claims are preempted under the first and second

rules.  But they would likely survive the third.  Thus, although the Court need not, and does not,

resolve the tension between the first and second approaches, the Court must address whether or

not the third rule is the correct one.  It is not correct chiefly because it is inconsistent with the

plain language of the FDCA's preemption statute.  That statute forbids the states to impose

requirements that are not "*identical*" to those within the scope of federal law.  21 U.S.C. § 379s

(emphasis added).  If, when determining whether state laws are within the scope of federal law,

courts considered "scope" to mean "those areas that the FDA has already specifically regulated,"

nothing would be left of the word "identical" in this context.  *Id.*  States, under the third rule,

would be free to pass *any* requirements:  If the FDA has not already imposed them, they would,

by definition, be outside the scope of federal law; and if the FDA *has* already imposed them,

they would be identical to federal law.  That cannot be right.  Accordingly, the Court rejects the

third rule.

B.      **Non-Functional Slack-Fill**

Plaintiffs allege that Unilever's deodorants are packaged so as to give the appearance that

they contain more deodorant than they actually contain.  (FAC ¶¶ 44–45.)  Unilever does this,

according to Plaintiffs, simply by selling the deodorants in plastic containers that are larger than

they functionally need to be.  In order for these state law claims to escape preemption by the

FDCA, these claims must attempt to impose requirements that are either (1) identical to federal

law or (2) outside the scope of federal law.

The FDCA forbids the "misleading" packaging of drugs and cosmetics.  *See* 21 U.S.C.

§ 362(d).  At first glance, Plaintiffs' claim that the deodorants are packaged with "slack-fill" so

as to mislead consumers appears to be identical to this law.  But Congress also specifically
addressed the issue of slack-fill by explicitly authorizing the FDA to enact regulations to
"prevent the nonfunctional-slack-fill of packages containing [foods, drugs, or cosmetics]."  15
U.S.C. § 1454(c)(4).  Congress specified that such regulations were to be enacted "[w]henever
. . . regulations . . . are necessary to prevent the deception of consumers or to facilitate value
comparisons as to any consumer commodity."  *Id.* § 1454(c).  The FDA proceeded to pass slack-
fill regulations, but covered only slack-fill in *food* products.  *See* 21 C.F.R. § 100.100 (defining
slack-fill as "the difference between the actual capacity of a container and the volume of product
contained therein").  These regulations specifically address the permissible reasons for including
slack-fill in *food* packaging, but they say nothing about drug and cosmetics packaging.  *Id.*  The
question, then, is whether this constitutes an FDA determination that slack-fill in drug and
cosmetic packaging is permissible, which would preempt the claims because they impose a non-
identical requirement, or whether slack-fill in drug and cosmetic packaging is *outside the scope*
of federal requirements, which would allow the claims to proceed.

     The parties do not squarely address this question.  (*Compare* Dkt. No. 22, Plaintiffs'
Memorandum of Law in Opposition ["Opposition"], at 14–15, *with* Dkt. No. 7, Defendant's
Reply Memorandum of Law ["Reply"], at 7.)  But, given the prevailing case law on FDCA
preemption, it is clear that the FDA has regulated slack-fill (which is the relevant "subject
matter"), but has declined to interpret the general misbranding statute so as to cover slack-fill in
drugs and cosmetics.

     Comparing *Bowling*, *PepsiCo*, *Ault*, and *Astiana* is instructive.  In *Bowling*, Judge
Scheindlin addressed allegations that Johnson & Johnson misled consumers when it said that
Listerine mouthwash "[r]estores [e]namel" in teeth.  *Bowling*, 65 F. Supp. 3d at 373.  Judge
Scheindlin held that a state law cause of action for misbranding based on the "restores enamel"

claim was preempted by federal law because the FDA had previously issued guidance allowing

OTC drug manufactures "(1) to represent that . . . drugs [containing fluoride] prevent tooth decay

and (2) to provide further labeling to explain how decay is prevented." *Id.* The FDA, according

to Judge Scheindlin, had addressed the subject matter of fluoride's relationship to tooth decay

and had declined to prohibit statements that fluoride restores enamel in teeth. *Id.* at 376-77.

Therefore, the states were not free to prohibit those statements.

In *PepsiCo*, Judge Seibel addressed allegations that Pepsi had misbranded Aquafina

bottled water—which, the plaintiffs alleged, was purified tap water—by including mountainous

scenes on its labels, leading to the false impression that the water came from a mountainous

source. *PepsiCo*, 588 F. Supp. 2d at 529. The FDA, according to Judge Seibel, issued specific

guidance regarding the disclosure of the *source* of other types of bottled water—"artesian water,"

"ground water," "mineral water," and "spring water," 21 C.F.R. § 165.110(a), for example—but

*not* "purified" water. *PepsiCo*, 588 F. Supp. 2d at 535. Judge Seibel held that the claims were

preempted because they imposed a non-identical requirement that was within a subject matter

that the FDA had addressed. *See id.* at 538 ("Where federal requirements address the subject

matter that is being challenged through state law claims, such state law claims are preempted to

the extent they do not impose identical requirements.").[5]

In *Ault*, Judge Crotty addressed allegations that Smuckers had misbranded Crisco

shortening by labeling it "All Natural." *Ault*, 2014 WL 1998235, at *1. But Judge Crotty found

that this claim was *not* preempted (unlike the claims in *Bowling* and *PepsiCo*) because "the FDA

---

[5] *Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137, 1141 (C.D. Cal. 2010), distinguished *PepsiCo*. There, the court held that claims concerning statements that a product was "healthy" were "premised on misrepresentations concerning subject matter that the FDA has not endeavored to regulate," and thus were not preempted. *Id.* (quoting *PepsiCo*, 588 F. Supp. 2d. at 538 n.10). Though these cases dealt with apparently distinct factual circumstances, the reasoning of these cases appears to be consistent.

has declined to consider the specific issue here: 'whether and under what circumstances food products containing ingredients produced using genetically engineered ingredients may or may not be labeled "natural."'" *Id.* at *3 (quoting informal FDA guidance); *see also Astiana*, 783 F.3d at 758 ("Hain finally points out that the FDA has never issued regulations regarding the use of 'natural' on cosmetics labels.  That is true, but Hain then argues that the FDA's failure to issue specific regulations on the subject is tantamount to a conscious decision by the agency to permit any use of this term a manufacturer sees fit.  This argument proves too much.  By this logic, a manufacturer could make any claim—wild, untruthful, or otherwise—about a product whose contents are not addressed by a specific regulation.  The statute, however, proscribes statements that are 'false or misleading in any particular,' not statements that are 'prohibited by specific FDA regulations.'").

The situation here is more like *Bowling* and *PepsiCo* than it is like *Ault* and *Astiana*. Here, the FDA was given a specific invitation to regulate slack-fill in foods, drugs, and cosmetics, but chose to regulate only slack-fill in foods.  Under a strict approach to FDCA preemption, this is sufficient to bar Plaintiffs' claims: A state rule forbidding non-functional slack-fill in drugs and cosmetics would impose a requirement that is in addition to or not identical with federal law, and it would do so on a subject matter that clearly could be regulated by the FDA.  But even under the more lenient approach, Plaintiffs' claim still fails.  The FDA's failure to regulate in this area constitutes strong evidence that the FDA considered the issue of slack-fill in drugs and cosmetics and decided that slack-fill in those products is insufficiently misleading to warrant regulation.  It is, in other words, "tantamount to a conscious decision by the agency to permit" slack-fill.  *Astiana*, 783 F.3d at 758.  Similarly, the fact that Congress specifically mentioned slack-fill apart from its general prohibition on misbranding suggests that Congress considered slack-fill an issue specifically to be addressed by the FDA and *not* merely

an instance of misbranding.  Accordingly, Plaintiffs' non-functional slack-fill claims are
dismissed.

    **C.**    **Total Net Weight**

       Plaintiffs next contend that the net weight statements on Unilever's deodorants are false.
(FAC ¶ 41.)  Unilever argues that the alleged discrepancies between the actual net weight and
listed net weight on its products fall within the permissible range established by federal law.
(Dkt. No. 20, Memorandum of Law in Support of Defendant's Motion to Dismiss ["Support"], at
10–11.)  The FDCA allows for "reasonable variations" in weight, 21 U.S.C. § 362(b), and the
National Institute of Standards and Technology ("NIST"), which regulates the permissible
variation in this context, has established precise standards for what is and is not reasonable.
Plaintiffs concede that the NIST standards apply (Opposition, at 14) and that Unilever's products
fall within the reasonable variance interval established by NIST.  But Plaintiffs contend that,
"[w]hile [Unilever] is correct in stating that the [NIST] permits net weight variation in products,
nothing in the regulations contemplates intentional and systematic underfilling as alleged in
Plaintiffs' Complaint."  (*Id.* (emphasis omitted).)

       The question, then, is whether federal law, which allows for variations within a certain
interval, nonetheless prohibits the same variations where they are claimed to be "intentional" and
"systematic."  In support of their claims, Plaintiffs cite only *Torres v. JC Penney Corp.*, No. 12
Civ. 1105 (JST), 2013 WL 1915681 (N.D. Cal. May 8, 2013), and *State of Fla. Office of Atty.
Gen. v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1294 (S.D. Fla. 2005).  The former case
concerns whether the applicability of safe harbors created by California state law, in a case
concerning jewelry coatings, can be decided on a motion to dismiss.  *See Torres*, 2013 WL
1915681, at *4.  It does not address whether state consumer protection laws are barred by federal
preemption in circumstances like those at issue here.  The latter case concerns *Medicare*

11

preemption and concludes that "there is no indication that Congress intended to preempt state law causes of action through the implementation of the Medicare Act." *Tenet*, 420 F. Supp. 2d at 1298.  For this reason, *Tenet* declined to dismiss state law claims for the "upcoding" of Medicare reimbursement claims.  *Id.*  It says nothing about whether federal law allows a manufacturer of drugs and cosmetics deliberately to reduce—assuming that Unilever's alterations are deliberate—the net weight of its products, so long as the result stays within the NIST range.

Plaintiffs, then, have identified nothing in federal law to suggest that manufacturers cannot do what they allege that Unilever has done.  Neither has the Court.  And, in *Jones v. Rath*, 430 U.S. 519 (1977), the Supreme Court held that a California rule permitting certain net weight variations in meat was preempted by federal law because it did not allow for "loss of weight resulting from moisture loss during the course of good distribution practice," which USDA regulations permitted.  *Id.* at 530–32.  Analogously, then, state laws forbidding net weight variations that are within the range allowed by federal law ought to be preempted as well, even if those variations are intentional or systematic.

Similarly, in *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) (memorandum disposition), the Ninth Circuit concluded that a state-law cause of action regarding a product labeled as containing "0g Trans Fat" that contained more than zero but less than 0.5 grams of trans fat could not survive FDCA preemption.  The FDA required that a product "contain[ing] less than 0.5 grams of trans fat per serving" to "express this amount as zero."  *Id.*  Presumably that court, and several district courts dealing with the identical issue, considered and rejected the obvious possibility that food companies were deliberately keeping the trans fats in their foods below half a gram in order to avoid reporting that the foods contained trans fat.  *Cf. Red v. Kroger Co.*, No. 10 Civ. 1025 (DMG) (MANX), 2010 WL 4262037, at *3 (C.D. Cal. Sept. 2, 2010); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1119 (N.D.

Cal. 2010).  The mere fact (or allegation) that underfilling is intentional ought not to control the outcome.  Unilever's motion to dismiss the total net weight claims is therefore granted.

### D.    Usable Net Weight

Plaintiffs claim that the net weight labeling on Unilever's deodorants is misleading because some of the deodorant is "embedded under the plastic platform ('bed') on which the deodorant sticks stand" and is thus unusable.  (FAC ¶ 39.)  Unilever argues that, to the extent that Plaintiffs plead a violation of state law, the claim is preempted because federal law requires only that manufacturers disclose no more than the weight of the product exclusive of its packaging.  (Support, at 7–9.)  *See* 15 U.S.C. § 1461 (stating that it is "the express intent of Congress to supersede any and all laws of the States . . . insofar as they . . . provide for the labeling of the net quantity of contents of the package of any consumer commodity . . . which . . . require information different from" federal law and regulations).  Plaintiffs concede that federal law does not explicitly require that "usable" net weight be disclosed.  (Opposition, at 10–11.)  Instead, they argue that the FDCA *allows* manufacturers to supplement their net weight labels, and that the FDCA requires packaging to "enable consumers to obtain accurate information as to the quantity of the contents and . . . [to] facilitate value comparisons."  (*Id.* (quoting 15 U.S.C. § 1451).)

But neither of these contentions supports Plaintiffs' case.  The mere fact that federal law *allows* more detail does not mean that it *requires* more detail.  Under the stricter approach to FDCA preemption, this alone dooms Plaintiffs' claim, since the FDA *could* have regulated in this area.  *See Bowling*, 65 F. Supp. 3d at 376.  And even under the more lenient approach, Plaintiffs' usable net weight claim fails.  The FDA has promulgated regulations in the area of net weight disclosures for drugs and cosmetics, *see* 21 C.F.R. § 201.62(a), (f); § 701.13(a), and has decided not to require usable net weight disclosures.  As such, at least one court has persuasively

rejected the claim that Plaintiffs press here.  *See Ebner v. Fresh Inc.*, No. SACV 13-00477 (JVS),

2013 WL 9760035, at *6 (C.D. Cal. Sept. 11, 2013); *see also Bowling*, 65 F. Supp. 3d at 376–77

(concluding, where the FDA had issued requirements "directly on point but declined, in spite of

that, to indicate" that a particular type of labeling was impermissible, that the FDA had

determined that such labeling was not misleading).  Plaintiffs attempt to distinguish *Ebner* on the

ground that they allege that the *total* net weight of the deodorants is false, an allegation that the

*Ebner* plaintiffs did not make.  But that is a separate claim, which has already been dismissed on

other grounds.  Plaintiffs' usable net weight claim is, accordingly, also dismissed.

     **E.**    **Other Claims**

     Finally, Plaintiffs contend that Unilever falsely advertised its deodorants, and also assert

several claims under state common law, including (1) that Unilever breached express warranties

included on the product packaging; (2) that Unilever made negligent misrepresentations through

its product labeling; and (3) that Unilever was unjustly enriched by misleading representations

on its product labeling.

     A false advertising claim likely would not be preempted if it was based on advertising

apart from the product labeling or packaging.  This is because the FDCA does not cover non-

label advertising; it covers only the labeling of consumer products.  *See Jovel*, 2013 WL

5437065, at *5 (holding that "consumer protection claims founded on the[] falsity [of statements

made in advertising] are not preempted" by the FDCA); *Jackson v. Balanced Health Prods., Inc.*,

No. 08 Civ. 5584 (CW), 2009 WL 1625944, at *4 (N.D. Cal. June 10, 2009) ("The existence of

the FDCA does not completely preclude injured parties from asserting claims of . . . false

advertising.").  But Plaintiffs have not pleaded facts sufficient to give rise to the inference that

any of Unilever's non-labeling advertisements are false.  Indeed, Plaintiffs have not pleaded the

content of *any* of Unilever's non-labeling advertisements, let alone facts demonstrating the

falsity of those advertisements or reliance on them.  All of Plaintiffs' well-pleaded factual allegations relate to "labeling" and "packaging."  Accordingly, Plaintiffs' false-advertising claims are dismissed.

And Plaintiffs' warranty, negligent misrepresentation, and unjust enrichment claims are preempted for essentially the same reason that their state law false advertising claims are. Common law torts constitute "requirements" within the meaning of FDCA preemption.  *See Bates*, 544 U.S. at 443 ("[T]he term 'requirements' . . . reaches beyond positive enactments, such as statutes and regulations, to embrace common-law duties.").  Under either version of the governing legal standard discussed above, federal law preempts these causes of action.  *See Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 285 (E.D.N.Y. 2009).  Plaintiffs' remaining claims are therefore also dismissed.

### F.    Leave to Amend

In a footnote in their opposition brief, Plaintiffs request leave to amend in the event that Unilever's motion is not denied in its entirety.  (Opposition, at 25 n.9.)  All of Plaintiffs' claims relate to the "labeling" and "packaging" of Unilever's products, and, for the reasons explained above, such claims are preempted by federal law.  Because repleading such claims would not alter that legal conclusion, the Court concludes that amendment would be futile.  Leave to amend is therefore denied.

**III.    Conclusion**

For the foregoing reasons, Unilever's motion to dismiss the First Amended Complaint

pursuant to Rule 12(b)(6) is GRANTED.

The Clerk of Court is directed to close the motion at docket number 18.

SO ORDERED.


Dated:  September 9, 2015
        New York, New York

_____
                    J. PAUL OETKEN
                United States District Judge